# Exhibit 2

| *** **DO NOT WRITE IN THIS BOX (For Internal Use Only)*** |
|---|
| Case No.: |
| Date Filed: |

**NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD**
• Private Sector •

## *UNFAIR LABOR PRACTICE CHARGE FORM*

**Instructions**:
- If you are unsure whether this form applies to you, please first review the "Guide for Individuals Representing Themselves Under the SERA," which is located on our website here.
- Answer every question completely.
- If more space is required, attach additional sheets, noting the item number(s) in your response.
- File the form by email to sera@perb.ny.gov; by mail to New York State Public Employment Relations Board, P.O. Box 2074, ESP Agency Bldg 2, Floor 18, Albany, NY 12220-0074; or by fax to (518) 457-2664.

**Purpose of this form**: To allege that an employer, employee(s), and/or labor organization has engaged in, and/or is engaging in, unfair labor practices within the meaning of Section 704 and/or 704-b of the New York State Employment Relations Act ("SERA") (Click here to read the SERA).

**The Charging Party** (the party making this charge) is:  ■ Employee/Labor Organization   ☐ Individual   ☐ Employer

| 1. Charging Party ||| 
|---|---|---|
| Name & Address (include number, street, city, state, zip code):<br>Amazon Labor Union - International Brotherhood of Teamsters (ALU-IBT) Local 1 | Telephone number (include area code):<br>848-210-0636 | Email address:<br>info@amazonlaborunion.org |

| 2. Charging Party's Attorney or Other Representative, if any<br>One with whom PERB should communicate about this matter and who will accept service of papers on Charging Party's behalf ||| 
|---|---|---|
| Name & Address (include number, street, city, state, zip code):<br>Jeanne Ellen Mirer, Esq.<br>300 Cadman Plaza West, 12th Floor<br>Brooklyn, NY 11201 | Telephone number (include area code):<br>313-515-2046 | Email address:<br>jmirer@julienmirer.com |

| 3. Respondent Employer, Labor/Employee Organization, or Farm Laborer Against Which this Charge is Brought ||| 
|---|---|---|
| Name & Address (include number, street, city, state, zip code):<br>Amazon.com LLC JFK8 Fulfillment Center<br>Mohit Mengale, General Manager<br>546 Gulf Ave., Staten Island, NY 10314 | Telephone number (include area code):<br>718-494-7201 | Email address:<br>unknown |

| 4. Employer's Business ||
|---|---|
| General nature of Employer's business:<br>Sales / logistics | Approximate total number of employees:<br>5000 |
| General nature of work performed by employees involved in this charge:<br>Logistics, sorting, and related duties | Is Employer an agricultural employer?<br>☐ Yes   ■ No |

1

5. **Violations Alleged**:

   a. Pursuant to Section 706 of the New York State Employment Relations Act ("SERA"), the Charging Party hereby alleges that the above-named Respondent has engaged in, or is engaging in, an improper practice within the meaning of the following subsections of the SERA:

   ***Check the subsection(s) allegedly violated; you may check more than one:***

   | | | |
   |---|---|---|
   | ☐ 704(1) | ☐ 704(5) | ☐ 704-b(1) – FLFLPA/Agricultural only |
   | ☐ 704(2) | ☐ 704(6) | ☐ 704-b(2)(a) – FLFLPA/Agricultural only |
   | ☐ 704(3)(a)(1) | ☐ 704(7) | ☐ 704-b(2)(b) – FLFLPA/Agricultural only |
   | ☐ 704(3)(a)(2) | ☐ 704(8) | |
   | ☐ 704(3)(b) | ☐ 704(9) | |
   | ☐ 704(3)(c) | ☐ 704(9) | |
   | ☐ 704(4) | ■ 704(10) | |
   | | ☐ 704(11) | |

   b. Specify **in detail** the alleged violation(s) – please specify what happened and how it violated the SERA. Include names, dates, times, places, and the particular actions constituting each violation. Please include the titles and work locations of the individuals involved in the alleged unfair labor practice(s).

