UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMAZON.COM SERVICES LLC,

    v.

NEW YORK STATE PUBLIC EMPLOYMENT
RELATIONS BOARD, TIMOTHY CONNICK, in
his official capacity as Chairperson of the New
York State Public Employment Relations Board,
BARBARA C. DEINHARDT, in her official
capacity as Member of the New York State Public
Employment Relations Board, ROSEMARY A.
TOWNLEY, in her official capacity as Member of
the New York State Public Employment Relations
Board, LAURA H. DELANEY, in her official
capacity as General Counsel of the New York State
Public Employment Relations Board, and JOSEPH
E. O'DONNELL, in his official capacity as
Director of Private Employment Practices and
Representation for the New York State
Employment Relations Board,

        Defendants.

Case No. 25-cv-5311

---

PLAINTIFF'S BRIEF IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION ENJOINING ENFORCEMENT OF NEW YORK LABOR
LAW SECTION 715 AND STAYING PERB CASE NO. UP-40005

---

Amber M. Rogers*
HUNTON ANDREWS KURTH LLP
1455 Ross Avenue, Suite 3700
Dallas, Texas 75202
Tel: (214) 979-3000
Fax: (214) 880-0011
arogers@hunton.com
*Attorneys for Plaintiff*

James J. La Rocca
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
Tel: (212) 309-1000
Fax: (212) 309-1100
jlarocca@hunton.com
*Attorneys for Plaintiff*

Kurt G. Larkin*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Tel: (804) 788-8200
Fax: (804) 788-8218
klarkin@hunton.com
*Attorneys for Plaintiff*

**pro hac vice* motion forthcoming

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES…………………………………………………………....ii

I.     INTRODUCTION…………………………………………………………...1

II.     BACKGROUND…………………………………………………………….2

     A.     Congress entrusted the National Labor Relations Board with exclusive jurisdiction over private-sector labor relations, and New York historically respected that federal primacy……………………………………………….2

     B.     The New York State Employment Relations Act Amendment unconstitutionally upends the state-federal balance on private sector labor matters…………………3

     C.     The New York State Public Employment Relations Board has unconstitutionally asserted jurisdiction over Amazon under the SERA Amendment………………………………………………………………..4

III.     ARGUMENT………………………………………………………………...7

     A.     Amazon will suffer irreparable harm absent injunctive relief……………………7

     B.     Amazon is likely to prevail on the merits on its claims that the SERA Amendment is unconstitutional on its face and that the PERB's assertion of authority over Amazon violates the Supremacy Clause………………………..9

         1.     The SERA Amendment violates the Supremacy Clause on its face……..10

             a.     The SERA Amendment is preempted under *Garmon* because it regulates conduct protected or prohibited by the NLRA………...10

             b.     The SERA Amendment is preempted under *Machinists* because it regulates conduct Congress intended to leave unregulated……13

         2.     PERB's adjudication of Case No. UP-40005 is preempted……………...16

         3.     The SERA Amendment is unconstitutionally vague……………………..18

     C.     The balance of the hardships and the public interest favor Amazon…………….20

     D.     Amazon should not be required to post a bond…………………………………..22

IV.     CONCLUSION……………………………………………………………..22

**Cases**

*A.H. ex rel. Hester v. French*,
  985 F.3d 165 (2d Cir. 2021).................................................................................20

*Agudath Israel of Am. v. Cuomo*,
  983 F.3d 620 (2d Cir. 2020).................................................................................20

*Alexander v. Sutton*,
  747 F. Supp. 3d 520 (E.D.N.Y. 2024) .................................................................18

*Allstate Ins. Co. v. Elzanaty*,
  929 F. Supp. 2d 199 (E.D.N.Y. 2013) ...................................................................7

*Andino v. Fischer*,
  555 F. Supp. 2d 418 (S.D.N.Y. 2008)....................................................................7

*Axon Enterpr., Inc. v. FTC*,
  598 U.S. 175 (2023)..........................................................................................8, 9

*Chamber of Com. of U.S. v. Brown*,
  554 U.S. 60 (2008)...............................................................................10, 14, 15

*City of Chicago v. Morales*,
  527 U.S. 41 (1999)...............................................................................................19

*Conn. Dep't of Env't Prot. v. OSHA*,
  356 F.3d 226 (2d Cir. 2004)..................................................................................9

*Doe v. Livanta LLC*,
  489 F. Supp. 3d 11 (E.D.N.Y. 2020) .....................................................................7

*Dr.'s Assocs., Inc. v. Distajo*,
  107 F.3d 126 (2d Cir. 1997)................................................................................22

*Eng v. Smith*,
  849 F.2d 80 (2d Cir. 1998)....................................................................................9

*Forest City Daly Hous., Inc. v. Town of N. Hempstead*,
  175 F.3d 144 (2d Cir. 1999)..................................................................................9

*G & P Warehouse Int'l LLC v. Abdallah Holdings, Inc.*,
  No. 25-cv-02661 (DG) (PK), 2025 WL 1835925 (E.D.N.Y. July 2, 2025) ...........9

*Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776 (A.F.L.)*,
346 U.S. 485 (1953)...............................................................................2, 8

*Golden State Transit Corp. v. City of Los Angeles*,
475 U.S. 608 (1986)...................................................................................16

*Golden State Transit Corp. v. City of Los Angeles*,
493 U.S. 103 (1989)...................................................................................11

*Guss v. Utah Lab. Rels. Bd.*,
353 U.S. 1 (1957)......................................................................................11

*Healthcare Ass'n of N.Y. State, Inc. v. Pataki*,
471 F.3d 87 (2d Cir. 2006).........................................................................11

*Keep on Kicking Music, Ltd. v. Hibbert*,
268 F. Supp. 3d 585 (S.D.N.Y. 2017)........................................................7, 8

*Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Wisc.
Emp't Relations Comm'n*,
427 U.S. 132 (1976)..............................................................10, 13, 14, 15, 16

*Metro. Taxicab Bd. of Trade v. City of New York*,
615 F.3d 152 (2d Cir. 2010).........................................................................7

*Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*,
No. 12-cv-3858 (KMW) (JLC), 2012 WL 2065294 (S.D.N.Y. Jun. 7, 2012)..........7

*N.Y. Progress & Prot. PAC v. Walsh*,
733 F.3d 483 (2d Cir. 2013).........................................................................20

*NLRB v. State of New York*,
No. 1:25-cv-01283-GTS-ML (N.D.N.Y. filed Sept. 12, 2025) ........................6, 11

*Regeneron Pharms., Inc. v. U.S. Dep't of Health & Human Servs.*,
510 F. Supp. 3d 29 (S.D.N.Y. 2020)............................................................22

*Reyes v. City of New York*,
141 F.4th 55 (2d Cir. 2025) ..........................................................................7

*Rosen v. Pub. Emp. Rels. Bd.*,
526 N.E.2d 25 (N.Y. 1988)...........................................................................3

*San Diego Bldg. Trades Council v. Garmon*,
359 U.S. 236 (1959)..............................................10, 11, 12, 13, 16, 17, 18

*Space Expl. Tech. Corp. v. NLRB*,
No. 24-10855, 2025 WL 2396748 (5th Cir. Aug. 19, 2025) ...........................8, 9

*We The Patriots, USA, Inc. v. Hochul,*
  17 F.4th 266 (2d Cir. 2021) ...............................................................20

*Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould, Inc.,*
  475 U.S. 282 (1986)...........................................................................12

**Statutes**

N.Y. Lab. Law .................................................1, 2, 3, 4, 11, 12, 14, 15, 16, 18, 19, 22

National Labor Relations Act (NLRA)
  ...............................................1, 2, 3, 5, 6, 8, 10, 11, 12, 13, 14, 15, 17, 18, 19, 21

**Other Authorities**

Federal Rules of Civil Procedure Rule 65(c)...............................................22

Press Release, Office of the Governor, "Governor Hochul Signs Legislation to
  Strengthen and Expand Worker and Labor Protections" (Sept. 6, 2025),
  *available at* https://www.governor.ny.gov/news/governor-hochul-signs-
  legislation-strengthen-and-expand-worker-and-labor-protections ...........................................4

Press Release, NLRB, "Acting General Counsel Statement on Potential State
  Legislation Regulating Private Sector Labor Relations" (Aug. 15, 2025),
  *available at* https://www.nlrb.gov/news-outreach/news-story/acting-general-
  counsel-statement-on-potential-state-legislation-regulating....................................................6

United States Constitution ................................................................6, 10, 18

# I.  INTRODUCTION

On September 5, 2025, New York ignored the limits of the Supremacy Clause when it enacted an amendment to the New York State Employment Relations Act (the "SERA Amendment"), N.Y. Lab. Law § 715. The SERA Amendment overrides federal law, commandeers private-sector labor relations, and hands sweeping new powers to the New York State Public Employment Relations Board (PERB). Congress made clear that the National Labor Relations Act (NLRA) gives the National Labor Relations Board (NLRB)—alone—authority over private-sector labor relations. The SERA Amendment flips that scheme on its head: it presumes PERB jurisdiction over every private-sector employer and subjects those employers to a patchwork of commands that at times overlap with and contradict the strictures of federal labor law.

This is not cooperative federalism. It is defiance. The SERA Amendment creates parallel, duplicative proceedings, exposes employers to conflicting obligations, and destroys the national uniformity Congress considered essential to labor peace. The SERA Amendment is preempted, and the vagaries of its application violate due process.

On September 17, 2025, PERB forced Amazon.com Services LLC into the crosshairs of New York's unconstitutional power grab. In response to an unfair labor practice charge filed by the Amazon Labor Union on behalf of a former employee at Amazon's JFK8 Staten Island fulfillment center, PERB invoked its new authority under the SERA Amendment to haul Amazon into state proceedings over a dispute already pending before the NLRB. That action leaves Amazon subject to commands from dueling regulators—precisely the scenario Congress designed the NLRA to prevent.

The Supremacy Clause does not tolerate 50 competing labor law regimes, and it does not permit New York to substitute its judgment for Congress's. To stop this unconstitutional intrusion

before the damage becomes irreparable, the Court should issue a temporary restraining order and preliminary injunction to halt PERB from enforcing the SERA Amendment against Amazon.

Amazon brings both a facial challenge to the SERA Amendment and an as-applied challenge to PERB's pending case against Amazon. Amazon seeks (i) facial relief enjoining enforcement of the SERA Amendment, N.Y. Lab. Law § 715, because it is preempted and unconstitutionally vague; and (ii) as-applied relief enjoining PERB from exercising or asserting authority over Amazon in PERB Case No. UP-40005 because PERB's adjudication of that charge independently violates the Supremacy Clause.

## II.    BACKGROUND

### A.    Congress entrusted the National Labor Relations Board with exclusive jurisdiction over private-sector labor relations, and New York historically respected that federal primacy.

Congress centralized private-sector labor relations in the NLRB to avoid a patchwork of state regulation over labor matters. With the enactment of the NLRA, "Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties." *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776 (A.F.L.)*, 346 U.S. 485, 490 (1953). Instead, Congress "confide[d] primary interpretation and application of its rules to a specific and specially constituted tribunal"—the NLRB—"and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision." *Id.* As a result, the NLRB has exclusive jurisdiction to administer the NLRA, including the certification of bargaining units, supervision of elections, and adjudication of unfair labor practice charges, with judicial review of the NLRB's decisions residing exclusively in the federal courts of appeals. *See* 29 U.S.C. §§ 159, 160.

Until recently, New York's labor law framework long adhered to federal primacy in matters related to regulation of the private sector. The New York State Employment Relations Act (SERA)

historically covered only public employees in the State of New York and employees not covered by the NLRA. *See* N.Y. Lab. Law § 715 (1968) (amended 2025) (excluding from SERA's provisions employees otherwise "subject to and protected by the provisions of the [NLRA]"); Compl. ¶ 26. Just as Congress granted exclusive jurisdiction over the NLRA to the NLRB with judicial review in the federal courts of appeals, SERA grants exclusive jurisdiction to PERB. N.Y. Lab. Law §§ 704–705. Likewise, judicial review of PERB decisions rests with New York's courts. *Id.* § 707.

