UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMAZON.COM SERVICES LLC,<br><br>410 Terry Avenue North<br>Seattle, Washington 98109-5210,<br><br><br>Plaintiff,<br><br>v.<br><br>NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD, TIMOTHY CONNICK, in his official capacity as Chair of the New York State Public Employment Relations Board, BARBARA C. DEINHARDT, in her official capacity as Member of the New York State Public Employment Relations Board, ROSEMARY A. TOWNLEY, in her official capacity as Member of the New York State Public Employment Relations Board, LAURA H. DELANEY, in her official capacity as General Counsel of the New York State Public Employment Relations Board, and JOSEPH E. O'DONNELL, in his official capacity as Director of Private Employment Practices and Representation for the New York State Employment Relations Board,<br><br><br>P.O. Box 2074<br>Empire State Plaza<br>Agency Building 2<br>Albany, New York 12220-0074,<br><br><br>Defendants. | Case No.: 1:25-cv-05311-ERK-MMH<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE BY AMAZON LABOR UNION NO. 1, INTERNATIONAL BROTHERHOOD OF TEAMSTERS**<br><br>*Date of service: October 2, 2025* |

David O'Brien Suetholz
dsuetholz@teamster.org
Clement Tsao
ctsao@teamster.org
Willie J. Burden
wburden@teamster.org
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 624-68470

Richard Griffin
rgriffin@bredhoff.com
BREDHOFF & KAISER, PLLC
805 15th Street NW Ste. 1000
Washington, DC 20005
Phone: (202) 842-2600

Jeanne Mirer (NY Bar No. 4546677)
jmirer@julienmirer.com
JULIEN MIRER & ASSOCIATES, PLLC
1 Pierrepont Plaza, 12th Floor
Brooklyn, NY 11201
Phone: (212) 231-2235

Julie Gutman Dickinson *(Pro hac vice pending)*
jgd@bushgottlieb.com
Jennifer A. Abruzzo *(Pro hac vice pending)*
jabruzzo@bushgottlieb.com
Luke Taylor
ltaylor@bushgottlieb.com
BUSH GOTTLIEB, ALC
801 N. Brand Blvd., Suite 950
Glendale, CA 91203
Phone: (818) 973-3228

Edward M. Gleason, Jr.
ed@hsglawgroup.com
Pamela M. Newport
pamela@hsglawgroup.com
HERZFELD, SUETHOLZ, GASTEL, LENISKI
AND WALL, PLLC
600 Vine Street | Suite 2720
Cincinnati, OH 45202
Phone: (513) 381-2224

Ian Hayes (NY Bar No. 5265889)
ihayes@hayesdolce.com
HAYES DOLCE LLP
135 Delaware Avenue, Suite 502
Buffalo, NY 14202
Phone: (716) 534-8388

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES ..............................................................................................1

INTRODUCTION ..........................................................................................................1

BACKGROUND .............................................................................................................4

I.      The Challenged Amendment to SERA § 715 ...............................................4

II.     Plaintiff's Lawsuit.........................................................................................5

III.    The Proposed Intervenor...............................................................................6

IV.    The Pending PERB Charge............................................................................9

ARGUMENT .................................................................................................................10

I.      The Union's motion is timely. ...................................................................11

II.     The Union is entitled to intervention as of right to defend S.8034A..............12

        A.     The Union has a direct interest in this action............................13

        B.     This action's disposition may, as a practical matter, impair the Union's ability to protect its interests. ....................................14

        C.     The existing parties may not adequately represent the Union's interests..............15

II.     Alternatively, permissive intervention should be granted. ................................17

        A.     The Union's interest in this action turns on common questions of law and fact shared with those at issue in this action. ...............................18

        B.     Intervention will promote development of the factual record and fair adjudication of the underlying legal issues.............................19

CONCLUSION...............................................................................................................21

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT (L.R. 7.1) .......................................1

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                              **Page(s)**

*335-7 LLC v. City of New York*,
   No. 20 CIV. 1053 (ER), 2020 WL 3100085 (S.D.N.Y. June 11, 2020)...............................19

*Allco Fin. Ltd. v. Etsy*,
   300 F.R.D. 83 (D. Conn. 2014)...................................................................................................11

*Amazon.com Servs. LLC v. NLRB*,
   No. 24-50761, 2025 WL 2476161 (5th Cir. Aug. 28, 2025) ...............................................8, 9

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
   241 F.R.D. 100 (D. Conn. 2007)...........................................................................................17, 20

*Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. State of N.Y.*,
   No. 19-CV-11285 (KMK), No. 20-CV-634 (KMK), 2020 WL 5658703
   (S.D.N.Y. Sept. 23, 2020).................................................................................................. *passim*

*Cmty. Hous. Improvement Program v. City of New York*,
   59 F.4th 540 (2d Cir. 2023) ...............................................................................................15, 18

*Delaware Tr. Co. v Wilmington Tr., N.A.*,
   534 B.R. 500 (S.D.N.Y. 2015).................................................................................................17

*Floyd v. City of New York*,
   770 F.3d 1051 (2d Cir. 2014) (per curiam)......................................................................10, 11

*Friends of E. Hampton Airport, Inc. v. FAA*,
   No. 15-CV-0441 (JS) (ARL), 2016 WL 792411 (E.D.N.Y. Feb. 29, 2016) .........................12

*H.L. Hayden Co. v. Siemens Medical Systs., Inc.*,
   797 F.2d 85 (2d Cir. 1986)......................................................................................................12

*Harris v. Bessent*,
   No. 25-5037, 2025 WL 980278 (D.C. Cir. Mar. 28, 2025) ....................................................2

*Hartford Fire Ins. Co. v. Mitlof*,
   193 F.R.D. 154 (S.D.N.Y. 2000) ......................................................................................11, 12

