UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :

AMAZON.COM SERVICES LLC,          :

                 Plaintiff,     :          Civil Action No. 25-cv-5311

                           :

        v.                  :

NEW YORK STATE PUBLIC EMPLOYMENT  :
RELATIONS BOARD, et al.,         :

                           :

               Defendants.   :

                           :

                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

KAREN CACACE
Bureau Chief
Labor Bureau

YOUNG LEE
Deputy Bureau Chief
Labor Bureau

LETITIA JAMES
ATTORNEY GENERAL OF NEW YORK

28 Liberty Street
New York, New York 10005
(212) 416-6251

By:    Karen Cacace
        Young Lee
        Julio Sharp-Wasserman
        Assistant Attorneys General

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………....iv

PRELIMINARY STATEMENT…………………………………………………………1

STATEMENT OF FACTS…………………………………………………………..…..3

    I.    Historically, the NLRB Administered Labor Law for Most
        Private-Sector Employees, With PERB Jurisdiction in Industries
        Not Covered by the NLRA. ……………………………………………………3

        A.  The NLRA and the NLRB……………………………………………………...3

        B.  PERB and SERA……………………………………………………………4

    II.    Today, the NLRB Has Limited Functions, Cannot Uniformly
        Administer the NLRA, and May Soon Cease to Exist as an
        Independent Agency. ……………………………………………………5

        A.  Loss of a Quorum……………………………………………………………5

        B.  Constitutional Challenges to the NLRB's Structure………………………6

            i.      Amazon's Litigations……………………………………………...6

            ii.     The *SpaceX* Litigation……………………………………………8

            iii.    *Trump v. Wilcox*……………………………………………...9

    III.    New York Amended SERA to Fill the Labor Law Enforcement
        Void. …………………………………………………………..…..…………..9

ARGUMENT…………………………………………………………………....…10

    I.    Legal Standard for Preliminary Injunction…………………………………10

    II.    Amazon Fails to Show a Likelihood of Success on the Merits. ………………10

        A.  Factual Circumstances Warrant Exceptions to Garmon
            Preemption. ……………………………………………………………...11

|     | i.   | The NLRB is Not Functioning as Congress Intended, Creating a Labor Law Enforcement No-Man's Land. ......................12 |

      i.      The NLRB is Not Functioning as Congress Intended, Creating a Labor Law Enforcement No-Man's Land. .....................12

      ii.     Post-SpaceX, The NLRB Can No Longer Uniformly Administer the Law. ...................................................15

      iii.    Even if the NLRB Survives Constitutional Challenges, It May No Longer Be the Independent Agency Congress Intended. ............................................................15

  B.  Amazon's *Garmon* Preemption Arguments Are Barred by Judicial Estoppel. .............................................................17

  C.  Amazon's Remaining Arguments Misinterpret SERA and Misapply *Machinists*. .........................................................19

      i.      *Machinists* Concerns Unregulated Subject Matter Related to "Economic Weapons of Self-Help." .......................................19

      ii.     Properly Interpreted, the Challenged SERA Provisions Have Clear Meanings that Place Them Outside of *Machinists*' Application. ...................................................20

      iii.    Section 715(1)(b) is Not Vague. ...................................22

      iv.    Amazon Lacks Standing. .........................................23

III.   Amazon Has Not Established Irreparable Harm. ..........................24

IV.   The Public Interest and the Balance of the Equities Disfavor Emergency Relief. .....................................................24

**CONCLUSION** ....................................................................25

Page(s)

## Cases

*Airway Cleaners, LLC*,
363 N.L.R.B. 1575 (2016) ............................................................................. 13-14

*Amazon v. NLRB, et al.*,
No. 24 Civ. 1000 (W.D. Texas) ................................................................................6

*Amazon, et al. v. Nat'l Lab. Rels. Bd., et al.*
No. 25-886 (9th Cir.) ................................................................................................8

*Amazon.com Servs. LLC v. Nat'l Lab. Rels. Bd.*,
No. 24 Civ. 09564, 2025 WL 466262 (C.D. Cal. Feb. 5, 2025)..............................8

*Amazon.com Servs. LLC v. Nat'l Lab. Rels. Bd.*,
No. 24 Civ. 1000, 2024 WL 4977179 (W.D. Tex. Sep. 29, 2024) ..........................7

*Biobaku v. United States Citizenship & Immigr. Serv.*,
No. 24 Civ. 8748, 2025 WL 2097722 (E.D.N.Y. July 25, 2025) ...........................10

*Cerame v. Slack*,
123 F.4th 72 (2d Cir. 2024) ...................................................................................23

*Chamber of Commerce v. Brown*,
554 U.S. 60 (2008)..................................................................................................20

*Concerned Home Care Providers, Inc. v. Cuomo*,
783 F.3d 77 (2d Cir. 2015)......................................................................................11

*Davega City Radio, Inc. v. State Labor Relations Bd.*,
281 N.Y. 13 (1939) .................................................................................................20

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local Union No. 174*,
598 U.S. 771 (2023).................................................................................................11

*Golden State Transit Corp. v. City of Los Angeles*,
475 U.S. 608 (1986).................................................................................................22

*The Gorton Coy, Inc.*, 22 SLRB 93 (1959)..................................................................20

*Harris, Upham, & Co.*, 10 SLRB 279 (1947)...............................................................20

*Hernandez v. State of N.Y.*,
173 A.D.3d 105 (App. Div., 3rd Dept. 2019) ....................................................4, 20

*Hudson Inst. of Process Rsch. Inc. v. Nat'l Lab. Rels. Bd.*,
No. 24 Civ. 989, 2025 WL 2431645 (E.D. Tex. Aug. 22, 2025)........................9, 15

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935)................................................................................................16

*James McCreery and Company*, 11 SLRB 59 (1948) ..................................................20

*Lacewell v. Off. of the Comptroller of the Currency*,
999 F.3d 130 (2d Cir. 2021)....................................................................................23

*Lia v. Saporito*,
541 F. App'x 71 (2d Cir. 2013) ...............................................................................18

*Local 76, International Association of Machinists and Aerospace Workers v.
Wisconsin Employment Relations Commission*,
427 U.S. 132 (1976)................................................................................................10

*NLRB v. California Horse Racing Bd.*,
940 F.2d 536 (9th Cir. 1991) ..................................................................................22

*N.Y. State Labor Relations Bd. v. Holland Laundry, Inc.*,
294 N.Y. 480 (1945)................................................................................................20

*N.Y. State Vegetable Growers Ass'n v. James*,
No. 23 Civ. 1044, 2024 WL 1161115 (W.D.N.Y. Feb. 21, 2024)........................23

*Nat'l Lab. Rels. Bd. v. Virginia Elec. & Power Co.*,
314 U.S. 469 (1941)................................................................................................20

*National Ass'n of Immigration Judges v. Owen*,
139 F.4th 293 (4th Cir. 2025) ...........................................................................14, 17

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................................................................................... 17-19, 25

*NLRB v. Gissel Packing Co.*,
395 U.S. 575 (1969)................................................................................................15

*NLRB v. Jones & Laughlin Steel Corp.*,
301 U.S. 1 (1937)......................................................................................................2

*NLRB v. Nash-Finch Co.*,
404 U.S. 138 (1971)................................................................................................22