   ***Attach additional sheets, if necessary. Failure to supply sufficient factual detail may result in a delay in processing or a dismissal of the charge.*** You must label/explain each attached exhibit and document. Your charge may not consist solely of attachments.

   > See attached

   c. If you are alleging that any employee(s) has been discharged, refused employment, or suffered discrimination in violation of Section 704 and/or 704-b of the SERA, please specify their name(s):

   > Brima Sylla

2

6. **Jurisdiction of Employers Which Are Not Agricultural Employers**[1] – If the Employer is *not* an agricultural employer, please answer the following questions on jurisdiction:

   a. The National Labor Relations Act (NLRA) is a federal law that applies to most private sector employers. The SERA is a New York State law that applies only where the federal law, the NLRA, does not. PERB has jurisdiction only with respect to the SERA.

   Has the National Labor Relations Board accepted or declined jurisdiction over the Employer?

   ☐ Accepted   ☐ Declined   ☐ Unknown

   b. If the NLRB has not declined jurisdiction over the Employer,[2] please provide any information you may have concerning the approximate percentage and volume of sales to, and purchases from, points outside New York State:

   SALES to points outside NYS:
   - Approximate value: $ _____
   - Approximate volume of Employer's total sales: _____%

   PURCHASES from points outside NYS:
   - Approximate value: $ _____
   - Approximate volume of Employer's total purchases: _____%

   c. If there are any other facts concerning interstate commerce and potential jurisdiction of PERB, please provide them here:

   > Jurisdictional requirements have been met due to the recent amendment to NY Labor Law Section 715, under which PERB now has jurisdiction over this matter involving a nationwide employer.

SUPPORTING DECLARATION

I, the undersigned, declare that I am the Charging Party named above, or their Representative, and that I have read the above charge consisting of this and the attached additional page(s), and that I am familiar with the facts alleged therein, which facts I know to be true, except as to those matters alleged on information and belief, which matters I believe to be true. I declare the contents of this charge to be true under penalty of perjury under the laws of the State of New York.

Signature: *Jeanne Mirer*

Name: Jeanne Ellen Mirer

Title: Attorney

Date: 9-15-25

---

[1] Agricultural employers are explicitly under the jurisdiction of the SERA, which was specifically amended to cover agricultural employers and farm laborers under the Farm Laborers' Fair Labor Practices Act ("FLFLPA") and the State Employment Relations Act ("SERA").

[2] If you are unsure of whether the NLRA would apply, before submitting this Unfair Labor Practice Charge Form to PERB, you are strongly encouraged to seek guidance from the NLRB or research its jurisdictional standards, which are discussed on its website.

3

**Attachment to ULP Charge – Section 5**

The Company has violated Section 704 of SERA as follows:

1. Brima Sylla was employed at Amazon.com LLC JFK8 Fulfillment Center's ("Amazon" or "Company") JFK8 facility ("the facility") as a Stower, starting in or around 2019 until 2020, then starting again in or around 2021 until on or about August 9, 2025.

2. As a Stower, Sylla worked in the Stow department at the facility, where he was responsible for scanning products before they were moved to certain locations within the facility. During 2025, he was on a flex schedule, which does not require him to work a 40-hour week.

3. Throughout the campaign to organize a union at the facility, Sylla was actively involved in various aspects of organizing.

4. During the union representation election at the facility in late March 2022, Sylla acted an Observer for the Union.

5. Sylla was elected Vice President of Charging Party Amazon Labor Union – International Brotherhood of Teamsters (ALU-IBT) Local 1 ("Union") in or around July 31, 2024, and maintains that position to date. He was the last Union executive board member working in that facility because the others were terminated.

6. In December 2024, employees represented by the Union held a strike at the facility. Sylla was a leader in executing the strike, and a group of employees he was responsible for leading were the first to walk out of the facility on strike.

7. Starting before 2025 and continuing until his unlawful discharge, Sylla regularly brought Union flyers to the facility and distributed them throughout the facility. Sylla as the only executive of the Union working in the warehouse also left flyers in a plastic box in the breakrooms at the facility with the union marking for workers to pick up during break times.