For decades, this parallel but separate structure respected the line Congress drew. The NLRB governed private-sector labor relations nationwide, while PERB oversaw state and local public employers intentionally excluded by Congress from the NLRA's coverage. Even New York's courts acknowledged that the NLRA "governs the relationship between employers and employees in the private sector." *Rosen v. Pub. Emp. Rels. Bd.*, 526 N.E.2d 25, 28 (N.Y. 1988). By adhering to that division, New York avoided entangling itself in labor disputes that Congress had reserved for federal authority.

**B.      The New York State Employment Relations Act Amendment unconstitutionally upends the state-federal balance on private sector labor matters.**

New York upset that balance on September 5, 2025, with the enactment of the SERA Amendment, which took immediate effect. Compl. ¶ 28. For the first time, the statute made the exclusion from PERB's jurisdiction of NLRA-regulated employees and employers contingent on the NLRB first "successfully assert[ing] jurisdiction over [the] employer, employees, trades, or industries pursuant to an order by the federal district court established under article three of the United States constitution." N.Y. Lab. Law § 715(1)(b).

The Amendment's sponsors made clear that this expansion was no accident, and that it was politically motivated. Governor Hochul declared that New York was "taking strong action to

protect worker rights" because "the Trump Administration has failed to prioritize a strong National Labor Relations Board." PERB Chair Connick announced that "PERB stands ready to fill the void left by Trump's NLRB and protect the rights of workers and organized labor across the state." Compl. ¶ 28 n.2; Press Release, Office of the Governor, "Governor Hochul Signs Legislation to Strengthen and Expand Worker and Labor Protections" (Sept. 6, 2025), *available at* https://www.governor.ny.gov/news/governor-hochul-signs-legislation-strengthen-and-expand-worker-and-labor-protections.

These statements underscored that the SERA Amendment's purpose is to displace the NLRA's authority and substitute state control in its place. Far from filling a void, the law is unconstitutional because it directly conflicts with Congress's design of a uniform national system for private-sector labor relations. *See* Compl. ¶ 36.

### C. The New York State Public Employment Relations Board has unconstitutionally asserted jurisdiction over Amazon under the SERA Amendment.

The impact of the SERA Amendment has already reached Amazon. On September 15, 2025, the Amazon Labor Union–International Brotherhood of Teamsters Local 1 (ALU) filed a charge with PERB alleging an unfair labor practice at Amazon's JFK8 fulfillment center in Staten Island. Compl. ¶ 43. PERB served the charge on Amazon on September 17, 2025. *Id.* ¶ 44. The charge identifies Amazon as the respondent employer, specifies JFK8's operations and workforce, and asserts that "jurisdictional requirements have been met due to the recent amendment to New York Labor Law Section 715, under which PERB now has jurisdiction over this matter involving a nationwide employer." *Id.* ¶ 51.

The PERB charge alleges that Amazon terminated the employment of Brima Sylla—a former JFK8 employee and union vice president—on August 9, 2025, based on his poor productivity. *Id.* ¶ 45; Declaration of James La Rocca dated September 22, 2025 ("La Rocca

Decl.") Ex. 2. According to the filing, Amazon began disciplining Sylla in January 2025 for "Idle Time" and low productivity before terminating him in August. La Rocca Decl. Ex. 2 ¶ 25. The ALU alleges that this discipline and termination were pretext for retaliation tied to Sylla's union role, strike activity, and his complaints about the removal of union flyers from JFK8. *Id.* ¶ 33. While Amazon contends it should not have to participate in the PERB proceedings, it denies the allegations.

More important, the same productivity issues regarding Mr. Sylla are already before the NLRB. Compl. ¶ 48. In NLRB Case No. 29-CA-361669, the NLRB's Region 29 office in Brooklyn is investigating the same January 2025 "Idle Time" discipline that the PERB charge cites. *Id.* ¶ 49. Region 29 has requested evidence from Amazon related to the charge, including records of idle-time metrics and related discipline. *Id.*; La Rocca Decl. Ex. 4. Amazon submitted its position statement to Region 29 investigators on May 27, 2025, and the NLRB's investigation continues to date. Sylla has filed two other NLRB charges alleging Amazon has violated the NLRA with respect to its treatment of his employment at JFK8. Compl. ¶ 50.

PERB, meanwhile, has already set the state charge in motion. On September 17, 2025, PERB issued a Notice of Conference to Amazon, with the matter formally docketed as Case No. UP-40005. Compl. ¶ 44. The Notice directs Amazon to file a response to the charge within ten working days—*i.e.*, by October 1, 2025. *Id.* ¶ 52. It also scheduled a virtual conference for October 13, 2025, before PERB's Director of Private Employment Practices, acting as an Administrative Law Judge. *See id.* The Notice warned that failure to respond could result in deemed admissions of the charge's allegations. *Id.* By issuing this notice, PERB has squarely asserted jurisdiction over Amazon under the SERA Amendment and compelled Amazon to defend itself in state proceedings that directly conflict with matters held within the exclusive jurisdiction of the NLRB.

This posture violates the Supremacy Clause by forcing Amazon into a state proceeding that is both unconstitutional and preempted. At the very same time the NLRB is investigating allegations about Amazon's discipline of Sylla for his lack of productivity, PERB has launched a duplicative case over Sylla's claim that the discipline was retaliation for protected activity. The overlap is not theoretical—it is immediate and concrete. What is more, to the extent Sylla's PERB charge introduces additional facts beyond those he presented to the NLRB, PERB's assertion of jurisdiction would still be preempted by the NLRA because Sylla's complaints *indisputably* could *all* be brought as unfair labor practices under Section 8.