*New York v. HHS*,
   Nos. 19 Civ. 4676 (PAE), 19 Civ. 5433 (PAE), 19 Civ. 5435 (PAE), 2019 WL
   3531960 (S.D.N.Y. Aug. 2, 2019)....................................................................................13, 18

*United States v. Hooker Chems. & Plastics Corp.*,
   749 F.2d 968 (2d Cir. 1984) ...................................................................................................10

*Hum. Servs. Council of New York v. City of New York*,
   2022 WL 4585815, at *4 (S.D.N.Y. Sept. 29, 2022)............................................................18

*Humphrey's Executor v. United States*,
   295 U. S. 602 (1935)............................................................................................................3

*Jones v. Schneiderman*,
   No. 11 CIV. 8215 KWM, 2012 WL 3578147 (S.D.N.Y. Aug. 6, 2012)..............................14

*Miller v. Silbermann*,
   832 F. Supp. 663 (S.D.N.Y. 1993) ..............................................................................17, 19

*Nat'l Ass'n of Immigr. Judges v. Owen*,
   139 F.4th 293 (4th Cir. 2025) ............................................................................................15

*New York Pub. Interest Grp., Inv. v. Regents of the Univ. of N.Y.*,
   516 F.2d 350 (2d Cir. 1975)........................................................................................12, 16

*"R" Best Produce, Inc. v. Shulman-Rabink Mktg. Corp.*,
   467 F.3d 238 (2d Cir. 2006)..............................................................................................10

*Restor-A-Dent Dental Lab., Inc. v. Certified Alloy Prods., Inc.*,
   725 F.2d 871 (2d Cir. 1984)..............................................................................................10

*San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*,
   359 U.S. 236 (1959)........................................................................................5, 6, 14, 15

*New York v. Scalia*,
   No. 1:20-cv-1689-GHW, 2020 WL 3498755 (S.D.N.Y. June 29, 2020) ..............................13

*Space Expl. Techs. Corp. v. NLRB*,
   No. 24-10855, 2025 WL 2396748 (5th Cir. Aug. 19, 2025) .................................................3

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972)....................................................................................................14, 15

*Trump v. Slaughter*,
   606 U. S. ____ (2025)...........................................................................................................3

*Trump v. Wilcox*,
   145 S. Ct. 1415 (2025)..........................................................................................................2

*Up State Tower Co. v. Town of Cheektowaga*,
   No. 1:19-cv-280, 2019 WL 4452413 (W.D.N.Y. Sept. 17, 2019)........................................18

*United States v. Yonkers Bd. of Educ.*,
   801 F.2d 593 (2d Cir. 1986)...............................................................................................11

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)..................................................................................14

*Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd.*,
    782 F. Supp. 870 (S.D.N.Y. 1991) .....................................................................12

*Yang v. Kellner*,
    No. 20 Civ. 3325 (AT), 2020 WL 2115412 (S.D.N.Y. May 3, 2020)...................12

**Federal Statutes**

Civil Service Reform Act.....................................................................................15

Fed. R. Civ. P. 24(a)(2)............................................................................10, 12, 14

Fed. R. Civ. P. 24(b)(2)..........................................................................................4

Federal Rule of Civil Procedure 24 .......................................................1, 10, 17

FLSA....................................................................................................................13

National Labor Relations Act .....................................................................*passim*

National Labor Relations Act, 29 U.S.C. § 151 *et seq.*...........................................2

NLRA Section 7...............................................................................................5, 15

NLRA Section 8...............................................................................................5, 15

**State Statutes**

N.Y. Lab. Law § 715(1)(b) ..................................................................................1, 5

SERA ..........................................................................................................*passim*

SERA Amendment................................................................................................*passim*

SERA Section 704(10)............................................................................................9

SERA § 715 ..................................................................................................*passim*

**Other Authorities**

*Amazon v. NLRB*,
    No. 25-886 .......................................................................................................3

Celine McNicholas et al., Unlawful Employer Opposition to Union Election
    Campaigns, ECON. POL'Y INST. 5 (Dec. 11, 2019), https://perma.cc/J4V3-
    Y9NA ...............................................................................................................3

Celine McNicholas, et al., *Workers are winning union elections, but it can take years to get their first contract,* Economic Policy Institute (May 1, 2023), https://www.epi.org/publication/union-first-contract-fact-sheet/#:~:text=A%20more%20recent%20study%20by,working%20without%20a%20first%20contract. ..................................................................................3

NLRB Case No. 29-CA-310869 ...........................................................................7

NLRB. *Supra* ......................................................................................................16

Paul C. Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization Under the NLRA*, 96 Harv. L. Rev. 1769, 1769-70 (1983) ......................................4

## INTRODUCTION

Proposed Intervenor Amazon Labor Union No. 1, International Brotherhood of Teamsters ("ALU-IBT Local 1" or the "Union") files this brief in support of its motion to intervene in the above-captioned matter under Federal Rule of Civil Procedure 24.[1] ALU-IBT Local 1 seeks to intervene as of right, or in the alternative, permissively, to oppose Plaintiff Amazon.com Services LLC's ("Plaintiff") action to prevent the enforcement of Section 715 of the New York State Employment Relations Act ("SERA"), as recently amended by S.8034A (the "SERA Amendment").

The State of New York enacted S.8034A to allow the New York Public Employment Relations Board ("PERB") to, *inter alia,* adjudicate alleged violations of the SERA with respect to "any employer, employees, trades, or industries" over which the National Labor Relations Board has not "successfully assert[ed]" jurisdiction, as defined in the statute. SERA § 715(1)(b), as amended by S.8034A. ALU-IBT Local 1 represents workers employed at Amazon.com LLC JFK8 Fulfillment Center's JFK8 facility ("JFK8") in Staten Island. Subsequent to the enactment of S.8034A, ALU-IBT Local 1 filed a charge with PERB alleging employer Amazon.com LLC JFK8 Fulfillment Center engaged in unfair labor practices in violation of SERA (the "ULP Charge"). PERB's jurisdiction to adjudicate this dispute is based on the changes to SERA § 715 brought about by S.8034A. As discussed in more detail below, if the Plaintiff succeeds in obtaining the relief sought in the instant complaint, ALU-IBT Local 1 will, as a practical matter, be deprived of a forum in which it may effectively vindicate the rights of the employees it represents.