*NLRB v. N.Y. SLRB*,
    106 F.Supp. 749 (S.D.N.Y. 1952) ....................................................................22

*NLRB v. State of New York et al.*,
    No. 25 Civ. 01283 (N.D.N.Y.)...................................................................6, 24

*O'Toole v. Otway (In re 78-80 St Marks Place LLC)*,
    648 B.R. 505 (Bankr. S.D.N.Y. 2023)...........................................................18

*Oxford Airport Tech. Servs.*,
    369 NLRB No. 6 (2020) ................................................................................14

*Rest. L. Ctr. v. City of New York*,
    90 F.4th 101 (2d Cir. 2024) ....................................................................19, 22

*Rondout Elec., Inc. v. NYS Dep't of Lab.*,
    335 F.3d 162 (2d Cir. 2003)......................................................................20-21

*San Diego Bldg. Trades Council v. Garmon*,
    359 U.S. 236 (1959)............................................................................. passim

*Scarano v. Cent. R. Co. of N.J.*,
    203 F.2d 510 (3d Cir. 1953)...........................................................................19

*Sedacca v. Mangano*,
    18 N.Y.3d 609 (2012) ......................................................................................5

*Shanghai Zhenglang Tech. Co. v. Mengku Tech. Co.*,
    No. 20 Civ. 5209, 2020 WL 7481297 (E.D.N.Y. Dec. 18, 2020) .........................25

*SMS Grp. Inc. v. Pharmaaid Corp.*,
    No. 23 Civ. 1777, 2023 WL 6929653 (E.D.N.Y. Oct. 19, 2023) .........................10

*Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.*,
    No. 24-10855, 2025 WL 2396748 (5th Cir. Aug. 19, 2025) ...........................1, 5, 8

*The Pennsylvania Virtual Charter Sch.*,
    364 N.L.R.B. 1118 (2016) ..............................................................................14

*Trump v. Wilcox*,
    145 S. Ct. 1415 (2025)..................................................................................1, 9

*Wiener v. United States*,
    357 U.S. 349 (1958).......................................................................................16

## Constitutions

N.Y. Const. ............................................................................................................1

## State Statutes

N.Y. Civ. Serv. Law
    § 205(1) ........................................................................................................5
    § 205(5)(d) ...................................................................................................4

N.Y. Lab. Law
    § 700 .......................................................................................................4, 24
    § 702 ...........................................................................................................5
    § 702-a ....................................................................................................5, 22
    § 702-a(1) ..................................................................................................21
    § 703 ...........................................................................................................5
    § 704 ...........................................................................................................5
    § 704-709 ....................................................................................................5
    § 715(1)(b) .............................................................................................10, 22
    § 715(2) .................................................................................................10, 22
    § 717 ...........................................................................................................4

## Federal Statutes

29 U.S.C.
    § 152(2)-(3) .................................................................................................3
    § 153(a) ...................................................................................................3, 16
    § 153(b) .............................................................................................3-4, 6, 13
    § 154(a) .......................................................................................................4
    § 156 ..........................................................................................................13
    § 158 ...........................................................................................................4
    § 158(c) ......................................................................................................20
    §§ 159-160 ...................................................................................................3
    § 159(b)-(c) ..................................................................................................4
    § 159(c) .......................................................................................................4
    § 160(a)-(c) ..................................................................................................4
    § 164(c) ......................................................................................................13
    § 218(a) ......................................................................................................11
    § 2000e-7 ....................................................................................................11

NLRA, Pub. L. No. 74-198, 49 Stat. 449 (1935) .............................................................3, 12, 24

## Federal Regulations

29 C.F.R.

§ 102.45.................................................................................................6
§ 102.48(a).............................................................................................6
§ 102.48(a)-(b)........................................................................................4
§ 102.48(b).............................................................................................6
§ 102.64(a).............................................................................................4
§ 102.67-69.............................................................................................4
§ 102.182...............................................................................................6

## Other Authorities

Gali Racabi, *In Lieu of the NLRA,* Wisconsin L. Rev. (2025 forthcoming) .................................14

James A. Gross, *The Making of the National Labor Relations Board: A Study in Economics, Politics, and the Law, Volume I (1933-1937)* (1974)...................... 15-16

18 Moore's Federal Practice - Civil § 134.30 (2025) ...................................................17

## PRELIMINARY STATEMENT

Workers' "right to organize and to bargain collectively through representatives of their own choosing" is so fundamental to state policy that it is enshrined in New York's Constitution. N.Y. Const. art. I, § 17. The statutory protections for collective bargaining that Amazon challenges in this case were enacted to safeguard that right, because the federal agency that has done so for eighty years no longer functions as the United States Congress intended, creating an unprecedented situation that this Court, in applying preemption analysis, must take into account.

Soon after the federal National Labor Relations Act ("NLRA") was passed in 1935, establishing the National Labor Relations Board ("NLRB"), New York enacted its analogous State Employment Relations Act ("SERA"), which is currently administered by New York's Public Employment Relations Board ("PERB"). Historically, the NLRB has been the primary regulator of private-sector union matters in New York, pursuant to *San Diego Bldg. Trades Council v. Garmon*, which held that Congress "entrusted administration of the labor policy for the Nation to a centralized administrative agency," 359 U.S. 236, 242 (1959), while PERB regulated industries that were not covered by the NLRA.

*Garmon*, however, rested on historical facts that are no longer present – namely, the existence of a functioning, independent agency uniformly administering the NLRA. Today's NLRB no longer resembles the agency under consideration in *Garmon*. The NLRB is severely limited in its ability to enforce the law, due to the prolonged lack of a quorum. It is barred from holding Administrative Law Judge ("ALJ") hearings in part of the country. *See Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.*, No. 24-10855, 2025 WL 2396748 (5th Cir. Aug. 19, 2025). And removal protections for Board Members are imperiled, threatening the NLRB's continued existence as an independent agency. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025).

Current circumstances create conflict between two purposes of the NLRA: Congress's intent to centralize labor law administration and Congress's more fundamental aim "to safeguard the right of employees to self-organization . . . without restraint or coercion," a "fundamental right." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937). Precisely to advance that more fundamental policy, which New York shares (and is constitutionally obligated to pursue), the State Legislature amended New York Labor Law Section 715(1)(b) and (2) (the "2025 Amendment") to broaden PERB's jurisdiction over private-sector employment. This was to ensure that New Yorkers have a forum to enforce their collective bargaining rights, given the failure of today's NLRB to carry out the NLRA's Congressional purpose.

Amazon.com Services LLC ("Amazon") has engaged in a litigation strategy that illustrates both the current conflict between the NLRA's aims and the need for an exception to *Garmon* preemption as a resolution. In litigations against the NLRB in the Fifth and Ninth Circuits, Amazon has argued that the NLRB has no authority over Amazon because the NLRB's statutory structure purportedly violates the U.S. Constitution. But in this Court, Amazon argues the opposite – that under that same Constitution, the NLRB has exclusive authority over Amazon. These contradictory legal positions constitute a coherent two-part strategy to create a labor law enforcement no-man's land, where Amazon will be subject to neither federal nor state jurisdiction. In this case, Amazon seeks to divert its workers from PERB to the NLRB – which is currently dysfunctional and which, in other courts, Amazon argues is not allowed to enforce the NLRA – so that its workers cannot enforce their labor rights anywhere.