8. Through such activity and related activity, Sylla has become a prominent Union supporter within the facility, and is known throughout the facility and publicly as a leader in the Union.

9. Starting after the December 2024 strike and continuing, Sylla noticed the Union flyers he had posted and placed in non-work areas of the facility had been removed on a frequent basis. Sylla complained about the removal of the flyers to Amazon representatives on a regular basis. Including the General Manager.

1

10. At various points in 2025, Sylla spoke with Amazon representatives Ariana Loca (Senior Operations Manager), Lee (LNU) (HR Manager), Jack (LNU) (Manager), and Mohit Mangale (General Manager) about the flyers being removed.

11. Upon information and belief, Amazon and/or its agents removed the Union flyers Sylla had posted and placed in non-work areas of the facility and Sylla had conversations with management representatives as to where the flyers were taken.

12. Sylla visited Amazon's Human Resources department in 2025 and met with other managers as well – most often to complain about Union flyers being removed and he was the only one to do so. Whenever he went to HR, he usually had to wait on a line of employees for an extended period of time to speak with a Company representative. However, Amazon only recorded each visit using the time he actively met with a representative (a matter of minutes), but excluded the time he spent waiting on line. The time he spent waiting in line to address Amazon's improper removal of union literature was recorded as if it were work time during which Sylla did not perform any work activities, thus negatively affecting his recorded productivity.

13. Whenever possible, Sylla attempted to make visits to Human Resources during his break times. However, given the length of time he had to wait, often his break ended and work time began while he was still on line to meet with an Amazon representative.

14. His other 2025 visits to HR included trying to address time and schedule issues and regularly accompanying bargaining-unit employees when those employees were required to meet with representatives of Amazon, for the purpose of acting as the employees' Union representative, and to provide translation so that management could address their concerns, as he is fluent in Arabic and French. When accompanying employees to these meetings, Sylla wore a jacket with the Union logo and name.

15. During these times, Amazon representatives prohibited Sylla from accompanying employees to meetings in such a capacity. When doing so, Amazon representatives told Sylla words to the effect that Amazon did not recognize his right to accompany co-workers as a Union representative, that the Union was a third party, and that Amazon did not recognize the Union as employees' collective bargaining representative. Sylla had such conversations with Amazon Managers Adam Nelson, Ariana Loca, Aaron Parsons, and other Company representatives.

16. When Sylla had meetings with Amazon representatives in Human Resources and with other managers, as described above, he asked the Company representatives present to make sure his time was recoded, so that it did not appear as idle or unproductive time in his record.

17. Before December 2024, Amazon representatives often scanned Sylla's identification badge during meetings with Human Resources, for the purpose of coding his time in the meeting correctly. After the December 2024 strike, Amazon representatives stopped scanning his badge or decreased the frequency with which they scanned his badge during such meetings. Instead, they told him to just advise his direct managers about his time in HR.

18. On or about August 9, 2025, Amazon terminated Sylla's employment. Amazon cited productivity as the grounds for termination. *See* termination notice dated August 9, 2025, attached hereto as **Attachment A**.

19. In addition to the above coding issues, Sylla was also subject to the below, which also affected his time records, all of which he addressed with management without success.

20. As part of Sylla's duties in the Stow department, employees brought him pallets of merchandise for him to scan. Upon information and belief, it is those employees' duty to open boxes on the pallets, which Sylla was then responsible for scanning before the items were moved elsewhere in the facility. However, the employees bringing him the pallets regularly failed to open the boxes, necessitating Sylla opening them. Because of these circumstances, Sylla could not perform his scanning duties at a desired pace, and thus his productivity was recorded as lower than it would have been if the employees bringing him the pallets performed their duties by opening the boxes.

21. Similarly, since machines regularly broke down without immediate repair, when Sylla's machine broke down, an Amazon representative directed him to move to a different, more distant work station. On multiple occasions, Sylla went to these other work stations only to find another employee already occupied them, necessitating him walking back to his original location. On some occasions, this happened with multiple directives to go to other work stations. All of this time travelling between work stations was recorded as idle or unproductive time within Amazon's system, thus negatively affecting Sylla's recorded productivity in 2025.