None of this matters under the SERA Amendment. PERB has already issued deadlines requiring Amazon to defend itself before October 1, even as the NLRB presses forward with its own inquiry into nearly identical events. Congress established the NLRA to prevent precisely this scenario: dueling regulators issuing conflicting commands over the same labor dispute. By dragging Amazon into state jurisdiction that federal law expressly forecloses, the SERA Amendment pits state law against federal supremacy and exposes Amazon to irreparable harm unless this Court intervenes.[1]

These events give rise to both Amazon's facial challenge to the SERA Amendment and its as-applied challenge to PERB's assertion of jurisdiction in Case No. UP-40005.

---

[1] On August 15, 2025, before New York enacted the SERA Amendment, the NLRB Acting General Counsel warned that such state efforts "very likely would be preempted by the [NLRA]" and "cannot be reconciled with the Supremacy Clause." Press Release, NLRB, "Acting General Counsel Statement on Potential State Legislation Regulating Private Sector Labor Relations" (Aug. 15, 2025), *available at* https://www.nlrb.gov/news-outreach/news-story/acting-general-counsel-statement-on-potential-state-legislation-regulating). After New York ignored that warning, the NLRB filed suit in the U.S. District Court for the Northern District of New York to enjoin the SERA Amendment as preempted by the NLRA. *See NLRB v. State of New York*, No. 1:25-cv-01283-GTS-ML (N.D.N.Y. filed Sept. 12, 2025). By suing to block the law, the NLRB confirmed that the SERA Amendment creates a direct clash between state and federal authority over private-sector labor relations.

## III. <u>ARGUMENT</u>

The requirements for obtaining a TRO and preliminary injunction are well-established. To obtain either form of preliminary relief, "[a] movant must demonstrate (1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction." *Doe v. Livanta LLC*, 489 F. Supp. 3d 11, 16 (E.D.N.Y. 2020) (quoting *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010)); *see Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.").

Under any formulation of these standards, Amazon is entitled to a TRO and preliminary injunction. As explained below, the SERA Amendment is invalid on its face and should be enjoined, and PERB's adjudication of Case No. UP-40005 is independently preempted and must be immediately stayed and enjoined.

### A. Amazon will suffer irreparable harm absent injunctive relief.

An irreparable injury "is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Reyes v. City of New York*, 141 F.4th 55, 67 (2d Cir. 2025). At least two irreparable harms are present here.

*First*, "[t]he specter of inconsistent rulings . . . constitutes irreparable harm." *Keep on Kicking Music, Ltd. v. Hibbert*, 268 F. Supp. 3d 585, 591 (S.D.N.Y. 2017). "That harm is further compounded by the additional time and expense" that the party "will incur (and ha[s] already incurred)" in responding to the duplicative proceedings. *Id.* Courts therefore have enjoined proceedings that risk "independent and potentially contradictory conclusions." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 222 (E.D.N.Y. 2013); *see, e.g., Michael Miller Fabrics, LLC v.*

*Studio Imports Ltd., Inc.*, No. 12-cv-3858 (KMW) (JLC), 2012 WL 2065294, at *7 (S.D.N.Y. Jun. 7, 2012) (granting preliminary injunction enjoining "any steps to further prosecute" action in Florida federal court because it "would create the risk of irreparable harm in the event of the issuance of inconsistent decisions in this case and the Florida [a]ction").

*Second*, being subjected to a structurally unconstitutional proceeding also constitutes an irreparable harm. As the Fifth Circuit recently explained, "once an unconstitutional proceeding begins, the damage is done. That is the essence of irreparability." *Space Expl. Tech. Corp. v. NLRB*, No. 24-10855, 2025 WL 2396748, at *13 (5th Cir. Aug. 19, 2025). Such a "here-and-now injury" subjects the participant "to unconstitutional agency authority." *Axon Enterp., Inc. v. FTC*, 598 U.S. 175, 191 (2023). "And as to that grievance," nothing can be done: "A proceeding that has already happened cannot be undone." *Id.*

Amazon faces both irreparable injuries. As an initial matter, parallel proceedings under the SERA Amendment and the NLRA expose Amazon to the specter of inconsistent rulings. *See Keep on Kicking Music,* 268 F. Supp. 3d at 591. PERB and the NLRB are adjudicating the same disciplinary actions taken against the same employee for the same productivity issues, yet they are applying different statutes, each with their own procedures, standards and remedies. PERB's initiation of proceedings against Amazon thus exposes Amazon to duplicative proceedings, inconsistent rulings, and conflicting obligations. That harm is irreparable.

In addition, Amazon suffers irreparable harm simply by being subjected to PERB's assertion of jurisdiction under the SERA Amendment. As explained below, federal law vests exclusive authority over private-sector labor relations in the NLRB. *See Garner*, 346 U.S. at 490. By compelling Amazon to appear before a state tribunal on matters governed by the NLRA, the SERA Amendment forces Amazon into proceedings that are preempted and unconstitutional under

the Supremacy Clause. *See* Part II.A, II.B *infra*. That "here-and-now injury" flows from the unlawful process itself. *Axon*, 598 U.S. at 191. Once Amazon is haled into PERB's ultra vires proceedings, "the damage is done." *Space Expl. Tech. Corp.*, 2025 WL 2396748, at *13. No later ruling can retroactively cure the constitutional violation inherent in being subjected to state jurisdiction that Congress foreclosed. *See, e.g., Conn. Dep't of Env't Prot. v. OSHA*, 356 F.3d 226, 231 (2d Cir. 2004) (noting "the alleged violation of a constitutional right triggers a finding of irreparable injury").

Absent an immediate injunction, Amazon will suffer these irreparable harms. Indeed, the October 1 deadline in Case No. UP-40005 makes Amazon's request for as-applied relief especially urgent.