---

[1] Proposed Intervenor has conferred with counsel for the current parties. Defendants do not oppose this motion. Plaintiff has reserved its position on intervention until it reviews the filed motion.

Plaintiff filed the instant complaint seeking injunctive and declaratory relief to halt the enforcement of SERA Section 715 as amended, on the purported basis that the expansion of PERB's jurisdiction contemplated therein conflicts with, and is wholly preempted by, the National Labor Relations Act, 29 U.S.C. § 151 *et seq*. ("NLRA"), and on the additional purported basis that the SERA amendment is unconstitutionally vague.  Since 2021, ALU-IBT Local 1 (and its predecessor in interest, the Amazon Labor Union ("ALU")) have been mired in protracted litigation both before the NLRB and in federal courts, pertaining to allegations that Amazon.com LLC JFK8 Fulfillment Center, its parent company, Plaintiff Amazon.com Services LLC, and related affiliates (collectively, "Amazon") have engaged in a coordinated campaign of NLRA violations calculated to stifle the right of employees ALU-IBT Local 1 represents at JFK8 and other logistics facilities to organize and bargain collectively with their employer. To date, however, most of these charges remain unresolved, and Amazon's unlawful conduct continues unabated.

Central to ALU-IBT Local 1's mission is protecting the labor rights of the workers that ALU-IBT Local 1 represents. Prior to the enactment of S.8034A, the Union had essentially no choice but to continue to rely on the NLRB in its attempts to challenge unfair labor practices committed by Amazon. The Union was confined to the NLRB notwithstanding that the NLRB has lacked the quorum it needs to properly function ever since President Trump fired Board Member Gwynn Wilcox on January 27, 2025, based on his view that the NLRA's statutory protections against Board Members' removal are unconstitutional—which view the Supreme Court appears poised to ultimately affirm. *See Trump v. Wilcox,* 145 S. Ct. 1415 (2025) (granting stay of D.C. Circuit's *en banc* decision enjoining Wilcox's removal); *Harris v. Bessent*, No. 25-5037, 2025 WL 980278, at *47 (D.C. Cir. Mar. 28, 2025) (Millet, J., dissenting from stay of

order reinstating Wilcox) (noting Wilcox's removal has "disable[d] . . . [the] NLRB from operating by depriving [it] of a quorum"); *see also Trump v. Slaughter*, 606 U. S. ____ (2025) (granting cert before judgment, to consider, *inter alia*, whether the Supreme Court should overrule *Humphrey's Executor v. United States*, 295 U. S. 602 (1935)). The Union was confined to the NLRB notwithstanding also that employer-filed challenges to the NLRB's constitutionality, including Amazon's, have raged of late through the Circuits, leading so far to one Court of Appeals enjoining the NLRB from proceeding with litigation and enforcement in live cases, *see generally Space Expl. Techs. Corp. v. NLRB*, No. 24-10855, 2025 WL 2396748 (5th Cir. Aug. 19, 2025), with decisions from other Courts of Appeals still pending, *see Amazon v. NLRB*, No. 25-886 (filed Feb. 11, 2025) (appeal of District Court's denial of motion for preliminary injunction to prevent the NLRB from prosecuting a case against Amazon). And—even before President Trump's attack on the Board's independence, the Board's resultant loss of quorum, and these employer attacks on the NLRB's constitutionality—the NLRA was notorious for its weak remedial regime and years of underfunding resulting in understaffing, combined with employer dilatory tactics, had resulted in the NLRB's increasingly-slow processing of cases. *E.g.* Economic Policy Institute, *Workers are winning union elections, but it can take years to get their first contract*, (May 1, 2023)[2] (collecting studies of NLRB's processing delays, and noting "long delays to first contracts are still the norm—and, to make matters worse, these delays have been steadily increasing since the early 2010s").[3]

---

[2] Available at https://www.epi.org/publication/union-first-contract-fact-sheet/#:~:text=A%20more%20recent%20study%20by,working%20without%20a%20first%20contract.

[3] For just two examples of the copious literature documenting these issues, see Celine McNicholas et al., Unlawful Employer Opposition to Union Election Campaigns, ECON. POL'Y INST. 5 (Dec. 11, 2019), https://perma.cc/J4V3-Y9NA (explaining how NLRB currently "fails to prevent employers from engaging in aggressive, coercive, and intimidating opposition to

The challenged amendment of SERA Section 715 provides ALU-IBT Local 1 the opportunity to timely redress such violations of its and its members' rights through PERB, when the NLRB is purposefully hobbled. On September 15, 2025, the Union took advantage of that opportunity by filing a charge alleging violations of the SERA at JFK8 based on Amazon's unlawful termination of union supporter Brima Sylla. The instant action threatens the Union's ability to adjudicate these allegations. On that basis, ALU-IBT Local 1 is entitled to intervene as of right, because it holds a direct, significantly protectable interest in the vindication of its members' rights, and Defendants may not adequately represent ALU-IBT Local 1's interest.

Even if this Court finds that intervention as of right is not here appropriate, the Court should still exercise its broad discretion to permit ALU-IBT Local 1 to intervene pursuant to Fed. R. Civ. P. 24(b)(2), because the Union's defense of S.8034A shares common questions of both law and fact with the main action, and, as described below, ALU-IBT Local 1 can meet all of the other prerequisites for permissive intervention.