An anachronistic application of *Garmon* to this historical moment would make *Garmon* preemption self-undermining – not just for Amazon's employees, but for all of New York's workers. The currently prevailing labor law enforcement no-man's land, while advantageous for

employers seeking to evade complying with the law, is contrary to both Congressional intent and *Garmon*'s reasoning.  *Garmon* assumes the existence of an NLRB that is functional, uniformly administering the NLRA throughout the nation, and independent.  The absence of any one of these three elements separately should justify an exception to *Garmon* preemption.

Finally, Amazon cannot demonstrate irreparable harm, because PERB has agreed not to process any cases during the pendency of the NLRB's preliminary injunction motion in an earlier-filed action challenging the 2025 Amendment.  Accordingly, Defendants respectfully request that the Court deny Amazon's motion for a preliminary injunction.

## STATEMENT OF FACTS

I.  **Historically, the NLRB Administered Labor Law for Most Private-Sector Employees, With PERB Jurisdiction in Industries Not Covered by the NLRA.**

A.  The NLRA and the NLRB

In 1935, the United States Congress enacted the NLRA, declaring its intention "to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining . . . ."  NLRA, Pub. L. No. 74-198, 49 Stat. 449 (1935).  The NLRA created the NLRB and granted it jurisdiction over most private-sector employees, with some exceptions, including farmworkers and railroad workers.  *See* 29 U.S.C. § 152(2)-(3).

The NLRB has a five-seat Board, with members appointed to staggered five-year terms by the President with the advice and consent of the Senate.  *Id.* § 153(a).  The Board requires a quorum of "three or more members" to operate.  *Id.* § 153(b).  The president can remove Board Members "for neglect of duty or malfeasance in office, but for no other cause."  *Id.* § 153(a).

The Board adjudicates both unfair labor practice ("ULP") and representation cases.  *Id.* §§ 159-160.  In ULP matters, the Board resolves charges that an employer or labor union has

3

committed various practices prohibited by the NLRA, including failing to bargain in good faith, and interfering with, restraining, or coercing employees who exercise their rights under the NLRA. *Id.* § 158. In representation cases, the NLRB investigates and decides whether a union represents or no longer represents a defined bargaining unit. *Id.* § 159(c); 29 C.F.R. § 102.64(a).

The Board maintains ultimate authority in both types of matters, while delegating certain powers to Regional Directors and ALJs. *See* 29 U.S.C. §§ 153(b), 154(a), 159(b)-(c), 160(a)-(c). ALJs initially adjudicate ULPs; but an ALJ's decision can have no legal effect without Board action, either adopting the decision or reviewing the decision after a party files exceptions. *See* 29 C.F.R. § 102.48(a)-(b). And in representation cases, the Board has authority to review and decide requests for review from decisions of its Regional Directors. *Id.* § 102.67-69.

B. PERB and SERA[1]

Historically, PERB has enforced collective bargaining rights for public sector workers, under the Public Employees' Fair Employment Act, and for certain NLRA-exempt private-sector workers, under SERA. *See* N.Y. Civ. Serv. Law § 205(5)(d); N.Y. Lab. Law § 717.[2] Enacted in 1937, SERA declares that "the public policy of the state [is] to encourage the practice and procedure of collective bargaining, and to protect employees in the exercise of full freedom of association, self-organization and designation of representatives of their own choosing." N.Y. Lab. Law § 700. SERA was "modeled after" the NLRA, passed two years earlier. *Hernandez v. State of N.Y.*, 173 A.D.3d 105, 120 (App. Div., 3rd Dept. 2019).

PERB is responsible for administering SERA, including determining appropriate representation, investigating and adjudicating ULP charges, and providing mediation and

---

[1] SERA is codified at New York Labor Law §§700-718.

[2] SERA was previously administered by the abolished State Labor Relations Board ("SLRB"). New York Labor Law Section 717 transferred all SLRB "functions, powers and duties" to PERB.

arbitration services.  N.Y. Lab. Law §§ 702, 702-a, 704-709.  PERB has three members, with no

more than two from the same party, appointed to staggered six-year terms by the Governor with

Senate advice and consent.  *See* N.Y. Civ. Serv. Law § 205(1).[3]

SERA provides the employees it covers with substantive and procedural rights similar to

those provided by the NLRA.  Under SERA, employees have the rights to "form, join, or assist

labor organizations, [and] to bargain collectively through representatives of their own choosing,"

as well as "to engage in concerted activities[] for the purpose of collective bargaining or other

mutual aid or protection."  N.Y. Lab. Law § 703.  Like the NLRA, SERA prohibits ULPs, such

as interfering with employees' organizing activities, refusing to bargain collectively, and

retaliating against employees for engaging in organizing activities.  *Id.* § 704.

II.     **Today, the NLRB Has Limited Functions, Cannot Uniformly Administer the NLRA, and May Soon Cease to Exist as an Independent Agency.**

This year, through a combination of political and jurisprudential developments, the

NLRB has become severely functionally limited in its ability to enforce the law, due to its loss of

a quorum; has ceased operating even at the ALJ level in part of the country, due to the Fifth

Circuit's *SpaceX* decision; and faces a risk of losing its independence from presidential control,

as a potential result of the Supreme Court's anticipated decision in *Wilcox*.

A.  Loss of a Quorum

On January 28, the President fired NLRB Member Gwynne Wilcox, depriving the Board

of a quorum,[4] without which the NLRB cannot enforce the NLRA as Congress intended.

---

[3] While the statute itself does not expressly so state, the New York Court of Appeals has held in analyzing a different statute (Real Property Tax Law Section 523-b, which authorized Nassau County to establish its Assessment Review Commission) that the combination of fixed, staggered terms and a party-balancing requirement implies a for-cause removal restriction.  *See Sedacca v. Mangano*, 18 N.Y.3d 609, 615-16 (2012).

[4] *See* Sharp-Wasserman Decl., Ex. G (letter with e-mail from Office of Presidential Personnel Deputy Director Trent Morse noting Wilcox's firing, filed in *Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.*, No. 24-10855 (5th Cir.)).

This breakdown in functioning operates differently in ULP and representation cases. Without a quorum, ULP cases can be initially processed, investigated, and assigned to an ALJ; but no Board decision can be issued, causing the case to stall indefinitely. The ALJ's decision is merely a "recommendation" to the Board. *See* 29 C.F.R. § 102.45. Thus, if a party files exceptions to an ALJ's decision, not only is the Board unavailable to hear an appeal, but further, that ALJ decision can have no legal effect. *See id.* § 102.48(b). There is no Board available even to automatically adopt ALJ decisions when no exceptions are filed. *See id.* § 102.48(a).

Representation cases reach the same fate by a different route. The Board cannot decide requests for review of a certification decision without a quorum. *See* 29 U.S.C. § 153(b). In the absence of a quorum, representation cases are supposed to proceed, and unions are supposed to be certified, "to the extent practicable," notwithstanding the pendency of a request for review. *See* 29 C.F.R. § 102.182.[5] But if the employer refuses to recognize or bargain with the certified union, workers have no remedy but to file a ULP charge, which cannot be finally adjudicated.[6]

B. <u>Constitutional Challenges to the NLRB's Structure</u>

The NLRB faces constitutional challenges from both employers and the President.