22. Each time his work station broke down, including when he had to walk between work stations, Sylla asked Amazon representatives to make sure his time was coded properly, so it did not affect his productivity.

23. Sylla also had a medical accommodation that allowed him to use the bathroom at the facility every two (2) hours, which he often did.

24. Despite granting Sylla's medical accommodation, Amazon counted the time he used the bathroom against him when calculating his productivity in 2025.

3

25. Starting in or around January 2025 and continuing until his termination, representatives of Amazon approached Sylla with increasing frequency and asked him what he had been doing during specific periods of work time. The representatives said the Company's system marked these periods as showing Sylla being idle or having low productivity. Sylla explained he was engaging in the activities described in the paragraphs above, and asked the Amazon representatives to make sure the coding for those time periods was corrected to reflect those activities. However, even when he raised these issues with the Company representatives, coding mistakes either remained in his record, or the mistakes were only partially addressed.

26. At various points in 2025, Sylla spoke with Amazon representatives Adam Nelson, Ariana Loca, Lee (LNU), Jack (LNU), and Mohit Mengale about the need to recode his time.

27. Employees are not able to correct such coding errors themselves, and must ask an Amazon representative to correct them.

28. While Sylla did not have a way to see if Amazon representatives correctly recoded his time when he asked them to, indications he received upon receiving discipline showed that the representatives did not correctly recode his time despite his valid requests and explanations.

29. Despite Sylla's numerous requests to have time coded properly or recoded to account for the activities described above, Amazon issued him a series of disciplines for low productivity, starting in early 2025. Amazon issued him: two Documented Coachings; a First Written Warning dated April 9, 2025 (attached hereto as **Attachment B**); a Second Written Warning dated May 21, 2025 (attached hereto as **Attachment C**); and a Final Written Warning dated June 15, 2025 (attached hereto as **Attachment D**).

30. By the above conduct, Amazon representatives and agents intentionally and negligently created issues detrimentally affecting his recorded productivity.

31. By the above conduct, Amazon representatives and agents deliberately and artificially lowered Sylla's recorded productivity.

32. Amazon calculated his productivity as described above and lowered Sylla's recorded productivity in order to artificially create reasons to discipline and ultimately discharge him.

33. Amazon lowered Sylla's recorded productivity, issued the disciplines described above, and terminated his employment in retaliation for, and because of Sylla's various activities with and in support of the Union, particularly his leadership in the December 2024 strike and his regular complaints in 2025 about Union flyers being removed from the workplace.

34. This termination is just the latest example of Amazon's efforts to squelch union activities and support at JFK8. Prior to the time period at issue here, Amazon has engaged in an extensive and longstanding anti-union campaign at the facility. Specifically, Amazon has fought unionization at JFK8 from before the time the union won the election in April 2022 to continues to do so to date, including but not limited to unlawfully firing employees and appealing the Union's certification at the National Labor Relations Board and in the courts. And, over the past year, it has been challenging the very constitutionality of the National Labor Relations Board's structure to avoid being held accountable for its actions and obligations.

35. When Sylla was informed he was being terminated, an Amazon representative told him it was triggered by some aspect of his performance on July 29. He asked Amazon for documentation of this alleged performance, but Amazon never gave him such documentation.

36. He appealed his termination and was advised on around the same date that his appeal was denied.

37. He filed a complaint with Amazon's Ethics Department over his termination, which is still pending.

# ATTACHMENT A



# amazon

08/09/2025

Brima Sylla
185 Saint Marks Place Apt 4H
Staten Island, NY 10301

Dear Brima (EEID: 105205622):

This letter confirms that the date of involuntary termination of your employment with Amazon.com Services LLC is 08/08/2025.

You have executed a Confidentiality and Invention Assignment Agreement with the Company. You are reminded that certain provisions of the agreement survive the termination of your employment with the Company and remain in full force and effect. Your agreement is available for review and download in the EDM portal for 90 calendar days after the end of your employment.