> **B.** **Amazon is likely to prevail on the merits on its claims that the SERA Amendment is unconstitutional on its face and that the PERB's assertion of authority over Amazon violates the Supremacy Clause.**

To secure preliminary relief, Amazon need not prove its claims with "absolute certainty." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1998) (citation omitted). Instead, it must "only make a showing that the probability of [its] prevailing is better than fifty percent." *Id.* Moreover, it is enough to demonstrate a likelihood of success on a single claim. *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 151 (2d Cir. 1999); *G & P Warehouse Int'l LLC v. Abdallah Holdings, Inc.*, No. 25-cv-02661 (DG) (PK), 2025 WL 1835925, at *1 (E.D.N.Y. July 2, 2025).

Amazon easily clears that bar here, as the SERA Amendment violates the Supremacy Clause, offends long-settled doctrines of federal labor preemption, and is unconstitutionally vague. Moreover, PERB's pending exercise of jurisdiction over Amazon in Case No. UP-40005 is independently preempted and violates the Supremacy Clause.

1.    **The SERA Amendment violates the Supremacy Clause on its face.**

The Constitution makes clear that federal law is "the supreme Law of the Land" and binds the states regardless of "any Thing in the Constitution or Laws of any State." U.S. Const., art. VI, cl. 2. As relevant here, Congress enacted the NLRA to establish a uniform, nationwide system for governing private-sector labor relations, administered exclusively by the NLRB. State laws that intrude into that field are preempted. *Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 65 (2008).

Within the field of labor law preemption, the Supreme Court has identified two related doctrines that are relevant here. Under *Garmon* preemption, states may not regulate conduct that is actually or even "arguably" protected or prohibited by the NLRA. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). Under *Machinists* preemption, states may not regulate areas that Congress deliberately left unregulated and subject to "the free play of economic forces." *Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Wisc. Emp't Relations Comm'n*, 427 U.S. 132, 144 (1976). The SERA Amendment violates both.

a.    **The SERA Amendment is preempted under *Garmon* because it regulates conduct protected or prohibited by the NLRA.**

The NLRA comprehensively governs the rights and responsibilities of covered employees and employers. It gives employees the right to engage in—and refrain from—concerted activities. 29 U.S.C. § 157. It defines unfair labor practices for employers and unions alike. *Id.* § 158. It also expressly protects employer speech so long as it contains no threats or promises. *Id.* § 158(c).

In *Garmon*, the Supreme Court recognized that permitting states to regulate this field "involves too great a danger of conflict with national labor policy." 359 U.S. at 246. The Court held that "when it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield."

*Id.* at 244. Allowing states to regulate conduct "so plainly within the central aim of federal regulation," the Court explained, would risk "conflict between power asserted by Congress and requirements imposed by state law." *Id.*

That exclusivity extends beyond the text of the NLRA. *Garmon* preemption also reaches conduct even "arguably" within the NLRA because, otherwise, a state deciding where the line falls would "move the line itself." *Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 101 (2d Cir. 2006). Critically, this rule does not depend on whether the NLRB has chosen to assert jurisdiction in a particular case. As the Court explained, "the failure of the [NLRB] to assume jurisdiction did not leave the States free to regulate activities they would otherwise be precluded from regulating." *Garmon*, 359 U.S. at 238 (citing *Guss v. Utah Lab. Rels. Bd.*, 353 U.S. 1 (1957)). In short, the NLRB "has exclusive jurisdiction to prevent and remedy" violations of labor law. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 (1989).

The SERA Amendment nevertheless presumptively assigns to PERB jurisdiction over NLRA-covered employees and employers unless the NLRB "successfully asserts jurisdiction . . . pursuant to an order by the federal district court." N.Y. Lab. Law § 715(1)(b).[2] Absent such "assertion" of jurisdiction by the NLRB, the SERA Amendment imposes New York labor law on covered employees and employers. The SERA Amendment further directs PERB, "upon

---

[2] As explained further below, the SERA Amendment's purported carveout—excluding from PERB's jurisdiction those over whom the NLRB "successfully asserts jurisdiction . . . pursuant to an order by the federal district court"—is no carveout at all. *See* Part II.C *infra*. By presumptively giving PERB jurisdiction unless the NLRB does something that it does not do—now or ever—the SERA Amendment aggrandizes labor authority to New York State at all times. *See* Compl. ¶ 30; *NLRB v. State of New York*, No. 1:25-cv-01283 (N.D.N.Y. filed Sept. 12, 2025) (explaining the SERA Amendment "require[s] the NLRB to seek declaratory relief in federal district court in order to assert its jurisdiction over private sector labor relations in New York, effectively displacing the NLRB's congressionally mandated jurisdiction"). *Garmon* explained that this is impermissible. 359 U.S. at 238.

application and verification, [to] promptly certify the exclusive bargaining representative of any bargaining unit previously certified by another state or federal agency," including the NLRB. N.Y. Lab. Law § 715(2).

By its plain terms, the SERA Amendment gives PERB authority to regulate activities that are not just arguably subject to the NLRA, but which indisputably are. Both the NLRA and SERA prohibit employers from "interfere[ing] with, restrain[ing], or coerc[ing] employees in the exercise of the rights" guaranteed by each statute. 29 U.S.C. § 158(a)(1); N.Y. Lab. Law § 704(10). Both statutes prohibit firing, disciplining, or otherwise discriminating against an employee based on union activity or support. *See* 29 U.S.C. § 158(a)(4); N.Y. Lab. Law § 704(5), (8). Both statutes prohibit employers from refusing to bargain in good faith with a lawfully certified union. *See* 29 U.S.C. § 158(a)(5); N.Y. Lab. Law § 704(6). While some differences exist between the two regimes, SERA generally seeks to regulate a class of behaviors indisputably covered by the NLRA.

*Garmon* leaves no room for states to piggyback on the NLRB's exclusive authority. For example, when the State of Wisconsin sought to "debar[] certain repeat violators of the [NLRA] from doing business with the State," the Supreme Court struck down the law under *Garmon* preemption. *Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould, Inc.*, 475 U.S. 282, 283 (1986). "The manifest purpose and inevitable effect of the debarment rule," the Court explained, was "to enforce the requirements of the NLRA"—"a role Congress reserved exclusively for the [NLRB]." *Id.* at 291. If such a law were upheld, then nothing would stop "other States from taking similar action against labor law violators." *Id.* at 288. This would be especially problematic under *Garmon* because "[e]ach additional statute incrementally diminishes the [NLRB's] control over enforcement of the NLRA and thus further detracts from the integrated scheme of regulation created by Congress." *Id.* at 288–89 (internal quotation marks omitted).