## BACKGROUND

### I.     The Challenged Amendment to SERA § 715

On September 5, 2025, the State of New York amended SERA Section 715 to confer upon PERB the jurisdiction to adjudicate alleged violations of the SERA with respect to "any employer, employees, trades, or industries" over which the National Labor Relations Board has not "successfully assert[ed]" jurisdiction. N.Y. Lab. Law § 715(1)(b), as amended by S.8034A.

---

workers' efforts to unionize"); Paul C. Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization Under the NLRA*, 96 HARV. L. REV. 1769, 1769-70 (1983) ("[T]he fraction of the work force actually engaged in collective bargaining is steadily declining. A major factor in this decline has been the skyrocketing use of coercive and illegal tactics - discriminatory discharges in particular - by employers determined to prevent unionization of their employees . . . the current system of unfair labor practice remedies has proved powerless to contain such intimidation or to undo its effects.").

4

This new legislative framework essentially sorts all private-sector employees in New York into one of two categories of labor rights protections, either (1) employees over which the NLRB has successfully asserted jurisdiction, and are therefore protected from unfair labor practices under the NLRA; or (2) employees over which the NLRB has *not* successfully asserted jurisdiction, and are therefore now protected from unfair labor practices by the NLRA's state law analogue, the SERA. Under the plain language of S.8034A, these categories are mutually exclusive by definition, such that the successful assertion of jurisdiction by the NLRB over a given workplace or industry automatically deprives PERB of jurisdiction of the workers in question. *See* SERA § 715(1) ("[t]he provisions of this article shall not apply to. . . (b) employees where the national labor relations board successfully asserts jurisdiction over any employer, employees, trades, or industries pursuant to an order by the federal district court established under article three of the United States constitution").

## II.    Plaintiff's Lawsuit

Shortly after S.8034A's enactment, Plaintiff filed the instant lawsuit to enjoin the enforcement of SERA § 715 as amended. Count One is a facial challenge, alleging the SERA Amendment is preempted pursuant to *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236 (1959), because the Amendment permits PERB to exercise jurisdiction over conduct that is protected or arguably protected by Section 7 of the NLRA and over conduct that is prohibited or arguably prohibited by Section 8 of the NLRA. *See* Complaint, Dkt. 1, ¶¶ 24, 55-59 ("Compl.").

Count Two is an as applied challenge, alleging that PERB's processing of the charge that Proposed Intervenor itself filed pursuant to the Amendment is preempted under *Garmon*. *Id*. ¶¶ 43, 45, 60-65; *infra* pp. 9-10 (describing this charge).

5

Count Three facially challenges the Amendment on the purported basis that the Act intrudes on conduct that Sections 8(c) and 8(d) of the NLRA intend be left unregulated, *id.* ¶¶ 66-73. The Complaint does not suggest how every application of the Amendment would intrude on the scope of free play those sections confer under applicable precedents, nor suggest that the charge underlying Count Two does so.

Through these first three counts, Plaintiff contends that the NLRA preempts S.8034A to the extent that the latter seeks to regulate any labor relations that arguably fall under the statutory scope of the NLRA, regardless of whether the NLRB chooses to exercise jurisdiction in a case that is initially filed in PERB. Count Four alleges the Amendment is unconstitutionally vague, based primarily on allegations about how the amended SERA interacts with the NLRA. Compl. ¶¶ 74-82.

Putting aside the mischaracterizations in the allegations of Counts Three and Four, Plaintiff's *Garmon* preemption counts ignore that the NLRB has for years been an underfunded, understaffed institution failing to function as Congress intended in enacting the National Labor Relations Act intended it to. An institution that, now, in essence, is at full dysfunction due to a lack of quorum, independence, and enforcement mechanisms.[4] Far from creating a conflicting regulatory framework, S.8034A provides an alternative pathway to ensure that all workers in the state of New York have the right to organize, bargain collectively, act concertedly, and protect themselves from unlawful retaliation from their employers when they seek to exercise those rights.

### III.    The Proposed Intervenor

---

[4] Notably, the current government shutdown has caused the NLRB to shutter its doors, leaving workers in New York State with no avenue to obtain redress.

ALU-IBT Local 1 is a labor union representing nearly 5,000 employees of Amazon.com LLC JFK8 Fulfillment Center who work at Amazon's JFK8 facility in Staten Island. Declaration of Jeanne Mirer ("Mirer Dec."), ¶¶ 5, 10, 12. More than three years after these workers voted in an NLRB election to unionize with ALU-IBT 1's predecessor—the ALU—[5] Amazon has still refused to bargain with them, much less reach a collective bargaining agreement. *Id*. ¶¶ 6-7. Instead, Amazon rolled out the now-common employer strategy of willfully violating the National Labor Relations Act and abusing the NLRB's processes to curry delay and abrade workers' morale, hoping that whatever remedies the NLRB may eventually issue will come too late and be too meager to compensate for or deter these violations. *Supra* p. 3 (describing these delays and weak remedies). And Amazon has brought this strategy to new heights by moving federal courts to enjoin NLRB proceedings, based on Amazon's arguments that the NLRB's structure is unconstitutional.  In short, Amazon has exploited and amplified the problems that animated S.8034A's enactment.

Specifically, the ALU filed a representation petition with the NLRB on December 22, 2021, to request an election for JFK8 workers to vote on whether to unionize with ALU. Mirer Decl. ¶ 5. The ALU won that election by over 500 votes when it finally was held in March and April 2022. *Id*. In light of its election victory, on April 2, 2022, the ALU requested to collectively bargain with Amazon on behalf of the JFK8 employees who had designated the ALU as their representative during the election. Mirer Dec. ¶ 6. Amazon's refusal to bargain *at all* with the ALU—much less bargain in good faith as required by the NLRA—led the ALU to

---

[5] On June 3, 2024, the International Brotherhood of Teamsters ("IBT") and the ALU entered into a formal affiliation agreement pursuant to which the IBT chartered the ALU into a new local union known as Amazon Labor Union No. 1, International Brotherhood of Teamsters ("ALU-IBT Local 1") and the JFK8 employees who were included in the petition and election in discussed below, are now represented by ALU-IBT Local 1. Mirer Decl. ¶ 12.

file an unfair labor practice charge in NLRB Case No. 29-CA-310869 and, ultimately, resulted in the issuance of an administrative complaint by the NLRB against Amazon. Mirer Dec. ¶ 7. The NLRB has also found cause to issue administrative complaints alleging that Amazon has committed other unfair labor practices against this workforce, including unlawful discipline of employees. *Id*.