     *i.*     *Amazon's Litigations*

Amazon has filed lawsuits in the Fifth and Ninth Circuits in which it claims that fundamental aspects of the NLRB's structure are unconstitutional.

---

[5] Defendants anticipate that the NLRB's responses to their discovery requests in *NLRB v. State of New York et al.*, No. 25 Civ. 01283 (N.D.N.Y.) could clarify the current practice in the event of a request for Board review in this context. *See* Sharp-Wasserman Decl., Ex. D (discovery requests).

[6] Illustratively, Amazon invites ULP charges for refusal to bargain as a strategy for challenging representation. *See* Sharp-Wasserman Decl., Ex. E.-2 at 5-6 (Amazon's motion for a preliminary injunction in *Amazon v. NLRB, et al.*, No. 24 Civ. 1000 (W.D. Texas), stating, "In order to obtain judicial review of its Objections [to a certification decision], [Amazon] must engage in a 'technical' refusal to bargain with the ALU in order to 'draw' a refusal to bargain ULP allegation. After the NLRB has found against Amazon in such a proceeding, it may obtain judicial review of that finding in the appropriate U.S. Court of Appeals.").

In the Western District of Texas, Amazon sought a preliminary injunction halting ULP proceedings based on Amazon's refusal to bargain with the Amazon Labor Union after it won a secret-ballot election to represent workers in Amazon's Staten Island, NY facility in 2022. *See* Sharp-Wasserman Decl., Exs. E-1 (Complaint) ¶¶ 19, 31; E-2 (Motion). Amazon raised constitutional challenges to the NLRB's authority to bring those proceedings. *See id.*, Exs. E-2 at 1, 14-15 (asserting that the NLRB was "pursuing unconstitutional administrative proceedings" against Amazon, that Board Members unconstitutionally "serv[e] as both prosecutors and adjudicators," and that the Board improperly "adjudicate[s] private rights, a power intended for the judiciary rather than the executive"); E-3 (2024.09.26 Transcript of Motion to Transfer and TRO Proceedings) at 3:23-24 (Amazon's counsel states, "we've brought constitutional challenges to the NLRB's authority to act"). The District Court's order, which the court stayed to permit Amazon to obtain Fifth Circuit review, did not address the merits, instead deciding that Amazon had brought the case in the wrong venue. *See Amazon.com Servs. LLC v. Nat'l Lab. Rels. Bd.*, No. 24 Civ. 1000, 2024 WL 4977179 (W.D. Tex. Sep. 29, 2024).

But Amazon achieved an important tactical victory by obtaining a lengthy stay of NLRB proceedings pending its (unsuccessful) Fifth Circuit appeal of the District Court's purported "constructive denial" of its motion for a preliminary injunction, thereby indefinitely postponing a Board decision. *See* Sharp-Wasserman Decl., Exs. E-4 (Amazon's motion seeking a stay pending on appeal, arguing it was likely to succeed on the merits of its Constitutional claims); E-5 (2024.09.30 Order granting administrative stay of NLRB Proceedings); E-6 (2025.05.06 Order dismissing appeal). The appeal remained pending until October 2, 2025, as Amazon unsuccessfully sought rehearing en banc. *See* Exs. E-7 (Petition for Rehearing); E-9 (Order denying Petition). During the pendency of the appeal and stay, the NLRB lost its quorum, *see*

*id.*, Ex. E-8 at 2 (NLRB's motion for an extension to oppose Amazon's Petition for Rehearing, dated June 23, 2025, noting "the NLRB is currently subject to an administrative stay and cannot proceed with this case. Indeed, the NLRB cannot rule on any case, since it currently lacks its statutory quorum of three members."), and disavowed its prior position that "statutory tenure protections for Board members are constitutional," *see id.*, Ex. E-10 (Letter, dated March 3, 2025). The NLRB still cannot address the ULP charge, the practical relief Amazon had sought.

In the Central District of California, Amazon sought a preliminary injunction to halt ULP proceedings based on its refusal to recognize and bargain with the Teamsters Union in its Palmdale, California facility in 2023. *See* Sharp-Wasserman Decl., Exs. F-1 (Motion); F-2 (Opposition) at 4. In its motion, Amazon described the NLRB's ULP proceeding as an exercise of "unconstitutional agency authority" by an "unconstitutionally structured agency," due to removal protections for Board Members and ALJs. *See id.*, Ex. F-1 at 3, 11. The District Court denied Amazon's motion. *See Amazon.com Servs. LLC v. Nat'l Lab. Rels. Bd.*, No. 24 Civ. 09564, 2025 WL 466262 (C.D. Cal. Feb. 5, 2025). Amazon's appeal of this decision is pending in the Ninth Circuit. *See Amazon, et al. v. Nat'l Lab. Rels. Bd., et al.* No. 25-886 (9th Cir.).

  ii.  *The SpaceX Litigation*

In *Space Expl. Techs. Corp. v. NLRB*, No. 24-10855, 2025 WL 2396748 (5th Cir. Aug. 19, 2025), the Fifth Circuit held that the NLRA's removal protections for Board Members and ALJs are likely unconstitutional, granting several companies' motions to preliminarily enjoin ULP proceedings. During the pendency of the appeal, the NLRB had submitted a similar letter as in the Fifth Circuit *Amazon* litigation, disclaiming its constitutional defense of removal protections for Board Members. *See* Sharp-Wasserman Decl., Ex. G (Letter from the NLRB,

dated February 3, 2025, providing authority that NLRB removal protections are unconstitutional).

As a consequence of this decision, in states within the Fifth Circuit's jurisdiction – Texas, Louisiana, and Mississippi (NLRB Regions 15, 16, and 28) – the NLRB effectively lacks authority to adjudicate ULP or representation cases. Any employer subject to any proceeding before an NLRB ALJ in those states can enjoin the proceeding in a district court, relying on *SpaceX*. *See, e.g.*, *Hudson Inst. of Process Rsch. Inc. v. Nat'l Lab. Rels. Bd.*, No. 24 Civ. 989, 2025 WL 2431645 (E.D. Tex. Aug. 22, 2025) (granting a preliminary injunction under *SpaceX*).

       *iii.*    *Trump v. Wilcox*

In pending litigation regarding the President's firing of Board Member Wilcox, the President argues that removal protections for Board Members are unconstitutional. In its May 22, 2025 order granting the government's emergency motion to stay a district court decision reinstating Wilcox, the Supreme Court signaled that it may side with the President. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025) ("The stay reflects our judgment that the Government is likely to show that both the NLRB and MSPB exercise considerable executive power.").

## III.    New York Amended SERA to Fill the Labor Law Enforcement Void.

To address this disintegration of the NLRB, in September 2025, New York amended SERA to broaden PERB's jurisdiction over private-sector employees. *See* Sharp-Wasserman Decl., Exs. A (2025 Amendment); B (Introducer's Memorandum in Support).