We wish you the best in your future endeavors.

Sincerely,
Amazon Human Resources

# ATTACHMENT B



# ATTACHMENT C



ADAPT   https://adapt-iad.amazon.com/#/feedback/document/85205622/202...

Refused to sign by associate on May 29, 2025, 1:31:51 AM - Delivered by Samad,Abdus (samadabu)

## Supportive Feedback Document
## Productivity - Second Written

amazon.com

Associate Name: syla,brima (sylbrima)
Manager Name: Nelson,Adam (FLEXPT)
Created On: May 29, 2025, 1:31:51 AM
Active Days: 60

### Summary

Your recent job performance is not meeting Productivity expectations. Meeting performance standards as a critical component of your job. This document provides specific details about your performance and how you are not meeting expectations. In addition, this document describes the steps you and your manager will take to assist you in improving your performance. As a part of this conversation we are interested in understanding what barriers you think need to be removed, or what improvements can be made which would potentially assist you in improving your performance.

### Communication History

The following is a summary of your productivity feedback:

| Level | Count | Most Recent |
|---|---|---|
| Documented Coaching | 2 | March 26, 2025 |
| First Written | 1 | April 09, 2025 |

### Details of Current Incident/Specific Concerns

| Process | Function | LC | Hours | Units | UPH |
|---|---|---|---|---|---|
| Stow to Prime | 4300034958 Nikestow Each Small | N/a | 0.08 | 32 | 361.12 |
| Stow to Prime | 4300034958 Nikestow Each Medium | N/a | 0.08 | 8 | 96.64 |
| Each Transfer In | 4300034958 Nikestow Each Medium | N/a | 18.51 | 2089 | 112.8 |
| Each Transfer In | 4300034958 Nikestow Each Small | N/a | 13.61 | 2983 | 219.09 |

### Performance Trend

Below is a summary of your past productivity performance

| Period Start | Period End | Units Processed | Hours Worked | UPH | % to Peers | Exempted |
|---|---|---|---|---|---|---|
| May 14, 2025, 5:00:00 AM | May 28, 2025, 5:00:00 AM | 5242 | 29.27 | 179.03 | 90.79283887468031 | N |
| May 07, 2025, 5:00:00 AM | May 21, 2025, 5:00:00 AM | 5112 | 32.3 | 158.23 | 97.5592747559274B | N |
| April 30, 2025, 5:00:00 AM | May 14, 2025, 5:00:00 AM | 3840 | 24.34 | 157.72 | 94.45817154959407 | N |
| April 23, 2025, 5:00:00 AM | May 07, 2025, 5:00:00 AM | 0 | 0.0 | 0.0 | - | Y |
| April 16, 2025, 5:00:00 AM | April 30, 2025, 5:00:00 AM | 0 | 0.0 | 0.0 | - | Y |
| April 09, 2025, 5:00:00 AM | April 23, 2025, 5:00:00 AM | 0 | 0.0 | 0.0 | - | Y |

### Areas of Improvement Required by Associate

We are committed to helping you improve your overall productivity performance and will assist in addressing any job related barriers impacting your ability to meet expectations based on your willingness to improve. Currently, you aren't meeting expectations per the Quality and Productivity Performance Policy. If performance continues to not meet expectation, further corrective action and/or termination may occur. In addition, if an associate receives a total of 6 written warnings in a rolling 12 months, their employment will end. Please reach out to your manager for additional training or resources.

### Associate Comments

AA stated the first productivity write-up they received was not delivered to them. AA stated they spoke to jmorado, ovadi and ahjbe about their first written which they told him was going to be review. AA stated no one came to tell him what the outcome of the review was. AA stated they don't agree with the feedback, because their time was not taken into account when they were with PXT and senior team. AA also stated they sometimes have to go to the restroom after their break because of their accommodation which they felt was not accounted for in their time.

6/16/2025, 1:42 A...

1 of 3

# ATTACHMENT D

Case 1:25-cv-05311-EK-MMH   Document 1-2   Filed 09/22/25   Page 16 of 17 PageID #: 36