The SERA Amendment tramples upon the NLRA without pretense. It requires PERB to usurp the NLRB's authority and, in turn, interferes with "the integrated scheme of regulation created by Congress." *Id.* at 289 (internal quotation marks omitted). Moreover, the differences between New York and federal labor law protections subject employers covered by the NLRA to a parallel but uneven labor law system that strips them of rights Congress granted. *Garmon* does not allow for this. *See id.* at 286.

Finally, a lapse in the NLRB's quorum is not a license for New York to step in and "fill the void." *See* Compl. ¶ 28 n.2. In *Garmon*, the Supreme Court squarely rejected the notion that Board inaction creates space for state regulation, holding that "the failure of the [NLRB] to assume jurisdiction d[oes] not leave the States free to regulate activities they would otherwise be precluded from regulating." 359 U.S. at 238. That is because preemption under the NLRA is a structural command, not a pragmatic gap-filler. New York's opportunistic bid to "fill the void" defies Congress's choice of national uniformity and is foreclosed by the Supremacy Clause.

> **b.     The SERA Amendment is preempted under *Machinists* because it regulates conduct Congress intended to leave unregulated.**

Under *Machinists* preemption, states may not regulate conduct that the NLRA intentionally left unregulated. *See* 427 U.S. at 144. When Congress enacted the NLRA, it not only defined specific unfair labor practices in Section 8 but also withheld regulation of other forms of economic pressure—such as strikes, lockouts, work stoppages, and bargaining strategies—because it recognized those tactics as legitimate tools in collective bargaining and other labor-management activities. By leaving these areas to the "free play of economic forces," Congress ensured that the government could not dictate the substantive outcomes of labor disputes or distort the relative bargaining power of the parties. State laws that seek to regulate, restrict, or rebalance those forces upset that equilibrium and are therefore preempted under *Machinists*.

The SERA Amendment is preempted under the *Machinists* doctrine because it intrudes into areas that Congress deliberately left to the free play of economic forces in a least two ways.

*First*, the SERA Amendment imposes restrictions on employer conduct far broader than what Congress chose to protect under the NLRA, thereby skewing the balance of power towards labor. For example, SERA prohibits employers from "do[ing] *any* acts . . . which interfere with, restrain or coerce employees in the exercise of" protected concerted activities. N.Y. Lab. Law § 704(10) (emphasis added). That catch-all prohibition strips away the balance Congress struck in Section 8 of the NLRA. While both provisions prohibit employers from "interfere[ing] with, restrain[ing], or coerc[ing]" employees in the exercise of their rights, the NLRA cabins that prohibition with Section 8(c), which protects the employer's right to express its own views. 29 U.S.C. § 158(c). Congress made a deliberate judgment that robust debate—including employer speech regarding (and opposing) unionization—should remain lawful so that employees can make informed choices about the selection of a bargaining representative, whether to go on strike, whether to approve a contract proposal, and so on. SERA's disregard for the need for robust debate permits the punishment of speech and advocacy Congress preserved, silencing one side of the debate and distorting the collective bargaining process.

The Supreme Court's decision in *Chamber of Commerce v. Brown*, 554 U.S. 60 (2008), confirms why SERA's approach cannot stand. In *Brown*, California barred employers from using state funds to "assist, promote, or deter union organizing." *Id.* at 63. The Court found the law preempted under *Machinists* because it embodied the very policy judgment Congress had considered and rejected when it enacted Section 8(c)—"that partisan employer speech necessarily interferes with an employee's choice about whether to join or to be represented by a labor union." *Id.* at 69 (cleaned up). By expressly protecting such speech, Congress ensured that the marketplace

of ideas, not government censors, would shape union elections. SERA, like the California law in *Brown*, strips away the protections Congress built into Section 8(c) and rebalances labor relations in favor of unions. That intrusion is "unequivocally preempted." *Brown*, 554 U.S. at 69.

Indeed, each distinction between the NLRA and SERA warps the balance of economic forces Congress deliberately preserved. Unlike the NLRA, which protects both the right to engage in and to refrain from concerted activity, 29 U.S.C. § 157, SERA omits the right to refrain, N.Y. Lab. Law § 703—stacking the deck in favor of unionization. Unlike the NLRA, which polices employer and union unfair labor practices, 29 U.S.C. §§ 158(a), (b), SERA targets only employers, N.Y. Lab. Law § 704—tilting enforcement power in one direction. And unlike the NLRA, which spells out the step-by-step process the NLRB must follow to determine and certify bargaining units, 29 U.S.C. § 159, SERA authorizes PERB to certify bargaining representatives automatically, N.Y. Lab. Law 715(2). Each of these departures places the government's thumb on the scale, undermining the very "free play of economic forces" that *Machinists* and *Brown* preserve.

*Second*, the SERA Amendment violates *Machinists* because it authorizes the state to inject itself into collective bargaining negotiations. SERA gives PERB discretion—and in some instances requires it—"to effect a voluntary, amicable and expeditious adjustment and settlement of the differences and issues between employer and employees which have precipitated or culminated in or threatened to precipitate or culminate in such labor dispute." N.Y. Lab. Law 702-a(1). In other words, New York has empowered PERB to insert itself into the bargaining process and tilt the balance of power between labor and management. The power "to effect" the resolution of collective bargaining negotiation defies the NLRA's promise that neither party should fear being compelled to agree to a proposal or make a concession. *See* 29 U.S.C. § 158(d).