Rather than bargain, Amazon has contested its loss in the 2022 election and has repeatedly used the NLRB's administrative process to challenge the election results. *Id*. ¶¶ 8-11, 13. After an initial twenty-four day hearing, an administrator hearing officer overruled Amazon's objections. *Id*. ¶ 8. Amazon once again challenged that decision by requesting review by the Director of NLRB Regional Office 28 ("Regional Director"), whom Amazon provided a 100-page brief to chew on. The Regional Director considered and eventually rejected Amazon's arguments, upheld the election, and, on January 11, 2023 certified the Union. *Id* ¶¶ 9-10. In that way, Amazon delayed its obligation to bargain with its workers' duly chosen representative for almost a year.

Yet Amazon's challenges continued, and not until August 29, 2024 – almost two and a half years after the election - did the NLRB issue a decision affirming the Regional Director's upholding of the election results. *Id*. ¶ 13. But Amazon still refused to respect its workers' choice of union representation and continued to fight it.  Specifically, on September 5, 2024, Amazon filed suit in the United States District Court for the Western District of Texas, a forum far from the JFK8 operation in Staten Island, NY, to enjoin the NLRB from certifying the Union as the collective bargaining representative of JFK8 employees, based on Amazon's claim, *inter alia*, that the NLRA unconstitutionally protects NLRB members from removal by the President. *Id*. ¶ 14; *Amazon.com Servs. LLC v. NLRB*, No. 24-50761, 2025 WL 2476161, at *2 (5th Cir. Aug. 28,

2025). In sum, Amazon is seeking to enjoin proceedings before the PERB while at the same time making various claims in court challenging the NLRA's and NLRB's constitutionality. This has resulted in protracted litigation in the district court and Fifth Circuit Court of Appeals that to this day remains pending. *See generally Amazon.com Servs. LLC v. NLRB*, No. 24-50761, 2025 WL 2476161 (5th Cir. Aug. 28, 2025) (canvassing litigation's history). To summarize: JFK 8 employees petitioned for a Union election in December 2021. The Union won that election in April 2022. Amazon to this day has abused the processes of certifying the Union and requiring good faith bargaining, and has outright refused to bargain with its workers' chosen representative over terms and conditions of employment.

Most recently at the JFK8 facility, on or about August 9, 2025, Amazon fired ALU-IBT Local 1 member and prominent union supporter Brima Sylla. Mirer Dec. ¶ 15. This termination is just the latest example of Amazon's efforts to squelch union activities and support at JFK8. On September 15, the Union filed a charge with PERB pursuant to S.8034A alleging that Sylla's termination violates §704(10) of SERA. Mirer Dec. ¶ 15 & Ex. A.

## IV.    The Pending PERB Charge

Shortly after S.8034A went into effect on September 5, 2025, ALU-IBT Local 1 filed the ULP Charge, alleging that Amazon.com LLC JFK8 Fulfillment Center violated SERA Section 704(10) by taking various adverse actions, up to and including termination, against Brima Sylla, —a union officer and former "stower" at JFK8—because he held prominent roles with ALU-IBT Local 1 from the outset of the Union's organizing campaign until August 2025. *Id*. Prior to the enactment of S.8034A, PERB lacked jurisdiction over the workers at JFK8. Compl. ¶ 26. Count Two of Plaintiff's action explicitly refers to the ULP Charge, requests the Court declare PERB's jurisdiction over the charge is unconstitutional and preempted by the NLRA, and seeks

9

injunctive relief against such jurisdiction. Therefore, if Plaintiff is successful in this action, the ULP Charge will be rendered moot, and ALU-IBT Local 1 will be unable to file additional charges with PERB pertaining to unfair labor practices at JFK8. Instead, the Union will be forced to make additional futile attempts at redress through the NLRB.

The Union notes that PERB has stayed processing of this charge during the pendency of the NLRB's motion in the Northern District of New York seeking a preliminary injunction against the SERA Amendment, on which motion briefing concludes in December. Mirer Decl. ¶15-16; 25-cv-12830-GTS-ML (N.D.N.Y), ECF No. 20 p. 2.

## ARGUMENT

Federal Rule of Civil Procedure 24 permits a party to intervene either as of right or permissively. To be granted intervention, whether as of right or by permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quoting "*R*" *Best Produce, Inc. v. Shulman-Rabink Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). Regardless of the grounds asserted for intervention, all the "components" of the standard must "be read not discretely, but together," such that a strong showing on one of the factors may compensate for a weak showing on another. *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984) (Friendly, J.) (explaining these components are "not bright lines", and that Rule 24(a)(2)'s requirements must be read pragmatically "in the context of the particular statutory scheme that is the basis for the litigation").

While much of the analysis applicable to intervention as of right overlaps with that applicable to permissive intervention, to show entitlement to intervention as of right, the movant must also demonstrate that disposing of the action without intervention "may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see also Restor-A-Dent Dental Lab., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871 (2d Cir. 1984). As discussed in more detail below, this motion is timely; ALU-IBT Local 1's interest in the instant action is direct and significantly protectable; and while the Union shares the same goal as the Defendants, namely the enforcement of SERA Section 715 as amended by S.8034A, the Union's interest and expertise are both meaningfully distinct from that of either Defendant. Absent intervention, therefore, there is a high likelihood that ALU-IBT Local 1's interest will not be adequately represented by the extant litigants, and the Union will be unable to protect its interest.