Specifically, New York Labor Law Section 715 was amended to remove a provision stating that SERA did not apply to employees subject to the NLRA, substituting a narrower exemption for "employees where the national labor relations board successfully asserts jurisdiction over any employer, employees, trades, or industries pursuant to an order by the

federal district court established under article three of the United States constitution." *Id.* at §
715(1)(b).  The amended Section also provides, "For all other employees, the board [i.e., PERB]
shall, upon application and verification, promptly certify the exclusive bargaining representative
of any bargaining unit previously certified by another state or federal agency." *Id.* at § 715(2).

## ARGUMENT

### I.  Legal Standard for Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed
on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that
the balance of equities tips in his favor, and that an injunction is in the public interest." *Kazeem
Biobaku v. United States Citizenship & Immigr. Serv.*, No. 24  Civ. 8748, 2025 WL 2097722, at
*1 (E.D.N.Y. July 25, 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20
(2008)).  "A preliminary injunction is an 'extraordinary and drastic remedy, one that should not
be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *SMS Grp.
Inc. v. Pharmaaid Corp.*, No. 23 Civ. 1777, 2023 WL 6929653, at *2 (E.D.N.Y. Oct. 19, 2023)
(quoting *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007)).  Plaintiff does not satisfy any
of these requirements.

### II.  Amazon Fails to Show a Likelihood of Success on the Merits.

Amazon challenges the 2025 Amendment based on preemption under *San Diego Bldg.
Trades Council v. Garmon*, 359 U.S. 236 (1959) ("*Garmon* preemption").  Separately, Amazon
challenges various SERA provisions both as preempted under *Local 76, International
Association of Machinists and Aerospace Workers v. Wisconsin Employment Relations
Commission*, 427 U.S. 132 (1976) ("*Machinists* preemption"), and as unconstitutionally vague.
Amazon fails to demonstrate a likelihood of success on any of these arguments.

Amazon's first argument implicates an issue of first impression, regarding the application of *Garmon* to the 2025 Amendment in unprecedented circumstances. As detailed below, historically unique circumstances justify exceptions to *Garmon* preemption here. Moreover, Amazon is judicially estopped from asserting a *Garmon* preemption argument, because it advanced a contrary legal position in its Fifth Circuit litigation against the NLRB.

In its second and third arguments, Amazon misinterprets the other SERA provisions it challenges. Under a correct reading of SERA, Amazon's arguments as to *Machinists* preemption and unconstitutional vagueness have no application.

A.  Factual Circumstances Warrant Exceptions to Garmon Preemption.

*Garmon* prohibits states from regulating parallel subject matter to the NLRA. More precisely, "[u]nder *Garmon*, States cannot regulate conduct 'that the NLRA protects, prohibits, or arguably protects or prohibits.'" *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local Union No. 174*, 598 U.S. 771, 776 (2023) (quoting *Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U. S. 282, 286 (1986)). Under this jurisdprudence, the NLRA has unusual preemptive reach for an employment statute, given that states "have traditionally possessed broad authority under their police powers to regulate the employment relationship." *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 85 (2d Cir. 2015) (internal quotations omitted).[7]

There are three critical components of *Garmon* analysis, for purposes of this motion, each of which corresponds to a proposed *Garmon* exception. Namely, *Garmon* assumes (1) the NLRB's functional capability to enforce the law; (2) the NLRB's uniform administration of the NLRA throughout the country; and (3) the independence of the NLRB. In all three respects, the

---

[7] For example, federal wage-and-hour and employment discrimination statutes permit state legislation providing the same or stronger protections. *See, e.g.* 29 U.S.C. § 218(a) (permitting states to set a higher minimum wage, lower overtime threshold, and stricter child labor restrictions); *id.* § 2000e-7 (permitting state laws that do not "require or permit the doing of any act which would be an unlawful employment practice under this subchapter").

present facts are the opposite of what *Garmon* assumed, warranting exceptions to *Garmon* preemption, and permitting New York State's traditional police power over employment matters to control. For this reason, Amazon fails to show a likelihood of success on the merits.

> ### i. The NLRB is Not Functioning as Congress Intended, Creating a Labor Law Enforcement No-Man's Land.

*Garmon* assumes the existence of an NLRB that is enforcing the NLRA, and not just the existence of federal labor law. *See Garmon*, 359 U.S. at 242 ("[T]he unifying consideration of our [preemption] decisions has been regard to the fact that Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience: 'Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties.'") (quoting *Garner v. Teamsters*, 346 U.S. 485, 490 (1953)).

This assumption makes sense, because preemption analysis rests on Congressional intent, *see id.* at 242-43; and in passing the NLRA, Congress's principal intent was for collective bargaining rights to be protected, granting the NLRB original jurisdiction over NLRA claims to that end. *See* NLRA, Pub. L. No. 74-198, 49 Stat. 449 (1935) (providing that the purpose of the NLRA is "encouraging the practice and procedure of collective bargaining"). Any NLRA preemption theory thus must assume a functioning NLRB: because the NLRB is the only forum for enforcing the NLRA, without the NLRB, the NLRA's protections cannot be enforced.

According to *Garmon*, the NLRB's functioning has multiple components, including issuing decisions, enforcing decisions in court, and interpreting the NLRA. *See Garmon*, 359 U.S. at 242-43 ("Congress . . . confide[d] primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation,

complaint and notice, and hearing and decision, including judicial relief pending a final administrative order.") (quoting *Garner*, 346 U.S. at 490).

Due to the lack of a quorum, the NLRB has been unable to perform several of these key functions for over eight months. The NLRB cannot issue decisions, which paralyzes both ULP and representation proceedings. And judicial enforcement and review of Board decisions is necessarily impossible for decisions that cannot be issued. The NLRB also cannot issue regulations. *See* 29 U.S.C. §§ 153(b), 156. Because decisions and regulations are the two ways the NLRB interprets the law, it cannot interpret the law, as Congress intended.

Due to this functional breakdown, the NLRB is not enforcing the law, but rather merely receiving submissions and initially processing them, without issuing any enforceable determinations as to whether the NLRA has been violated. Because the NLRA does not permit claims to be brought in any other federal forum besides the NLRB, there must be state-level alternatives to escape this no-man's land of labor law enforcement.

Both Congress and the NLRB itself have expressed an intent to avoid such a law enforcement no-man's land. In 1959, Congress codified Section 14(c) of the NLRA, authorizing the NLRB to decline jurisdiction over certain labor disputes and providing that states could assume jurisdiction in areas in which the NLRB declined jurisdiction. *See* 29 U.S.C. § 164(c). Congress's motivation was to "eliminate[] a jurisdictional 'no-man's land' that had previously existed because states were prohibited from acting in certain cases where the Board had elected to decline jurisdiction, a state of affairs that Congress disfavored." *Airway Cleaners, LLC*, 363 N.L.R.B. 1575, 1577 n.5 (2016) (citing the Congressional record).[8] The Board has reiterated this

---

[8] Beyond illuminating Congressional intent generally, Section 164(c) has no direct application in this case. The provision governs when the NLRB declines to assert jurisdiction over a specific "class or category of employers," (c)(1), not when the NLRB stops functioning and enforcing the law generally.