That is exactly what the Supreme Court rejected in *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608 (1986). There, the City of Los Angeles conditioned renewal of a taxi franchise on the employer's resolution of an ongoing labor dispute within a fixed timeframe. *Id.* at 611. The Court held that this kind of governmental compulsion was preempted under *Machinists* because it distorted the collective bargaining process to force an outcome Congress had left to private economic pressure. *See id.* at 615–19. The Court made clear that while bargaining may be difficult and even fruitless, "government may not step in and become a party to the negotiations." *Id.* at 619. Indeed, *Machinists* forbids it.

The SERA Amendment is no different. By authorizing PERB to "effect a voluntary, amicable and expeditious adjustment and settlement of the differences and issues" arising from collective bargaining negotiations, N.Y. Lab. Law 702-a(1), New York seeks to have the state agency "step in and become a party to the negotiations." *Golden State Transit*, 475 U.S. at 619.

### 2.     PERB's adjudication of Case No. UP-40005 is preempted.

Even if this Court were to look past the SERA Amendment's facial defects, PERB's attempt to adjudicate the ALU's charge against Amazon is independently preempted under *Garmon*.

The charge filed by the ALU in PERB Case No. UP-40005 invokes N.Y. Lab. Law § 704(10). Compl. ¶ 62. That state-law provision makes it "an unfair labor practice for an employer . . . [t]o do any acts . . . which interfere with, restrain or coerce employees in the exercise of the rights guaranteed" under section 703 of SERA. N.Y. Lab. Law § 704(10). Section 703, in turn, guarantees employees "the right of self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion of employers." *Id.* § 703.

The SERA provisions applicable to the PERB charge are indistinguishable from federal law. Section 8(a)(1) of the NLRA makes it "an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" under section 7. 29 U.S.C. § 158(a)(1). Section 7, in turn, guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.[3] Because the ALU's charge invokes state-law provisions that mirror the NLRA, the conduct at issue in the charge is not merely "arguably" subject to federal law—it squarely falls within it.

The duplication is not theoretical. In NLRB Case No. 29-CA-361669, Region 29 is already investigating whether Amazon unlawfully disciplined former JFK8 employee Brima Sylla as retaliation for union activity. Compl. ¶ 50. The PERB charge in case No. UP-40005 alleges the very same conduct during the very same period. *Id*. ¶ 48. The two charges do not merely allege the same *kind* of conduct (all of which would be covered by the NLRA)—they raise the *exact same conduct*.

This collision is exactly what *Garmon* preemption forbids. When it comes to regulating labor conduct, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *Garmon*, 359 U.S. at 245. By seeking to haul Amazon into Case No. UP-40005, PERB has intruded into a domain reserved exclusively to federal law. Under *Garmon*, when it is "clear" that "activities which a State purports to regulate" are prohibited by

---

[3] As noted above, however, the NLRA further protects employees' "right to refrain from any or all such activities." 29 U.S.C. § 157. The distinction is immaterial for purposes of Amazon's as-applied *Garmon* preemption challenge to PERB's proceeding in Case No. UP-40005, because the allegations within the PERB charge fall entirely within Sections 7 and 8 of the NLRA.

Section 8 of the NLRA, the inquiry is over. *Id.* at 244. Whether the NLRB has "asserted jurisdiction," N.Y. Lab. Law § 715, is irrelevant. Under the Supremacy Clause, the PERB proceeding is "clear[ly]" preempted and must be enjoined.[4]

### 3. The SERA Amendment is unconstitutionally vague.

The Fourteenth Amendment to the U.S. Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Such deprivation occurs when a law fails to provide a person of ordinary intelligence fair notion of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement. *See Alexander v. Sutton*, 747 F. Supp. 3d 520, 546–47 (E.D.N.Y. 2024).

The SERA Amendment is unconstitutionally vague for at least three reasons.

*First*, the SERA Amendment provides no clear guidance about when PERB jurisdiction applies. The Amendment declares that PERB's jurisdiction extends to employers unless the NLRB "successfully asserts jurisdiction . . . pursuant to an order by the federal district court." N.Y. Lab. Law § 715(1)(b). Yet the NLRA does not contemplate such a mechanism—representation and unfair labor practice cases proceed before the NLRB, with judicial review in the federal courts of appeals. District courts play no role under the NLRA except in rare circumstances when the NLRB seeks temporary injunctions under 29 U.S.C. §§ 160(j) and (k). Moreover, even if the NLRB could attempt to "assert jurisdiction" over an employer in a federal district court, there is no way for an employer to know *ex ante* whether their conduct will be governed by New York or federal law.

---

[4] Notably, whether or not the ALU actually invoked the NLRB's jurisdiction by filing charges on Sylla's behalf is not determinative of whether *Garmon* applies. It is beyond serious debate that the conduct complained of in the PERB charge *clearly*—not arguably—articulates a violation of the NLRA. Under *Garmon*, the inquiry can end there. The fact that the ALU is pursuing NLRA charges on Sylla's behalf simply underscores the point that preemption of the PERB charge under *Garmon* is not a close case.

Employers are thus left to guess whether and when federal law displaces PERB. This kind of indeterminacy fails to provide fair notice and invites arbitrary enforcement.

*Second*, the SERA Amendment sweeps too broadly in defining unfair labor practices. Section 704(10) prohibits employers from committing "any acts . . . which interfere with, restrain, or coerce employees" in exercising their rights. N.Y. Lab. Law § 704(10). That catch-all goes far beyond the NLRA, which cabins similar restrictions in Section 8(a)(1) with Section 8(c)'s explicit protection for employer speech. *See* 29 U.S.C. § 158(c). Without such limits, ordinary employer communications—such as emails, trainings, or even lawful persuasion—can be branded unlawful "interference" by PERB. Employers cannot know where permissible advocacy ends and prohibited conduct begins, forcing them to self-censor and depriving the workplace of the robust debate Congress sought to protect.

*Third*, the SERA Amendment vests PERB with unfettered discretion to intervene in collective bargaining. Section 702-a(1) authorizes PERB to "effect a voluntary, amicable and expeditious adjustment and settlement" of labor disputes, but the statute sets no standards for when or how this power should be exercised. N.Y. Lab. Law 702-a(1). "Effect" could mean mediate, pressure, or even compel settlement, depending on PERB's whim. Employers will not know when PERB will decide to assert this authority, giving precisely the kind of open-ended discretion the Supreme Court has condemned as unconstitutional. *See City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). These vague and standardless commands violate due process.