## I.      The Union's motion is timely.

Timeliness is evaluated "flexibl[y]" and "the decision is one entrusted to the district judge's sound discretion." *Floyd*, 770 F.3d at 1058 (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594-95 (2d Cir. 1986)). Factors that bear on this flexible standard include: the length of time the applicant knew or should have known of his interest before making the motion; prejudice to existing parties resulting from the applicant's delay; prejudice to applicant if the motion is denied; and the presence of unusual circumstances militating for or against a finding of timeliness. *Id*. The most significant criterion is whether "delay in moving for intervention has prejudiced any of the existing parties." *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 86 (D. Conn. 2014) (quoting *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000)).

There has been no delay in filing this motion and there is no reason to believe that intervention at this stage will prejudice any party to this action. As of the date of this filing, a mere 7 days have passed since the issuance of the summons. *See* Dkt. 19 (September 25, 2025). Where, as here, a party seeks "to intervene at a very early stage in the litigation," courts in this Circuit routinely deem the motion timely, even if there were far longer lapses of time between the filing of the complaint and the motion to intervene. *See Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. State of N.Y.,* No. 19-CV-11285 (KMK), No. 20-CV-634 (KMK), 2020 WL 5658703 (S.D.N.Y. Sept. 23, 2020), at *7 (cleaned up) (permitting intervention where motion was filed three months after filing of the complaint and collecting cases where delay was longer). Because "this action is in its infancy," ALU-IBT Local 1's participation "will not result in delay or prejudice" to any party. *Friends of E. Hampton Airport, Inc. v. FAA*, No. 15-CV-0441 (JS) (ARL), 2016 WL 792411, at *9 (E.D.N.Y. Feb. 29, 2016); *see also Yang v. Kellner*, No. 20 Civ. 3325 (AT), 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020) ("[I]ntervention would not delay or prejudice the adjudication of the parties' rights, considering that it was sought at the earliest stage of the litigation" and there was no need "to extend any preexisting deadlines or reschedule any proceedings to accommodate" the intervenor). Under these circumstances, there can be no reasonable argument that any party to this action will be prejudiced by ALU-IBT Local 1's intervention.

## II.    The Union is entitled to intervention as of right to defend S.8034A.

To establish an entitlement to intervention as of right pursuant to Fed. R. Civ. P. 24(a)(2), the movant must show not only that it has an interest "relating to the . . . transaction which is the subject matter of the action" but also that disposition of the proceeding without intervention

would impair the proposed intervenor's ability to protect its interest. *Hartford Fire Ins. Co.*, 193 F.R.D. 154 at 161. ALU-IBT Local 1's interest in this action meets both criteria.

A.      The Union has a direct interest in this action.

A movant seeking intervention of right must demonstrate an interest in the underlying action that is significantly protectable, i.e. that is direct. *H.L. Hayden Co. v. Siemens Medical Systs., Inc.*, 797 F.2d 85, 88 (2d Cir. 1986); *Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991) ("The interest must be 'significantly protectable such that it will be directly and immediately affected by the litigation'").

It is well settled that a party, like ALU-IBT Local 1, that is directly affected by a law has an interest in whether and how that law is enforced. *See, e.g., New York Pub. Interest Grp., Inv. v. Regents of the Univ. of N.Y.*, 516 F.2d 350, 351 (2d Cir. 1975) (per curiam) (holding that pharmacists had interest in case challenging regulation prohibiting advertising the price of prescription drugs); *Bldg. & Realty Inst.*, 2020 WL 5658703, at *11 (holding that groups representing tenants had interest in case challenging validity of rent-control laws); *New York v. Scalia*, No. 1:20-cv-1689-GHW, 2020 WL 3498755, at *2 (S.D.N.Y. June 29, 2020) (holding that employer groups had interest in case challenging regulation governing FLSA claims); *New York v. HHS*, Nos. 19 Civ. 4676 (PAE), 19 Civ. 5433 (PAE), 19 Civ. 5435 (PAE), 2019 WL 3531960, at *4 (S.D.N.Y. Aug. 2, 2019) (religious healthcare workers had interest in lawsuit challenging federal regulation permitting healthcare providers to refrain from procedures that violate religious beliefs).

The outcome of this action will very likely determine whether ALU-IBT Local 1 may avail itself not only of PERB as a forum to adjudicate alleged violations of both its and its members' rights, but whether the Union and the workers it represents are even subject to the

13

protections of the SERA at all. If the Plaintiff succeeds in establishing that SERA Section 715 as amended is preempted by the NLRA, ALU-IBT Local 1 and the employees it represents in New York will be immediately deprived of significant statutory rights under New York law.

Moreover, ALU-IBT Local 1 has already filed a charge before PERB that remains pending as of the date of this action. Plaintiff explicitly refers to the ULP Charge in Count 2, seeks a declaration from the Court that PERB's jurisdiction is unconstitutional and preempted by the NLRA, and requests that the Court enjoin such jurisdiction. Given this, and since PERB's jurisdiction over the parties to that charge is predicated exclusively on the recently enacted amendments to SERA Section 715, the relief sought by Plaintiff will effectively render the ULP Charge moot, while simultaneously denying the Union and the employees it represents the ability to file any such charges in the future.

Accordingly, the Union's interest in the outcome of this case is neither "remote" nor "contingent upon the occurrence of a sequence of events before it becomes colorable", *Jones v. Schneiderman*, No. 11 CIV. 8215 KWM, 2012 WL 3578147, at *1 (S.D.N.Y. Aug. 6, 2012), and therefore meets the standard set by the first prong of Fed. R. Civ. P. 24(a)(2).

> **B.**    This action's disposition may, as a practical matter, impair the Union's ability to protect its interests.