"no-man's land" principle in various cases in which it has assumed jurisdiction partly because some alternative authority lacked it. *See, e.g.*, *id.* at 1575-76 (asserting jurisdiction over arguments that the employer was instead subject to the National Mediation Board under the Railway Labor Act, reasoning that "[f]ailure to assert jurisdiction in the face of the NMB's decision [to decline jurisdiction] would leave the Employer subject to neither statute, condemning the Employer and its employees to a jurisdictional 'no-man's land.'"); *Oxford Airport Tech. Servs.,* 369 NLRB No. 6, 13 (2020) ("Failure of the NLRB to continue to follow its precedent of finding jurisdiction where the NMB's precedent is clear that it would decline to assert jurisdiction under the RLA would leave employees and parties in a 'no-man's land' without a forum to address labor disputes."); *cf. The Pennsylvania Virtual Charter Sch.*, 364 N.L.R.B. 1118, 1129 (2016) (dissent arguing for the NLRB to assert jurisdiction over a charter school to avoid "a jurisdictional no-man's land," given ambiguity in charter school cases "about whether bargaining is governed by the NLRA, on the one hand, or by relevant state or local labor laws applicable to public sector negotiations on the other").[9]

Additionally, by analogy, the Fourth Circuit's recent decision in *National Ass'n of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025) supports a preemption exception based on the NLRB's failure to function. *Owen* held that there could be an exception to the administrative exhaustion requirement for federal employee claims regarding personnel actions covered by the Civil Service Reform Act ("CSRA"), if the administrative scheme no longer functioned due to the lack of a quorum in the Merit System Protection Board and the removal the Special Counsel. *See id.* at 304-05, 308 (remanding to the district court "to conduct a factual inquiry whether the CSRA continues to provide a functional adjudicatory scheme").

---

[9] *See also* Gali Racabi, *In Lieu of the NLRA,* Wisconsin L. Rev. (2025 forthcoming), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5197451 (detailing this labor law principle).

ii. *Post-SpaceX, The NLRB Can No Longer Uniformly Administer the Law.*

*Garmon* also assumes the uniform application of the NLRB's administrative scheme – that is, throughout the entire county. *See Garmon*, 359 U.S. at 242-43 (noting Congressional intent to "obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies") (quoting *Garner*, 346 U.S. at 490).

But *SpaceX* ended the uniform national administration of the NLRA, because now, ALJ hearings in the NLRB are not even allowed in some parts of the country, while at least for the moment, they continue to exist in others. Outside of the Fifth Circuit, the NLRB will at least permit parties to initiate proceedings before an ALJ (although an ultimate decision is impossible). But within the Fifth Circuit, in NLRB Regions 15, 16, and 28, parties in ULP and representation cases cannot even *begin* proceedings before an ALJ, because their removal protections are purportedly unconstitutional under *SpaceX*, permitting employers to enjoin any ALJ proceeding in a district court. *See, e.g.*, *Hudson Inst.*, 2025 WL 2431645.[10] While *Garmon* sought to "avoid a patchwork of state regulation over labor matters," Opening Br. at 2, that goal is already stymied, because *SpaceX* has eliminated uniform *federal* regulation.

iii. *Even if the NLRB Survives Constitutional Challenges, It May No Longer Be the Independent Agency Congress Intended.*

Understood in its historical context, *Garmon* assumed an independent NLRB. Concerns about the NLRB's independence motivated the drafters of the NLRA. *See* James A. Gross, *The Making of the National Labor Relations Board, Volume I (1933-1937)*, Sharp-Wasserman Decl.,

---

[10] It has always been the case that review of NLRB decisions by the various federal courts of appeal could result in geographic variation in NLRA interpretation and enforcement. *See, e.g.*, *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 604-07 (1969) (discussing different Circuits' approach to the NLRB's practice of sometimes ordering union certification and bargaining as a remedy for ULPs). But this is a uniquely significant variation: the NLRB is legally barred from administering federal policy (with or without a quorum) in one region and not others.

Ex. H, at 104-08, 130-32 (1974) (documenting that the necessity for the NLRB's independence from presidential control was impressed on the Wagner Act Congress and drafters, and that the Act increased the independence of the pre-existing NLRB). The NLRA thus provides that Members can be removed from their positions before the expiration of their terms only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). And just one year before issuing *Garmon*, the Supreme Court reaffirmed *Humphrey's Executor v. United States,* 295 U.S. 602 (1935)*,* which limited the President's removal power, *see id.* at 631, in *Wiener v. United States*, 357 U.S. 349 (1958). When the *Garmon* Court spoke of Congress's intent to create a "specific and specially constituted tribunal" that would bring to bear its "specialized knowledge and cumulative experience," 359 U.S. at 242, what made that NLRB "special" was its independence – that it was guided by expertise rather than presidential whim.

The elimination of Board Member's removal protections will undeniably lessen the NLRB's independence from political influence. If the President prevails in *Wilcox*, presidents will be permitted to remove Members who issue decisions contrary to the president's politics or who a president even suspects might do so, which may cause Members to issue decisions based on political considerations. And at the start of each presidency, a president could even replace existing Members with a new, five-member panel of political loyalists – as if the Board were an extension of the President's Cabinet. That is an entirely different NLRB than the agency under consideration in *Garmon.*

The Fourth Circuit adopted similar logic in *Owen*. The court held that an exception to exhaustion requirements could be justified partly by the Special Counsel and MSPB's loss of independence, pointing to the President's position in ongoing litigations, including *Wilcox*, that

removal protections essential to the legislative scheme were unconstitutional, and the possibility that the Supreme Court would side with the President. *See Owen*, 139 F.4th at 307-08.

Based on the text, legislative history, and historical context of the NLRA, Congress "entrusted administration of the labor policy for the Nation," *Garmon*, 359 U.S. at 242, to an independent agency. The NLRB that would remain after a decision in the President's favor in *Wilcox* would not be the NLRB Congress created in 1935 with removal protections for Board members, and that the *Garmon* Court took for granted in the wake of *Humphrey's Executor*'s reaffirmance in *Wiener*. *Garmon* preemption should not apply to that reconstituted NLRB.

B. Amazon's *Garmon* Preemption Arguments Are Barred by Judicial Estoppel.

Amazon is judicially estopped from asserting the constitutional argument that the NLRB has exclusive jurisdiction, because it obtained a favorable result in the Fifth Circuit case (concerning labor disputes in the same Staten Island warehouse at issue in this case), by making the opposite argument – that the NLRB lacks the constitutional authority to enforce the NLRA.

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party . . . in a previous proceeding." 18 Moore's Federal Practice - Civil § 134.30 (2025). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (citations and quotations omitted). This can include changes in legal, as well as factual positions. *See* 18 Moore's § 134.30 n.8 (collecting cases).

"[S]everal factors typically inform the decision whether to apply the doctrine in a particular case:" (1) whether "a party's later position" is "clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's

earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51 (citations and quotations omitted).  All three factors are satisfied here.

*First*, Amazon's position here is the opposite of its position in the Fifth Circuit.  In its motion for a preliminary injunction in the Western District of Texas, Amazon challenged the NLRB's "authority to act," Sharp-Wasserman Decl., Ex. E-3 (Hearing Transcript) at 3:23-24, arguing that the NLRB violated the Constitution by "pursuing . . . administrative proceedings" against Amazon, *id.*, Ex. E-2 (Motion) at 1.   But in this case, Amazon argues that the NLRB has the exclusive constitutional authority to pursue administrative proceedings against Amazon.