These vagueness defects reinforce the irreparable harm the SERA Amendment imposes on Amazon. Amazon cannot know whether its ordinary communications will later be deemed unlawful "interference" nor whether PERB will insert itself into ongoing negotiations. The uncertainty forces companies like Amazon to self-censor and restructure their operations at

significant cost, while leaving them vulnerable to arbitrary enforcement. These injuries from the unconstitutional SERA Amendment underscore the need for preliminary relief.

## C. The balance of the hardships and the public interest favor Amazon.

"When the government is party to the suit," the court's analysis of "the public interest and the balance of equities merge." *We The Patriots, USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021). Both overwhelmingly favor Amazon.

As explained above, for nearly a century, the NLRB has successfully adjudicated disputes between private-sector employers and unions—including in New York. The current events of the day regarding the NLRB's quorum do not change that reality. As the NLRB's Acting General Counsel recently noted, the NLRB resolves more than 95 percent of its cases without board-level action, ensuring continuity even during periods of transition. *See* Press Release *supra* n.1. The public thus retains a fully functioning federal forum, while being spared the confusion and waste of dual state and federal regulation. The public interest therefore weighs heavily in favor of an injunction.

Moreover, preventing unconstitutional state encroachment on federal labor law serves the public interest because it upholds the supremacy of federal law and preserves a uniform national labor policy. Indeed, courts recognize that "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020); *see N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (explaining there is no public "interest in the enforcement of an unconstitutional law"). Because the SERA Amendment is unconstitutional, no assertion of public interest can tip the balance in favor of PERB. *See A.H. ex rel. Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2021) (observing that even when "the State has an interest in

administering its laws without interference by federal equitable power, that interest is diminished when the laws at issue likely impinge a federal constitutional right").

An injunction also promotes clarity and stability for employers, employees, and unions. Absent relief, private-sector entities in New York face uncertainty as to whether they are governed by federal labor law, state labor law, or both. That uncertainty undermines the predictability and uniformity Congress intended when it entrusted labor relations to the NLRB. By restoring the status quo balance between state and federal authority, an injunction serves the public interest.

By contrast, Amazon faces serious and irreparable burdens if an injunction is denied. Without relief, Amazon must defend itself in a structurally unconstitutional PERB proceeding and risk inconsistent rulings from state and federal tribunals. It must divert significant resources to parallel litigation and endure a chilling effect on its speech. Worse still, as long as the SERA Amendment purports to apply to private employers, Amazon cannot know whether its conduct will be judged by PERB under SERA or by the NLRB under the NLRA, or by both at the same time. The unconstitutional SERA Amendment puts Amazon in an untenable position.

PERB faces no comparable hardship if an injunction is granted. An injunction would simply preserve the status quo that existed for nearly a century before New York enacted the SERA Amendment weeks ago. PERB has never regulated NLRA-covered employers, so an injunction would not deprive it of any governmental prerogative or undermine the regulation of public employers already entrusted to its jurisdiction. Moreover, the subject of the PERB charge here— an alleged unfair labor practice regarding an employee at JFK8—is already at issue before the NLRB, meaning there is no risk that the employee lacks a forum for his grievances.

In short, PERB loses nothing by returning to its pre-SERA Amendment role, while Amazon avoids profound constitutional harms. The balance of the hardships therefore favors Amazon.

**D.** **Amazon should not be required to post a bond.**

Rule 65(c) of the Federal Rules of Civil Procedure allows the Court to require security when issuing a preliminary injunction, but provides "wide discretion to set the amount of a bond, and even to dispense with the bond requirement" in certain circumstances, such as when the enjoined party will not suffer damages or loss. *Dr.'s Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997). Those circumstances are present here, because PERB will not suffer any financial harm by being enjoined from enforcing the SERA Amendment or pursuing Case No. UP-40005. *See, e.g.*, *Regeneron Pharms., Inc. v. U.S. Dep't of Health & Human Servs.*, 510 F. Supp. 3d 29, 51 n.6 (S.D.N.Y. 2020) (dispensing with bond requirement where government defendants "have not shown a likelihood of financial harm"). If anything, PERB—and the taxpayers of New York—will save money while PERB is prevented from pursuing needless, unconstitutional proceedings.

## V. <u>CONCLUSION</u>

Amazon has shown that it is likely to succeed on the merits, that it faces imminent and irreparable harm, that the balance of hardships tips sharply in its favor, and that the public interest will be served by an injunction. New York's attempt to disrupt and supplant the longstanding framework for private-sector labor relations cannot stand. This Court should therefore grant Amazon's motion for a temporary restraining order and preliminary injunction and enjoin Defendants, and all those acting in concert with them, from: (1) enforcing the SERA Amendment, N.Y. Lab. Law § 715, against any NLRA-covered employers or employees, including Amazon; and (2) exercising or asserting authority over Amazon in PERB Case No. UP-40005.

DATED: New York, New York
       September 22, 2025

Amber M. Rogers*
HUNTON ANDREWS KURTH LLP
1455 Ross Avenue, Suite 3700
Dallas, Texas 75202
Tel: (214) 979-3000
Fax: (214) 880-0011
arogers@hunton.com
*Attorneys for Plaintiff*

Kurt G. Larkin*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Tel: (804) 788-8200
Fax: (804) 788-8218
klarkin@hunton.com
*Attorneys for Plaintiff*

\**pro hac vice* motion forthcoming

Respectfully submitted,

By: */s/ James J. La Rocca*
    James J. La Rocca
    HUNTON ANDREWS KURTH LLP
    200 Park Avenue, 52nd Floor
    New York, New York 10166
    Tel: (212) 309-1000
    Fax: (212) 309-1100
    jlarocca@hunton.com
    *Attorneys for Plaintiff*