A movant for intervention of right must also show that the ability to protect its interest will be injured as a practical matter if the motion is not granted. The instant lawsuit is "a case of first impression involving the resolution of new legal issues," *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990)—in particular, how *Garmon* preemption's premises are negated by the Board's failure to function as the National Labor Relations Act intended it to, including through its recent loss of quorum, loss of

independence from Presidential control, and loss of enforcement mechanisms in live cases brought before the Fifth Circuit Court of Appeals—and the district court's granting Plaintiff's requested relief would wholly deprive the Union of the ability to avail itself of S.8034A. The Union would then be relegated to its Sisyphean efforts to enforce its members' rights through the non-operative NLRB. Thus, this action's disposition may, as a practical matter, impair the Union's ability to protect its interest. *See id*.

        C.    <u>The existing parties may not adequately represent the Union's interests.</u>

The final showing necessary to establish entitlement to intervention as of right is that the applicant's interest will not be adequately protected by the existing litigants. Fed. R. Civ. P. 24(a)(2). The burden of establishing inadequacy of representation is "minimal". *Trbovich v. United Mine Workers of Am*., 404 U.S. 528, 538 n.10 (1972). All that must be shown is that the representation "may" be inadequate. *Id*.

As Plaintiff itself explains, PERB has not to date exercised jurisdiction over private sector workforces covered by the NLRA. Compl. ¶ 26. The current defendants thus lack the Union's familiarity with the stagnancy and dysfunction that has uniquely come to grip the private sector labor relations that have hereto fallen under the NLRB's current jurisdiction. The Union intends to explain why dysfunction and recent developments negate the premises of the *Garmon* doctrine that Plaintiff's first two counts rely on. The current defendants' lack of comparable experience with NLRA-covered workforces may impair their ability to adequately present this explanation. Indeed, this experience well-equips the Union to explain why the logic of the Fourth Circuit's recent decision in *Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025) supports the conclusion that *Garmon* preemption no longer applies when the NLRB ceases to function as Congress intended, including through the Board's loss of a quorum, loss of

15

enforcement mechanisms, and loss of Board members' protections from Presidential removal. The *Owen* decision reasoned that comparable developments within the agency that administers the Civil Service Reform Act have undermined a long-standing doctrine that strips district courts of jurisdiction over federal employee personnel actions.

Furthermore, to prevail on the Complaint's facial challenges, Plaintiff must show that S.8034A "is unconstitutional in all of its applications." *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 548 (2d Cir. 2023). The Complaint alleges that New York is prohibited from regulating activity and conduct protected or prohibited by Section 7 and Section 8 of the NLRA, and by conduct that Section 8(c) and 8(d) leave to free play. Because the Union, not current defendants, is most experienced with that activity and conduct, as well as with the caselaw that delimits the scope of those sections and sub-sections, the current defendants may not adequately defend against Plaintiff's facial challenge.[6]

Furthermore, while New York has an interest in seeing its laws enforced, and PERB may have an interest in broadening its jurisdiction, the outcome of this action will not fundamentally impact either party's ability to perform the tasks central to its existence. Regardless of this case's outcome, the state legislature will go on legislating, and PERB will continue adjudicating unfair labor practices that fall within its statutory purview. By contrast, ALU-IBT Local 1 exists primarily to protect the labor rights of the employees it represents, and to advocate for the material interests of those workers. The experience of the last four years, not to mention recent developments, has demonstrated how difficult carrying out those tasks has become under the regulatory regime overseen by the NLRB. *Supra* pp. 2-4, 7-9. This action's stakes for ALU-IBT

---

[6] Likewise, the Union is uniquely equipped to address Plaintiff's representations about the NLRA in Count Four. Compl. ¶¶ 78-79.

Local 1 therefore likely eclipse the stakes for existing defendants, which may be reflected in the adequacy of those defendants' representation.

Indeed, and given these different respective stakes, it is possible Defendants may have to abandon their defense of S.8034A due to pressures. It is far less likely that ALU-IBT Local will abandon its defense of S.8034A because doing so would substantially prejudice the workers whose protection is central to the Union's mission. Courts in this Circuit have recognized this divergence as a basis for granting intervention, both as of right and permissively. *See New York Pub. Interest Grp., Inv. v. Regents of the Univ. of N.Y.,* 516 F.2d 350, 352 (2d Cir. 1975) (granting intervention as of right in part because representation by the government would be inadequate in a lawsuit challenging the validity of a regulation where the intervenor "will make a more vigorous presentation of the economic side of the argument" than would the government, where the challenged regulation affected the intervenor's economic interests."); *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007) (noting that because the parties have distinct interests in a parallel objective, "[i]t is . . . possible that the government may not emphasize or vigorously defend all aspects of the challenged law that are critical to the movant's interest.").

## II.    Alternatively, permissive intervention should be granted.

In exercising this Court's broad discretion over permissive intervention, the "principal" consideration is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. State of New York*, No. 19-CV-11285 (KMK), 2020 WL 5658703, at *5 (S.D.N.Y. Sept. 23, 2020). Courts also consider, *inter alia*, "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication

17

of the legal questions presented." *Ass'n of Connecticut Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 102 (D. Conn. 2007). As a general matter, the Rule governing permissive intervention "is 'to be liberally construed' in favor of intervention." *Delaware Tr. Co. v Wilmington Tr., N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015).

> A.  The Union's interest in this action turns on common questions of law and fact shared with those at issue in this action.