*Second*, Amazon obtained a favorable result by asserting that position in the Fifth Circuit. While the Fifth Circuit's ultimate order did not address the merits of Amazon's constitutional arguments, Amazon obtained an administrative stay of NLRB proceedings by persuading the Fifth Circuit that it was likely to succeed on the merits of those claims.  *See id.*, Exs. E-4 (Amazon's motion for an administrative stay) at 11-19; E-5 (2024.09.30 Order granting administrative stay).  Practically, that stay brought Amazon a favorable result, by delaying a Board decision until after the loss of a quorum, at which point the Board lost the ability to render a decision against Amazon.  These forms of success are sufficient to satisfy this prong, which does not require an ultimate win on the merits, but just that Amazon's position was "adopted in some way by the court in the earlier proceeding."  *Lia v. Saporito*, 541 F. App'x 71, 73 (2d Cir. 2013) (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir.2010)); *see also O'Toole v. Otway (In re 78-80 St Marks Place LLC)*, 648 B.R. 505, 520-21 (Bankr. S.D.N.Y.

2023) (taking a position for purposes of entering into a consent agreement qualifies); *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513-14 (3d Cir. 1953) (settlement of a prior action qualifies).

*Third*, Amazon seeks an unfair advantage through its strategic self-contradiction, to the detriment of PERB, the NLRB, and workers at the Staten Island warehouse. Amazon is defending the NLRB's constitutional authority in this Court, to undermine PERB's constitutional authority, while challenging the NLRB's constitutional authority in other courts, to deprive its workers of access to both agencies. The Court should not permit this "perversion," *New Hampshire*, 532 U.S. at 750, of both judicial and administrative processes.

C. Amazon's Remaining Arguments Misinterpret SERA and Misapply *Machinists*.

In addition to raising *Garmon* preemption arguments as to the 2025 Amendment, Amazon challenges several SERA provisions on *Machinists* preemption and constitutional vagueness grounds. But Amazon misinterprets these SERA provisions; properly interpreted, they have a clear meaning and are not subject to *Machinists*. Moreover, Amazon lacks standing to challenge these provisions, which have not caused Amazon any injury, and in some instances, do not even regulate Amazon's conduct, but rather the conduct of unions and employees.

> i.  *Machinists Concerns Unregulated Subject Matter Related to "Economic Weapons of Self-Help."*

*Machinists* preemption does not concern the subject matter of Amazon's grievances – namely, state legislation that parallels the NLRA or supposedly conflicts with the NLRA's substantive requirements. Rather, *Machinists* addresses conduct that the NLRA *does not* regulate: "state law and state causes of action . . . concerning activity that was neither arguably protected against employer interference by §§ 7 and 8(a)(1) of the NLRA, nor arguably prohibited as an unfair labor practice by § 8(b) of that Act." *Rest. L. Ctr. v. City of New York*, 90 F.4th 101, 110–11 (2d Cir. 2024) (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724,

751 (1985)).  Specifically, *Machinists* focuses on "economic weapons of self-help, such as strikes and lockouts."  *Rondout Elec., Inc. v. NYS Dep't of Lab.*, 335 F.3d 162, 167 (2d Cir. 2003) (quoting *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 614–15 (1986)).

> ii.     *Properly Interpreted, the Challenged SERA Provisions Have Clear Meanings that Place Them Outside of Machinists' Application.*

Amazon's assertions that SERA departs from the NLRA in various ways rest on misinterpretations of SERA.  Contrary to Amazon's approach, courts generally interpret SERA consistently with the NLRA, since the former was modeled after the latter.  *See, e.g.*, *Davega City Radio, Inc. v. State Labor Relations Bd.*, 281 N.Y. 13, 22 (1939) ("The two statutes are not only alike in their provisions but are almost identical in their language. It has been observed that the New York act is the State's equivalent of the National act."); *N.Y. State Labor Relations Bd. v. Holland Laundry, Inc.*, 294 N.Y. 480, 492-93 (1945) (noting that federal cases interpreting the NLRA "apply with equal force" to state law); *Hernandez v. State of N.Y.*, 173 A.D.3d 105, 120 (App. Div., 3rd Dept. 2019) (noting that "SERA was modeled after" the NLRA).

First, Amazon asserts that SERA prohibits employer speech, because it has no precise analogue of 29 U.S.C. § 158(c), explicitly protecting employer speech.  But PERB interprets SERA to incorporate the same protection.  *See, e.g.*, *Harris, Upham, & Co.*, Sharp-Wasserman Decl., Ex. I-1 at 8, 10 SLRB 279 (1947) (employer speech permissible unless it has element of coercion); *James McCreery and Company*, Ex. I-2 at 5-6,11 SLRB 59 (1948) (same) (citing NLRB precedent); *The Gorton Coy, Inc.*, Ex. I-3 at 5, 22 SLRB 93 (1959) (same).[11,12]  Based on

---

[11] Before Section 158(c) was enacted, courts also read the NLRA not to enjoin an "employer from expressing its view on labor policies or problems."  *Nat'l Lab. Rels. Bd. v. Virginia Elec. & Power Co.*, 314 U.S. 469, 477 (1941).

[12] *Chamber of Commerce v. Brown*, 554 U.S. 60 (2008), Opening Br. at 14, is distinguishable, because SERA permits *non-coercive* employer speech opposing unionization. *See id.* at 63 (detailing statutory prohibition of "'*any* attempt by an employer to influence the decision of its employees' regarding '[w]hether to support or oppose a labor organization' and '[w]hether to become a member of any labor organization'") (emphasis added).

a proper interpretation of SERA's employer speech rules, there is no *Machinists* issue, because the NLRA and SERA regulate the same subject matter (employer speech) and have the same rules: coercive speech is prohibited, and non-coercive speech is permitted. *Machinists* preemption concerns state regulation where the NLRA *does not* regulate.

Second, contrary to Amazon's assertions, employees covered by SERA have the right to decline to join a union. *See, e.g.*, *Paumanok Vineyards & Palmer Vineyards*, 55 PERB ¶ 3401 (2022) ("review of dues deduction authorization cards . . . is necessary to preserve the sanctity of each employee's right to choose to join a union or to refrain from joining one"); *Macari Vineyards and Winery, Ltd*, Case No. CU-6721 (June 18, 2024) (showing authorization cards to the employer "would have a chilling effect on employees' willingness to engage or refrain from protected activities") (quoting *Veritas Health Services, Inc.*, 362 NLRB 283, 285 (2015)). *Machinists* does not apply here for two reasons. First, the NLRA and SERA regulate the same subject matter: the right to choose whether to join a union. Second, Amazon provides no authority that refusal to join a union is an "economic weapon." *Rondout Elec.*, 335 F.3d at 167.

Third, Amazon's argument that SERA does not permit employers to file ULP charges fails to account for other SERA provisions that achieve the same end. For example, PERB can remedy a union's refusal to bargain pursuant to its power to "take such steps as it may deem expedient to effect a voluntary, amicable and expeditious adjustment and settlement of the differences and issues between employer and employees which have precipitated or culminated in or threatened to precipitate or culminate in such labor dispute." N.Y. Lab. Law § 702-a(1). But even under Amazon's incorrect interpretation, its grievance does not fit *Machinists*, which focuses on "activity that was neither arguably protected against employer interference . . . nor

arguably prohibited as an unfair labor practice" by the NLRA, *Rest. L. Ctr.*, 90 F.4th at 110–11;

Here, Amazon asserts that SERA permits unions to take actions prohibited by the NLRA.