A "single common question of law or fact" suffices to support permissive intervention. *Miller v. Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993) ("Rule 24(b)(2)'s provisions are satisfied "where a single common question of law or fact is involved, despite factual differences between the parties."); *see also Bldg. & Realty Inst.,* 2020 WL 5658703, at *9 (collecting cases) ("It is well-established . . . that the words 'claim or defense' are not read in a technical sense, but only require some interest on the part of the applicant."). Upon intervening, the Union will explain why all four counts of the Complaint lack merit, because S.8034A is not preempted by federal labor law and the SERA Amendment is not unconstitutionally vague. Above and beyond sharing the requisite "single" common question of law with this action, then, the Union's defenses address the legal issues at the core of this lawsuit. Furthermore, Count Two specifically targets the Union's own charge. Finally, to prevail on its facial challenges, Plaintiff must show that S.8034A "is unconstitutional in all of its applications." *Cmty. Hous. Improvement Program*, 59 F.4th at 548. This will necessarily require the Court to consider the facts of the Union's pending charge before PERB, as well as consider other potential applications of S.8034A that the Union can elucidate through its experience with Amazon's and other employer's anti-union conduct. The Union's anticipated defenses therefore share common questions of fact, too, with this action.

District courts in this Circuit routinely grant parties permissive intervention in like circumstances. In *Hum. Servs. Council of New York v. City of New York*, for instance, the court granted a labor union intervention to join the existing government defendant in defending a local labor law from preemption challenge. No. 21 CIV. 11149 (PGG), 2022 WL 4585815, at *4 (S.D.N.Y. Sept. 29, 2022); *see also*, *e.g.*, *Bldg. & Realty Inst.*, 2020 WL 5658703, at *9 (finding common question of law where proposed intervenor sought to defend constitutionality of rent-control statute alongside the government); *HHS*, 2019 WL 3531960, at *7 (finding "common questions of law and fact with those to be litigated by the parties" where religious healthcare providers sought to defend the validity of a federal agency rulemaking permitting them to opt out of certain procedures); *Up State Tower Co. v. Town of Cheektowaga*, No. 1:19-cv-280, 2019 WL 4452413, at *3 (W.D.N.Y. Sept. 17, 2019) (common questions of law or fact where proposed intervenor sought to defend town action on the basis of the restrictive covenant on which the town's defense also relied); *Miller v. Silbermann*, 832 F. Supp. 663, 673–74 (S.D.N.Y. 1993).

> B.    Intervention will promote development of the factual record and fair adjudication of the underlying legal issues.

In determining whether to grant permissive intervention, courts in this Circuit frequently inquire whether parties seeking intervention will "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *E.g. 335-7 LLC v. City of New York*, No. 20 CIV. 1053 (ER), 2020 WL 3100085, at *3 (S.D.N.Y. June 11, 2020). Where, as here, the proposed intervenor has substantial experience dealing with the subject matter of challenged legislation, courts often permit intervention because the relevant and specific experience possessed by the intervenor will improve the quality of the factual record and enhance the quality of briefing before the Court.

This is all the more true when the intervenor's perspective on the impact of the challenged legislation is distinct from that of the government agencies arguing for the validity of a statute. For example, New York District Courts have permitted tenants-rights groups to intervene permissively in lawsuits over the constitutionality of certain tenant protection statutes because of the intervenors' "vast experience in the trenches in housing court," on the theory that they "can bring to bear on the briefing their detailed knowledge" of the legislation, its effects, and the potential effects of striking it. *Bldg. & Realty Inst.*, 2020 WL 5658703, at *11 (internal quotation marks omitted) (lawsuit challenging rent-control statute); *see also 335-7 LLC*, 2020 WL 3100085, at *3 (same); *Miller*, 832 F. Supp. 663, 674 (lawsuit challenging constitutionality of Housing Court practice). Similarly, when a newly-enacted campaign finance law faced constitutional challenges, a court in this Circuit granted permissive intervention to a group of politicians and fair-election advocates, because the movants "offer[ed] a unique, personal and highly relevant factual perspective to the law, its development, and its impact," as well as "specialized expertise and substantial familiarity with the legal issues that are presented for review. The court will only benefit from their participation." *Garfield*, 241 F.R.D. at 103.

As discussed above, ALU-IBT Local 1 has substantial experience in all aspects of labor law relevant to this dispute, and, unlike current defendants, is familiar with the realities of NLRA-covered labor relations. The Union has been, and remains, engaged in a protracted litigation over Amazon's conduct at JFK8 before both the NLRB and numerous federal courts. For at least the last four years, ALU-IBT Local 1 and its predecessor in interest have brought these claims directly to the NLRB, and have witnessed firsthand the limitations on that agency's ability to curtail Amazon's unlawful conduct; of course, currently, the non-operative NLRB is unable to issue an order determining Amazon's conduct unlawful. Like the intervenors in those

cases, ALU-IBT Local 1's unique, real world experience makes it better suited than either of the existing Defendants to augment the record with specific facts demonstrating both the practical limitations of the NLRB's regulatory framework and its lack of power, and to explain why the expansion of PERB's jurisdiction is critical to protecting the labor rights of workers in the State of New York.

## CONCLUSION

ALU-IBT Local 1 respectfully requests that this Court grant its motion for intervention as of right, or, in the alternative, permissively.

DATED: October 2, 2025                    JULIEN MIRER & ASSOCIATES, PLLC


By /s/ Jeanne Mirer
   Jeanne Mirer
   jmirer@julienmirer.com

BUSH GOTTLIEB, ALC
   Julie Gutman Dickinson *(Pro hac vice pending)*
   jgd@bushgottlieb.com
   Jennifer A. Abruzzo *(Pro hac vice pending)*
   jabruzzo@bushgottlieb.com

Attorneys for Amazon Labor Union No. 1,
   International Brotherhood of Teamsters

21

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT (L.R. 7.1)**

I, the undersigned attorney for Proposed Intervenor Amazon Labor Union No. 1, International Brotherhood of Teamsters, hereby certify that this memorandum of law complies with the word count limits of Local Civil Rule 7.1. It contains 6,423 words, excluding material that Local Civil Rule 7.1 excludes from the word count.


DATED: October 2, 2025                    JULIEN MIRER & ASSOCIATES, PLLC



                                          By /s/ Jeanne Mirer

                                          JULIEN MIRER & ASSOCIATES, PLLC
                                          Jeanne Mirer
                                          jmirer@julienmirer.com