Fourth, Amazon also misinterprets Section 702-a when it argues that the provision

authorizes PERB to "compel" parties "to agree to a proposal or make a concession." *See*

Opening Br. at 15. Section 702-a, which applies to Amazon, provides that PERB may assist the

employer and union in reaching a "voluntary" agreement. SERA does not authorize PERB to

compel Amazon to agree to a contract.[13] And Amazon cites no authority for the proposition that

helping parties voluntarily resolve a labor dispute implicates *Machinists*.[14]

Finally, Amazon's claim that Section 715(2) "authorizes PERB to certify bargaining

representatives automatically," Opening Br. at 15, is misleading, because that provision applies

when the NLRB has already certified a union. SERA otherwise provides a card-check process,

requires majority support, and permits employers to challenge representation. *See* § 705.

### iii. Section 715(1)(b) is Not Vague.

Amazon's contention that the amended Section 715(1)(b) provides "no clear guidance

about when PERB jurisdiction applies," Opening Br. at 18, is meritless. Section 715(1)(b) states

that PERB has jurisdiction unless the NLRB has asserted, and a federal district court has ordered,

that the NLRB has jurisdiction. *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 142-44 (1971) held that

the NLRB has "implied authority . . . to enjoin state action where its federal power pre-empts the

field."[15] The NLRB can use that process to assert a preemption claim.

---

[13] In contrast, Section 702-b(3), which applies only to the agricultural industry, provides for compulsory arbitration.

[14] *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608 (1986), Opening Br. at 16, does not apply, because it involved a *requirement* to contract. *See id.* at 611-12.

[15] The NLRB did so, for example, in *NLRB v. California Horse Racing Bd.*, 940 F.2d 536 (9th Cir. 1991) and in the pre-*Nash-Finch* case, *NLRB v. N.Y. SLRB*, 106 F.Supp. 749 (S.D.N.Y. 1952).

iv.    *Amazon Lacks Standing.*

Amazon has not even established standing to challenge these SERA provisions on

*Machinists* and vagueness grounds.  To establish standing, "a plaintiff must have (1) suffered an

injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that

is likely to be redressed by a favorable judicial decision."  *Lacewell v. Off. of the Comptroller of*

*the Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330,

330 (2016), as revised (May 24, 2016)).  "[A]n 'injury in fact' is 'an invasion of a legally

protected interest which is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Amazon falters at the first prong, because it does not identify what injury it faces, now or

ever, from the provisions it challenges.  While Amazon frames its *Garmon* challenge as arising

from a current PERB proceeding against it, *see* Complaint ¶¶ 60-65, Amazon does not tie these

other claims to that proceeding, *see id.* ¶¶ 66-82.  Amazon thus fails to establish injury-in-fact.

And while courts sometimes recognize standing based on a plaintiff's "pre-enforcement"

fear of being subject to a new law, *see, e.g.*, *Cerame v. Slack*, 123 F.4th 72, 85-86 (2d Cir. 2024),

Amazon challenges SERA provisions that do not even regulate Amazon's conduct.  For

example, denying employees' right to decline to join a union would not affect Amazon, since

Amazon is not an employee.  *See N.Y. State Vegetable Growers Ass'n v. James*, No. 23 Civ.

1044, 2024 WL 1161115, at *2 (W.D.N.Y. Feb. 21, 2024), *aff'd*, No. 24-525-CV, 2025 WL

547915 (2d Cir. Feb. 19, 2025) (holding that agricultural employers lacked standing to assert

claims on behalf of farmworkers in a challenge to a different provision of SERA).  Likewise,

with respect to Amazon's assertion that SERA does not permit employers to challenge

misconduct by unions in the bargaining process, *see id.*: this would not require Amazon to

change its own business practices. The same is true of Amazon's claim that SERA authorizes "automatic[]" certification of representatives, *id.*: this would regulate unions, not Amazon.

### III. Plaintiff Has Not Established Irreparable Harm.

Amazon fails to establish irreparable harm, because in the earlier-filed *NLRB v. State of New York et al.*, No. 25 Civ. 01283 (N.D.N.Y.), PERB has agreed to "hold in abeyance any matters filed by private sector employees, employers, or labor unions that may implicate the [NLRB's] jurisdiction until a decision is rendered by this Court on the NLRB's preliminary injunction motion." Sharp-Wasserman Decl., Ex. C (Order). This effectively grants Amazon's requested relief until at least December 2025, eliminating any potential emergency.

### IV. The Public Interest and the Balance of the Equities Disfavor Emergency Relief.

A preliminary injunction would deprive New Yorkers of any forum to assert their collective bargaining rights during the pendency of this entire lawsuit, which is contrary to the public interest in that it would contravene the public policy objective to protect collective bargaining rights, which underlies both the NLRA and SERA. *See* NLRA, Pub. L. No. 74-198, 49 Stat. 449; N.Y. Lab. Law § 700. The Order in the N.D.N.Y. litigation, which provides that PERB will hold in abeyance any proceedings under the 2025 Amendment until the N.D.N.Y. issues a decision on the NLRB's motion for a preliminary injunction, fairly balances Amazon's interests with the public interest.

Moreover, the balance of the equities disfavors emergency relief, because if the Court instead considers Amazon's request for an injunction in the ordinary course of litigation, the Court will be able to render a decision that is informed by important subsequent factual and legal developments. First, Defendants have sought discovery from the NLRB that will provide information about the extent of its functioning. *See* Sharp-Wasserman Decl., Ex. D (discovery

requests); *Shanghai Zhenglang Tech. Co. v. Mengku Tech. Co.*, No. 20 Civ. 5209, 2020 WL 7481297, at *4 (E.D.N.Y. Dec. 18, 2020) (holding the balance of the equities disfavored a preliminary injunction when more discovery was needed regarding the merits).  And second, the Supreme Court's anticipated decision in *Wilcox* bears on the merits of this case.

Further, Amazon's inequitable litigation conduct establishing judicial estoppel also tips the balance of the equities against Amazon.  *See New Hampshire*, 532 U.S. at 750 (describing judicial estoppel as "equitable doctrine invoked by a court at its discretion").

## CONCLUSION

For the reasons stated above, Plaintiff has failed to satisfy its burden to show that the extraordinary remedy of a preliminary injunction is warranted.  Accordingly, Defendants respectfully request that the Court deny Plaintiff's motion in its entirety.

Dated: New York, New York          October 10, 2025

Respectfully submitted,

KAREN CACACE                     LETITIA JAMES
Bureau Chief                     ATTORNEY GENERAL OF NEW YORK
Labor Bureau

YOUNG LEE                        28 Liberty Street
Deputy Bureau Chief              New York, New York 10005
Labor Bureau                     (212) 416-6251

                                 By:    /s/ Julio Sharp-Wasserman

                                 Karen Cacace
                                 Young Lee
                                 Julio Sharp-Wasserman
                                 Assistant Attorneys General