UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMAZON.COM SERVICES LLC, | Case No.: 1:25-cv-05311-ERK-MMH |

AMAZON.COM SERVICES LLC,

    410 Terry Avenue North
    Seattle, Washington 98109-5210,


        Plaintiff,

    v.

NEW YORK STATE PUBLIC
EMPLOYMENT RELATIONS BOARD,
TIMOTHY CONNICK, in his official
capacity as Chair of the New York State
Public Employment Relations Board,
BARBARA C. DEINHARDT, in her
official capacity as Member of the New
York State Public Employment Relations
Board, ROSEMARY A. TOWNLEY, in
her official capacity as Member of the
New York State Public Employment
Relations Board, LAURA H. DELANEY,
in her official capacity as General
Counsel of the New York State Public
Employment Relations Board, and
JOSEPH E. O'DONNELL, in his official
capacity as Director of Private
Employment Practices and Representation
for the New York State Employment
Relations Board,

    P.O. Box 2074
    Empire State Plaza
    Agency Building 2
    Albany, New York 12220-0074,

        Defendants.

Case No.: 1:25-cv-05311-ERK-MMH

**PROPOSED BRIEF OF PROPOSED
INTERVENOR AMAZON LABOR
UNION NO. 1, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS
IN OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION**

*Date of service: October 10, 2025*

David O'Brien Suetholz
dsuetholz@teamster.org
Clement Tsao
ctsao@teamster.org
Willie J. Burden
wburden@teamster.org
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 624-6847

Richard Griffin
rgriffin@bredhoff.com
BREDHOFF & KAISER, PLLC
805 15th Street NW Ste. 1000
Washington, DC 20005
Phone: (202) 842-2600

Jeanne Mirer (NY Bar No. 4546677)
jmirer@julienmirer.com
JULIEN MIRER & ASSOCIATES, PLLC
1 Pierrepont Plaza, 12th Floor
Brooklyn, NY 11201
Phone: (212) 231-2235

Julie Gutman Dickinson *(Pro hac vice pending)*
jgd@bushgottlieb.com
Jennifer A. Abruzzo *(Pro hac vice forthcoming)*
jabruzzo@bushgottlieb.com
Luke Taylor
ltaylor@bushgottlieb.com
BUSH GOTTLIEB, ALC
801 N. Brand Blvd., Suite 950
Glendale, CA 91203
Phone: (818) 973-3228

Edward M. Gleason, Jr.
ed@hsglawgroup.com
HERZFELD, SUETHOLZ, GASTEL, LENISKI
AND WALL, PLLC
128 C Street NW
Washington, D.C. 20001
Phone: (202) 978-3507

Pamela M. Newport *(Pro hac vice forthcoming)*
pamela@hsglawgroup.com
HERZFELD, SUETHOLZ, GASTEL, LENISKI
AND WALL, PLLC
600 Vine Street | Suite 2720
Cincinnati, OH 45202
Phone: (513) 381-2224

Ian Hayes (NY Bar No. 5265889)
ihayes@hayesdolce.com
HAYES DOLCE LLP
135 Delaware Avenue, Suite 502
Buffalo, NY 14202
Phone: (716) 534-8388

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 3

I.    Plaintiff's Lawsuit Challenging the Amendment to SERA § 715 ............ 3

II.   The NRLB's loss of quorum and independence. ..................................... 4

III.  Amazon's evasion of the NLRA. ............................................................. 5

ARGUMENT ...................................................................................................... 7

I.    Plaintiff will not likely prevail on the merits. ......................................... 7

      A.    The Amendment and Sylla Charge are not *Garmon* preempted. ........... 7

            1.    The Board's dysfunction negates *Garmon*'s applicability ........... 8

            2.    The Board's loss of independence negates *Garmon*'s applicability. ......... 13

      B.    Amazon is judicially estopped from claiming *Garmon* preemption. ........... 17

      C.    The Amendment is not *Machinists* preempted. ................................. 18

      D.    The Amendment is not unconstitutionally vague. ............................... 22

II.   Plaintiff is not threatened with irreparable harm. ................................. 23

III.  The balance of hardships and public interest weigh against an injunction. ........ 24

CONCLUSION .................................................................................................. 25

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT (L.R. 7.1) .................... 27

## **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                       **Page(s)**

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,
    834 F.3d 958 (9th Cir. 2016) ....................................................................................21

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. v. Lockridge*,
    403 U.S. 274 (1971)...............................................................................................12

*Amazon.com Servs. LLC v. NLRB*,
    2024 WL 4977179 (W.D. Tex. Sep. 29, 2024)......................................................18

*Amazon.Com Servs. LLC v. NLRB*,
    2025 WL 1766349 (C.D. Cal. June 9, 2025) ...................................................18, 19

*Amazon.com Servs. LLC v. NLRB*,
    No. 24-50761, 2025 WL 2476161 (5th Cir. Aug. 28, 2025) ...................................7

*Ashmore v. CGI Grp., Inc.*,
    923 F.3d 260 (2d Cir. 2019)..................................................................................17

*Boire v. Greyhound Corp.*,
    376 U.S. 473 (1964)...............................................................................................11

*Brown v. Pro Football*,
    518 U.S. 231 (1996).............................................................................1, 9, 22, 25

*Chamber of Com. of U.S. v. Brown*,
    554 U.S. 60 (2008)............................................................................................21, 22

*Chan v. United States DOT*,
    2024 WL 5199945 (S.D.N.Y. Dec. 23, 2024) ......................................................24

*Chicago, B. & Q.R. Co. v. McGuire*,
    219 U.S. 549 (1911)...............................................................................................17

*Cipollone v. Liggett Grp.*,
    505 U.S. 504 (1992)..................................................................................................9

*Clark v. AII Acquisition, LLC*,
    886 F.3d 261 (2d Cir. 2018)..................................................................................18

*Cmty. Hous. Improvement Program v. City of New York*,
    59 F.4th 540 (2d Cir. 2023) ..................................................................................19

*Fort Halifax Packing Co. v. Coyne*,
    482 U.S. 1 (1987)...................................................................................................21

*Glacier Nw. v. Int'l Bhd. of Teamsters Loc. Union No. 174*,
 598 U.S. 771 (2023)..................................................................................2, 17, 23

*Golden State Transit Corp. v. Los Angeles*,
 475 U.S. 608 (1986)..................................................................................19, 20, 21

*Guss v. Utah Labor Relations Board*,
 353 U.S. 1 (1957)......................................................................................11

*H. K. Porter Co. v. NLRB*,
 397 U.S. 99 (1970)....................................................................................20

*Harris v. Bessent*,
 2025 WL 980278 (D.C. Cir. Mar. 28, 2025) ........................................4, 8

*Harrison Steel Castings Co. v. NLRB*,
 923 F.2d 542 (7th Cir. 1991) ....................................................................10

*Heckler v. Chaney*,
 470 U.S. 821 (1985)..................................................................................16

*Humphrey's Executor v. United States*,
 295 U.S. 602 (1935)..................................................................................4, 13, 15

*NLRB v. J. Weingarten*,
 420 U.S. 251 (1975)..................................................................................1, 9

*Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, v. Wisconsin Emp.
 Rels. Comm'n*,
 427 U.S. 132 (1976)........................................................................... *passim*

*Loper Bright Enters. v. Raimondo*,
 603 U.S. 369 (2024)..................................................................................16

*Manis v. United States Dep't of Agric.*,
 2025 WL 2389422 (4th Cir. Aug. 18, 2025)...........................................24

*Massachusetts v. EPA*,
 549 U.S. 497 (2007)..................................................................................16

*McLamb v. NLRB*,
 141 F.4th 1308 (D.C. Cir. 2025) ..............................................................16

*Metro. Life Ins. Co. v. Massachusetts*,
 471 U.S. 724 (1985)..................................................................................7

*Metro. Taxicab Bd. of Trade v. City of New York*,
 615 F.3d 152 (2d Cir. 2010)......................................................................7

*Motrade v. Rizkozaan*,
 1998 WL 108013 (S.D.N.Y. Mar. 11, 1998) .......................................................18

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
 584 U.S. 453 (2018)................................................................................................2, 12

*Nat'l Ass'n of Immigr. Judges v. Owen*
 139 F.4th 293 (4th Cir. 2025) ...........................................................................8, 9, 15

*New Hampshire v. Maine*,
 532 U.S. 742 (2001)...............................................................................................18

*New Process Steel v. NLRB*,
 560 U.S. 674 (2010)..................................................................................................4

*New York Racing Ass'n v. NLRB*,
 708 F.2d 46 (2d Cir. 1983)................................................................................11, 16

*NLRB v. Gissel Packing Co.*,
 395 U.S. 575 (1969)...........................................................................................21, 22

*NLRB v. California Horse Racing Bd.*,
 940 F.2d 536 (9th Cir. 1991) .................................................................................23

*Norton v. S. Utah Wilderness All.*,
 542 U.S. 55 (2004).................................................................................................16

*RAV Truck & Trailer Repairs v. NLRB*,
 997 F.3d 314 (D.C. Cir. 2021) ...............................................................................10

*Rest. L. Ctr. v. City of New York*,
 360 F. Supp. 3d 192 (S.D.N.Y. 2019)....................................................................19

*Rest. L. Ctr. v. City of New York*,
 90 F.4th 101 (2d Cir. 2024) .............................................................................20, 21

*San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*,
 359 U.S. 236 (1959)...................................................................................... *passim*

*Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*
 436 U.S. 180 (1978)...............................................................................................15

*Seneca Nation of Indians v. New York*,
 26 F. Supp. 2d 555 (W.D.N.Y. 1998) ....................................................................18

*Silverman v. Whittall & Shon*,
 1986 WL 15735 (S.D.N.Y. June 6, 1986) .......................................................10, 15

iv

*Space Expl. Techs. Corp. v. NLRB*,
  2025 WL 2396748 (5th Cir. Aug. 19, 2025).................................................................18, 24

*National Labor Relations Board v. State of New York et al.*,
  1:25-cv-1283 (N.D.N.Y).........................................................................................................19

*Texas v. Cobb*,
  532 U.S. 162 (2001).................................................................................................................10

*Trump v. Slaughter*,
  606 U. S. ___ (2025).................................................................................................................4

*Trump v. Wilcox*,
  145 S. Ct. 1415 (2025)........................................................................................................4, 15

*Wiener v. United States*,
  357 U.S. 349 (1958).................................................................................................................13

*Wyeth v. Levine*,
  555 U.S. 555 (2009).................................................................................................................17

**State Cases**

*Wisconsin Lab. Rels. Bd. v. Fred Rueping Leather Co.*,
  279 N.W. 673 (Wis. 1938).........................................................................................................8

**Federal Statutes**

29 U.S.C. § 160.....................................................................................................................10, 11

29 U.S.C. § 151.......................................................................................................................1, 25

29 U.S.C. §153........................................................................................................................4, 11

29 U.S.C. § 158.............................................................................................................................22

Civil Service Reform Act.........................................................................................................8, 9

National Labor Relations Act ........................................................................................... *passim*

Recovery Act section 7 (a).........................................................................................................14

**State Statutes**

N.Y. Lab. Law § 715(1)(b)...........................................................................................................3

NY Lab. Law § 700.....................................................................................................................25

NY Lab. Law § 702................................................................................................................20, 21

NY Lab. Law § 704 ...................................................................................................21, 22

State Employment Relations Act ........................................................................ *passim*

**Other Authorities**

*ALU*,
  NLRB Case No. 29-CA-310869 ...............................................................................6

*Amazon.com Servs. LLC*,
  373 NLRB No. 136 (Nov. 13, 2024) .....................................................................22

Celine McNicholas et al., Unlawful Employer Opposition to Union Election
  Campaigns, ECON. POL'Y INST. 5 (Dec. 11, 2019), https://perma.cc/J4V3-
  Y9NA .......................................................................................................................5

*Cemex Constr. Materials Pac., LLC*,
  372 NLRB No. 130 (Aug. 25, 2023) .....................................................................23

Economic Policy Institute, *Workers are winning union elections, but it can take
  years to get their first contract* (May 1, 2023)........................................................5

*Hearing on S. 1958 Before the Senate Comm. on Education and Labor, 74th
  Cong. (1935)* .........................................................................................................14

James A. *The Making of the National Labor Relations Board: A Study in
  Economics, Politics, and the Law, Volume I (1933-1937)* .................................14

John Kruzel & Daniel Wiessner, *Frozen feud: How Trump and the Supreme
  Court helped put historic Whole Foods union bid on ice* (Reuters, Oct. 1,
  2025). .....................................................................................................................11

Paul C. Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization
  Under the NLRA*, 96 HARV. L. REV. 1769, 1769-70 (1983) ...................................5

*Siren Retail Corp*,
  373 NLRB No. 135 (Nov. 8, 2024) .......................................................................22

## INTRODUCTION

Congress enacted the National Labor Relations Act ("NLRA") in 1935 during the Great Depression to address nationwide industrial and economic instability emanating from widespread strikes, violence, and other protest activity caused by a lack of sufficient channels for employees to engage with their employers to improve their wages and working conditions. While the NLRA's substantive aims were various—promoting industrial democracy, redistributing wealth, and peacefully resolving labor disputes—Congress envisioned that the route to fulfilling all those goals was "meaningful collective bargaining." *See, e.g.*, *Brown v. Pro Football*, 518 U.S. 231, 237 (1996) (collecting cases); 29 U.S.C. § 151 ("The denial by some employers of the right of employees to organize and the refusal by some employers to accept the procedure of collective bargaining lead to strikes and other forms of industrial strife or unrest . . . burden[] and affect[] the flow of commerce . . . [and] aggravate recurrent business depressions, by depressing wage rates . . . ."). Safeguarding collective bargaining requires the National Labor Relations Board ("NLRB" or "Board") to *actively* enforce the NLRA. *E.g. infra* pp. 5-7 (detailing Amazon's three-year litigation preventing Board from enforcing its obligation to collectively bargain with Intervenor's members). In fact, fundamental to Congress's core objective was the intention that the Board would actively "adapt the [NLRA] to changing patterns of industrial life." *NLRB v. J. Weingarten*, 420 U.S. 251, 266 (1975).

This case involves a New York law (the "Amendment") that enables that state's Public Employment Relations Board ("PERB") to apply New York's State Employment Relations Act ("SERA") to workforces that have hereto fallen under the NLRA—provided the NLRB has not "successfully assert[ed]" jurisdiction. The Amendment recognizes that the premises underlying *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236 (1959)

("*Garmon*"), which is an implied preemption doctrine, have today been negated. That doctrine requires a functioning, independent NLRB. The NLRB is no longer either. Not only has it suffered decades-long atrophy, but it has lacked the quorum needed to effect enforceable judgments for over eight months. Furthermore, the Supreme Court has embraced the view that statutory removal protections for Board members under the NLRA can be disregarded by the President, and appears poised to definitively rule that such protections are unenforceable.

Congress would not have intended *this* type of NLRB—a hamstrung agency under the President's thumb—to effect a preemption regime that Justices Thomas and Gorsuch recently clocked as "strange[ly] . . . broad". *Glacier Nw. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 785 (2023) (concluding the Court "should carefully reexamine" *Garmon* in "an appropriate case"). And, regardless of what this court determines would have been Congress's intent, permitting *Garmon* preemption when the Board cannot meaningfully regulate runs afoul of modern-day 10th Amendment doctrine under *Murphy v. Nat'l Collegiate Athletic Ass'n*,  584 U.S. 453 (2018).

 Nor is the Amendment facially preempted under *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, v. Wisconsin Emp. Rels. Comm'n*, 427 U.S. 132 (1976) ("*Machinists*"). That doctrine limits state regulation of certain matters, within collective-bargaining negotiations, that the NLRA intended to be left unregulated. Plaintiff admits that there is no difference between the SERA law and NLRA law applicable to the sole charge PERB is currently processing pursuant to the Amendment. This is fatal to a facial challenge, as it demonstrates applications of the Amendment that even Plaintiff admits do not infringe *Machinists*' zone of free play.

Plaintiff's *Machinists* challenge fails additionally. Not only does Plaintiff fail to substantiate its assertions about the meaning of the SERA provisions Plaintiff targets, but, even

had Plaintiff done so based on past PERB precedents, Plaintiff's challenge would be premature because PERB has never yet interpreted how those provisions apply to employees who have hereto fallen under the NLRA. Furthermore, Plaintiff's *Machinists* challenge impermissibly targets provisions that merely set the stage for collective bargaining—rather than intrude into the process of negotiations to an extent Congress did not countenance.

Plaintiff's vagueness challenge fares no better. Plaintiff is accordingly unlikely to prevail on the merits of any claim. On the basis of these claims, Plaintiff seeks to prevent Intervenor from enforcing its members' rights through PERB after Plaintiff has spent years preventing Intervenor from doing so through the NLRB. Plaintiff's efforts on that latter front have even included litigation through which Plaintiff has sought judicial injunctions of NLRB enforcement proceedings on grounds that the NLRB is unconstitutional. Yet Plaintiff now tells this Court the NLRB functions just fine, and is where Intervenor should file its charges.

That's "heads I win, tails you lose". It's not equities in Plaintiff's favor. Nor advancement of the public interest. The NLRA and SERA both embrace public policies of advancing collective bargaining. An injunction would deprive Intervenor of a functioning forum to enforce the labor law protections that are a precondition for that advancement.

## BACKGROUND

### I.    Plaintiff's Lawsuit Challenging the Amendment to SERA § 715

New York has amended SERA Section 715 to confer upon PERB the jurisdiction to adjudicate alleged violations of the SERA with respect to "any employer, employees, trades, or industries" over which the National Labor Relations Board has not "successfully assert[ed]" jurisdiction. N.Y. Lab. Law § 715(1)(b), as amended by S.8034A (the "Amendment"). Plaintiff filed this lawsuit to enjoin the Amendment's enforcement. Count One alleges the Amendment is

3

facially preempted under *Garmon*, because the Amendment permits PERB to exercise jurisdiction over conduct that is protected or arguably protected by Section 7 of the NLRA and over conduct that is prohibited or arguably prohibited by Section 8 of the NLRA. *See* Complaint, Dkt. 1, ¶¶ 24, 55-59 ("Compl.").

Count Two is an as-applied challenge, alleging that PERB's processing of the charge that Intervenor itself filed pursuant to the Amendment is preempted under *Garmon*. *Id.* ¶¶ 43, 45, 60-65; *infra* p. 7 (describing this charge) (the "Sylla Charge").  Count Three claims the Amendment is facially preempted under "*Machinists*". Compl. ¶¶ 66-73. Count Four alleges the Amendment is unconstitutionally vague. *Id.* ¶¶ 74-82.

Plaintiff has now moved to preliminarily enjoin Defendants from enforcing the Amendment, including to enjoin PERB's processing of the Sylla Charge. Dkt. 14 ("Mot.").

## II.    The NRLB's loss of quorum and independence.

The NLRA prohibits the President from removing NLRB members except for cause. *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) (citing 29 U.S.C. §153(a)). On January 27, 2025, President Trump removed Board member Gwynne Wilcox based on his view that these statutory removal protections are unconstitutional. *Harris v. Bessent*, 2025 WL 980278, at *2 (D.C. Cir. Mar. 28, 2025). The Supreme Court agreed they likely are, and accordingly stayed the D.C. Circuit's *en banc* decision enjoining Wilcox's removal. *Wilcox*, 145 S. Ct. at 1415. The Supreme Court has since granted certiorari before judgment in litigation arising from Trump's similar removal of FTC Commissioner Rebecca Kelly Slaughter, to take up whether the Court should overrule *Humphrey's Executor v. United States*, 295 U. S. 602 (1935). *Trump v. Slaughter*, 606 U. S. ___ (2025). The sum of all this is that the Board currently lacks a quorum and thus cannot issue any decisions, *New Process Steel v. NLRB*, 560 U.S. 674, 676 (2010), plus Board members

currently lack the independence that the NLRA envisioned, *infra* I.A.2, and the Supreme Court is poised to definitively so rule.

### III.    Amazon's evasion of the NLRA.

Intervenor (the "Union") is a labor union representing employees of Amazon.com LLC JFK8 Fulfillment Center who work at Amazon's JFK8 facility in Staten Island. Declaration of Jeanne Mirer ISO Motion to Intervene, Dkt. 26-2 ("Mirer Dec."), ¶¶ 5, 10, 12. More than three years after these workers voted in an NLRB election to unionize with the Union's predecessor— the ALU, *id.* ¶ 12—Amazon has still refused to bargain with them, much less reach a collective bargaining agreement. *Id.* ¶¶ 6-7. Instead, Amazon rolled out the now-common employer strategy of willfully violating the NLRA and abusing the NLRB's processes to curry delay and abrade workers' morale, hoping that whatever remedies the NLRB may eventually issue will come too late and be too meager to compensate for or deter these violations.[1] And Amazon has brought this strategy to new heights by moving federal courts to enjoin NLRB proceedings, based on Amazon's arguments that the NLRB's structure is unconstitutional.

Specifically, the ALU filed a representation petition with the NLRB on December 22, 2021, to request an election for JFK8 workers to vote on whether to unionize with ALU. Mirer Decl. ¶ 5. The ALU won that election by over 500 votes when it finally was held in March and April 2022. *Id.* In light of its election victory, on April 2, 2022, the ALU requested to

---

[1] Even before the NLRB lost a quorum, it had become notorious for its increasingly slow processes and weak enforcement capacity. *E.g.* Economic Policy Institute, *Workers are winning union elections, but it can take years to get their first contract*, (May 1, 2023) (collecting studies and describing NLRB's "steadily increasing" processing delays"); Celine McNicholas et al., Unlawful Employer Opposition to Union Election Campaigns, ECON. POL'Y INST. 5 (Dec. 11, 2019), https://perma.cc/J4V3-Y9NA (explaining how NLRB currently "fails to prevent employers from engaging in aggressive, coercive, and intimidating opposition to workers' efforts to unionize"); Paul C. Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization Under the NLRA*, 96 HARV. L. REV. 1769, 1769-70 (1983) ("[T]he fraction of the work force actually engaged in collective bargaining is steadily declining. A major factor in this decline has been the skyrocketing use of coercive and illegal tactics—discriminatory discharges in particular—by employers determined to prevent unionization of their employees . . . the current system of unfair labor practice remedies has proved powerless to contain such intimidation or to undo its effects.").

collectively bargain with Amazon on behalf of the JFK8 employees who had designated the ALU as their representative during the election. Mirer Dec. ¶ 6. Amazon's refusal to bargain *at all* with the ALU—much less bargain in good faith as required by the NLRA—led the ALU to file an unfair labor practice charge in NLRB Case No. 29-CA-310869 and, ultimately, resulted in the issuance of an administrative complaint by the NLRB against Amazon. Mirer Dec. ¶ 7. The NLRB has also found cause to issue administrative complaints alleging that Amazon has committed other unfair labor practices against this workforce, including unlawful discipline of employees. *Id.*

Rather than bargain, Amazon has contested its loss in the 2022 election and has repeatedly used the NLRB's administrative process to challenge the election results. *Id.* ¶¶ 8-11, 13. After an initial twenty-four day hearing, an administrative hearing officer overruled Amazon's objections. *Id.* ¶ 8. Amazon once again challenged that decision by requesting review by the Director of NLRB Regional Office 28 ("Regional Director"), whom Amazon provided a 100-page brief. The Regional Director eventually rejected Amazon's arguments, upheld the election, and, on January 11, 2023 certified the Union. *Id.* ¶¶ 9-10.

Yet Amazon's challenges continued, and not until August 29, 2024—almost two and a half years after the election—did the NLRB issue a decision affirming the Regional Director's upholding of the election results. *Id.* ¶ 13. But Amazon still refused to respect its workers' choice of union representation and continued to fight it. Specifically, on September 5, 2024, Amazon filed suit in the United States District Court for the Western District of Texas, a forum far from the JFK8 operation in Staten Island, NY, to enjoin the NLRB from certifying the Union as the collective bargaining representative of JFK8 employees, based on Amazon's claim, *inter alia*, that the NLRA unconstitutionally protects NLRB members from removal by the President. *Id.* ¶

14; *Amazon.com Servs. LLC v. NLRB*, 2025 WL 2476161, at *2 (5th Cir. Aug. 28, 2025). In sum, Amazon is seeking to enjoin proceedings before PERB while at the same time making various claims in court challenging the NLRA's and NLRB's constitutionality. This has resulted in protracted litigation in the district court and Fifth Circuit Court of Appeals. *See generally id.* (canvassing litigation's history).

Most recently at the JFK8 facility, on or about August 9, 2025, Amazon fired ALU-IBT Local 1 member and prominent union supporter Brima Sylla. Mirer Dec. ¶ 15. This termination is just the latest example of Amazon's efforts to squelch union activities and support at JFK8. On September 15, the Union filed the Sylla Charge with PERB pursuant to the Amendment, alleging that Sylla's termination violates §704(10) of SERA. Mirer Dec. ¶ 15.

## ARGUMENT

A movant for preliminary injunction usually "must demonstrate 1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor, and 3) that the public's interest weighs in favor of granting an injunction." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010). But where, as here, the injunction "will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Id.*

### I.      Plaintiff will not likely prevail on the merits.

#### A.      The Amendment and Sylla Charge are not *Garmon* preempted.

"[T]he NLRA contains no statutory provision indicating the extent to which it was intended to pre-empt state law." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 733 (1985).

While the NLRA centralized administration of *the NLRA* in a single agency—the NLRB—*Garmon* recognized that "the statutory implications concerning what has been taken from the States and what has been left to them are of a Delphic nature." *Garmon*, 359 U.S. at 241. Faced with that silence, the Court ultimately inferred a congressional intent that states not regulate conduct that "is arguably subject to [§] 7 or [§] 8 of the [NLRA]." *Id*. at 245. For such conduct, the Court inferred, states "must defer to the exclusive competence of" the NLRB—a "specially constituted tribunal" that would enforce labor policy through its "specialized knowledge and cumulative experience." *Id*. at 242, 244-45. This was always a contested interpretation. *E.g.* *Wisconsin Lab. Rels. Bd. v. Fred Rueping Leather Co.*, 279 N.W. 673, 677-78 (Wis. 1938) (reasoning in part that NLRA's text addresses conflict only with federal law). But now, the NLRB's inability to regulate and loss of independence negate *Garmon*'s own premises.

      1.      The Board's dysfunction negates *Garmon*'s applicability.

The NLRB's loss of quorum has "disable[d]" it "from operating". *Harris v. Bessent*, 2025 WL 980278, at *47 (D.C. Cir. Mar. 28, 2025) (Millet, J., dissenting from stay of order reinstating Wilcox). Congress would not have intended a non-operative NLRB to displace other means of enforcing labor protections.

The Fourth Circuit has followed this logic. In *Nat'l Ass'n of Immigr. Judges v. Owen*, that court addressed whether the Civil Service Reform Act ("CSRA")—through which Congress "create[d] a uniform scheme for administrative and judicial review of covered federal employee personnel actions"—deprives federal district courts of jurisdiction over those actions. 139 F.4th 293, 299, 301 (4th Cir. 2025). Longstanding doctrine holds yes, the Court explained. *Id*. at 304-05. Analogous to the NLRA and NLRB, the CSRA established the Merit System Protection Board ("MSPB") as a quasi-judicial, independent agency to adjudicate such actions. *Id*. at 302

(explaining CSRA's removal protections for MSPB members). Therefore, and again analogously, the Supreme Court interpreted the CSRA's specific, detailed administrative scheme to be exclusive. *Id.* at 299, 304-05. Yet, while "[i]t has been well-established that Congress's intent for the CSRA [was] to preclude district court jurisdiction[,] . . . [t]hat conclusion can only be true . . . when the statute functions as Congress intended." *Id.* at 305. The Court identified two phenomena that would cause the statute to cease functioning so. First, the administrative scheme's inability to process claims "adequately and efficiently." *Id.* at 305 (noting this inability is present if "the Senate-confirmed roles in the MSPB . . . go unfilled, or if the agencies fail to perform their duties such that covered employees' claims are not adequately processed"). Second, if the MSPB ceases to be an independent agency. *Id.* at 305-06. In sum, "Congress intended for the Civil Service Reform Act to strip district courts of jurisdiction only if federal employees were otherwise able to receive adequate and independent review of their claims." *Id.* at 299.

Although *Owen* was not applying *Garmon*, it was making the same fundamental inquiry the *Garmon* court had and that this court must in any preemption analysis: What was (or, would have been) Congress's intent? *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). For the following reasons, Congress would not have intended *Garmon* preemption to apply today.

*Owen* suggests—and the Union believes—that the decades-long atrophy of the NLRB since the 1950's so-called "golden era" of collective bargaining, *supra* p. 5 & fn.1, has created a context so remote from *Garmon*'s as to undermine that decision's tenability, given the NLRA's fundamental objective of advancing "meaningful collective bargaining", *Brown* 518 U.S. at 237, and Congress's expectation that the Board would actively "adapt the [NLRA] to changing" industrial realities. *J. Weingarten*, 420 U.S. at 266. This court should also recognize that the Board's protracted loss of quorum and loss of independence was unanticipated by *Garmon* and

9

falls squarely within *Owen*'s reasoning. Indeed, even if it was theoretically possible when *Garmon* was decided that such loss of quorum and independence might someday occur, the *Garmon* decision nowhere addressed what impact that loss would have on preemption. *Texas v. Cobb*, 532 U.S. 162, 169 (2001) (noting that law is "not defined by inferences from opinions which did not address the question at issue").

Plaintiff and amici raise two categories of arguments to defend *Garmon* in the time of lost quorum. The first highlights that the NLRB's regional offices process many matters. This ignores that no regional determination becomes an enforceable judgment against a party until it becomes a final Board order and then additionally is enforced by a Court of Appeal. *See* 29 U.S.C.A. § 160(c, e, f)*; RAV Truck & Trailer Repairs v. NLRB*, 997 F.3d 314, 319 (D.C. Cir. 2021) (hearing Board's cross-petition for enforcement); *Silverman v. Whittall & Shon*, No. 86 CIV. 1675 (WK), 1986 WL 15735, at *1 (S.D.N.Y. June 6, 1986) (explaining that NLRB orders are not "binding" until enforced by court). When the Board lacks a quorum, the most an employer need do to prevent a regional determination in an unfair labor practice case from becoming an "order of the Board", 29 U.S.C. §160(c), that a "person aggrieved" may seek enforcement of, *id.* §160(f), is "fil[e]" "exceptions" to the regional determination with the Board, *id.* §160(c). The quorum-less Board cannot then issue a "final order". *See* §160(f) (courts possess jurisdiction over only petitions to review of "final orders"); *see also Harrison Steel Castings Co. v. NLRB*, 923 F.2d 542, 545 (7th Cir. 1991) ("[A] charged party may only seek judicial review of Board *orders*—not Board 'findings,' or 'charges,' or 'actions'"). In fact, at present, employers needn't even file exceptions to delay ultimate determinations. That's because the NLRB's Executive Secretary has not been delegated authority to adopt Administrative Law Judge's

decisions and recommended orders as "the order of the Board" under §160(c) when no one files exceptions.

In a *representation* case, all an employer needs to do is object to a regional certification of representative (i.e. union wins election) by refusing to recognize and bargain with the union—triggering an unfair labor practice charge known as "test of certification"—and then follow the same playbook.[2] *See Boire v. Greyhound Corp.,* 376 U.S. 473, 477-78 (1964) (noting federal courts lack jurisdiction to review certification proceedings, and outlining test of certification process required to obtain enforceable judgment). Amazon—like employers generally—knows this. *Supra* pp. 5-7 (explaining Amazon's refusal to comply with regional director certification). Without a quorum, workers lack recourse when employers flout regional determinations.[3]

A second argument—raised only by amici—is that the only processes Congress specified by which the Board can delegate jurisdiction to states are those in Sections 10(a) and 14(c) of the NLRA. Amici ignore that the quorum-less Board cannot issue the orders needed to effect such delegations under those provisions. 29 U.S.C. § 153(b) (omitting such orders from matters Board may delegate to regional directors). Amici nowhere demonstrate that Congress considered and countenanced this impediment to the Board's effecting such delegations. Rather, Congress enacted Section 14(c) in 1959 in hopes of precluding the "no-man's-land" of non-enforcement that the Court had permitted in *Guss v. Utah Labor Relations Board*, 353 U.S. 1 (1957). *New York Racing Ass'n v. NLRB,* 708 F.2d 46, 52-53 (2d Cir. 1983) (explaining this intent). That intent underscores why *Garmon* preemption cannot endure when the Board lacks a quorum. In

---

[2] Relatedly, when a union disputes a regional certification of election results (union loses election) and files an appeal with the Board, it just sits without resolution due to loss of quorum.

[3] Reporting on how and in record numbers employers—including Amazon affiliate Whole Foods—have argued the quorum-less Board cannot resolve election disputes includes John Kruzel & Daniel Wiessner, *Frozen feud: How Trump and the Supreme Court helped put historic Whole Foods union bid on ice* (Reuters, Oct. 1, 2025).

fact, there is scholarship and jurisprudence contending that the context in which Sections 10(a) and 14(c) were enacted casts doubt on *Garmon*'s tenability even when the Board has a quorum. *E.g. Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. v. Lockridge*, 403 U.S. 274, 315-16 (1971) (White, J., dissenting) (discussing 14(c)).

Finally, regardless of what this court determines would have been Congress's intent, permitting *Garmon* preemption to apply now runs afoul of the 10th Amendment under modern-day anticommandeering doctrine. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 472 (2018) (explaining Court has "recently" developed this doctrine). *Murphy* confronted a Congressional law—PASPA—that "prohibit[ed] state authorization of sports gambling." *Id*. at 474. However, Congress had declined to *itself* significantly regulate that gambling. *Id*. at 461 (noting aside from providing Attorney General enforcement authority, "PASPA does not make sports gambling a federal crime (and thus was not anticipated to impose a significant law enforcement burden on the Federal Government)."). The Court held that PASPA violated the 10th Amendment because PASPA told states they "may not" regulate certain private conduct that federal law did not itself meaningfully regulate. *Id*. at 474, 477, 480 (explaining such circumstances are not "valid preemption"). *Garmon*'s continuation in a time when the NLRB fails to engage in "significant law enforcement" of federal law, *id*. at 461, is directly analogous.

At minimum, this court should hold that *Garmon* preemption is suspended when the NLRB lacks a quorum. But, a better view is that the Board's long-worsening atrophy and current extended loss of quorum both demonstrate *Garmon* preemption is no longer tenable. Absent a quorum, state agencies must step in and initiate investigatory and enforcement proceedings that will take some time to run their course. Rather than require those proceedings to cease and lose

effect if and when the quorum finally restores, this court should instead rule that *Garmon* preemption has permanently ceased.

Indeed, the Supreme Court has allowed the President to deprive the Board of a quorum whenever he pleases, for as long as he pleases, for whatever reason, thus enabling a potential vicious cycle of repeated losses of quorum. *Garmon*'s surviving this development would give the President authority to shut down enforcement of labor law at any time, for unpredictable duration, and everywhere—in both the federal government and states—at whim.[4]

      2.      The Board's loss of independence negates *Garmon*'s applicability.

Regardless of whether Congress contemplated the Board would at times lack a quorum, Congress certainly did not contemplate that the Board would shed its independence. Lost independence is analytically distinct from lost quorum as a basis for *Garmon*'s cessation. The Board currently lacks—and will not likely regain— its independence. *Supra* pp. 4-5. Yet the Board's exclusive jurisdiction is staked on its independence. Plaintiff accordingly will not likely succeed on the merits.

The *Garmon* Court reasoned that Congress intended the NLRB would shape labor policy as a "specific and *specially constituted* tribunal" that would bring to bear its "specialized knowledge and cumulative experience." 359 U.S. at 242 (emphases added). The Court did not specify what was special about the NLRB's constitution because that issue was not before the Court. In fact, it likely took for granted the NLRB's status as an independent agency since just one year before issuing *Garmon*, the Court had reaffirmed *Humphrey's Executor* in its decision in *Wiener v. United States*, 357 U.S. 349 (1958).

---

[4] The threat of recurring federal government shutdowns only exacerbates this regime's precarity.

But the NLRB's independence is the foremost component of the "special[] constitut[ion]" *Garmon* emphasized. Historians of the NLRB make this clear. Gross, James A. *The Making of the National Labor Relations Board: A Study in Economics, Politics, and the Law, Volume I (1933-1937)*. And the legislative reports bear this out. A proposed amendment to place the NLRB under the Department of Labor was soundly defeated after Congressmembers and members of the pre-Wagner Act Board stressed the necessity of the Board's independence. *E.g.* H.R. REP. NO. 74-969, at 10-11 (1935), *reprinted in* 2 NLRB, LEGISLATIVE HISTORY OF THE NATIONAL LABOR RELATIONS ACT ("LEG. HIST. NLRA"), at 2920 (1935) (Board Member Biddle) ("The value and success of any quasi-judicial board dealing with labor relations lies first and foremost in its independence and impartiality . . . Where Congress has defined a policy and created an administrative board to carry out that policy, it has with marked consistency recognized that the board so created should . . . be free of control by the executive departments or by any particular administration"); 79 CONG. REC. 9668, 9722-9723 (1935), *reprinted in* 2 NLRB, LEG. HIST. NLRA, at 3207, 3209 (Rep. Marcantonio) (explaining "vital need for the complete independence of a quasi-judicial board" was demonstrated by "collapse of section 7 (a) of the Recovery Act" that resulted from necessity for "compromise" between "the N.R.A. and those with whom it had to deal," and explaining NLRB's "efficacy" depended on "confidence in its impartiality by labor and industry").

Senator Wagner himself explained that independence was necessary to avoid "political influences" and "interference with [the NLRB's] truly judicial functions". *National Labor Relations Board: Hearing on S. 1958 Before the Senate Comm. on Education and Labor, 74th Cong.*, 115-16 (1935)*, reprinted in* 1 NLRB, LEG. HIST. NLRA*,* at 1491-92 (Sen. Wagner) (elaborating his intent that "a board of this kind [must] be absolutely free of any kind of political

14

influence, or even a suspicion of being under any political influence, because if it is, it will be a failure").

Thus senators and representatives made explicit what *Garmon* left implicit: the Board's ability to apply its "specialized knowledge and cumulative experience" hinges on its "special[] constitut[ion]" *as an independent agency*. 359 U.S. at 242. This makes sense. It is well-established that the point of establishing independent agencies is to ensure they have the freedom to decide specialized problems by applying specialized expertise—rather than by attempting to appease a President. *E.g. Trump v. Wilcox*, 145 S. Ct. at 1417 (Kagan, J., dissenting). And the Supreme Court has continued to understand *Garmon* preemption to be linked to the Board's ability to apply its expertise *as an independent agency*. *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 191 (1978) (emphasis added) ("The [NLRA] protected the collective-bargaining activities of employees and their representatives and created a regulatory scheme to be administered by an *independent* agency which would develop experience and expertise in the labor relations area. The Court [in its decisional law that later culminated in *Garmon*] promptly decided that the federal agency's power to implement the policies of the new legislation was exclusive . . . .").

In short, *Owen*'s reasoning that lost independence negates the grounds for an agency's exclusive jurisdiction applies as much to the NLRB as to the MSPB. *Owen*, 139 F.4th at 299, 305-06. Furthermore, the fact that the Courts of Appeal can decline to enforce NLRB decisions that are arbitrary and capricious or contrary to the NLRA is an insufficient safeguard against Presidential pressure to fail to enforce the Act. *First*, the Act's goals are harmed by the delay and expense needed to seek judicial review. *E.g. Silverman*, 1986 WL 15735, at *1 (explaining "two to three years before the NLRB is able to obtain a binding final order from a court" allows

15

employer to "gain[] all the desired benefits from its alleged wrongdoing because no other worker in his right mind would participate in a union campaign . . .").

*Second*, while courts may now review the NLRB's interpretations of law *de novo*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the NLRB's fact-findings and judgment-calls will still receive substantial judicial deference, *McLamb v. NLRB*, 141 F.4th 1308, 1315 (D.C. Cir. 2025) (noting courts "review Board decisions with a very high degree of deference" and apply "substantial evidence" standard to fact-findings).

*Third*, administrative law's high tolerance for agency *inaction* means that Board members who fear getting fired may undermine the NLRA by declining to take enforcement actions, *see Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (agency "[r]efusals to take enforcement steps" are presumptively not judicially reviewable), delaying issuing decisions, *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (claim under APA to compel agency action can proceed only where plaintiff asserts agency failed to take a discrete agency action that it is required to take), and failing to undertake necessary rulemaking, *Massachusetts v. EPA*, 549 U.S. 497, 527-28 (2007) (judicial review of agency refusals to promulgate rules is "extremely limited" and "highly deferential"). Indeed, Courts may not compel the Board to exercise its authority under Section 10(a) or Section 14(c) to delegate jurisdiction to states. *See New York Racing Ass'n*, 708 F.2d at 52-53 (discussing 14(c)). And there is no basis for concluding that the Congress that enacted those Sections contemplated that the Board members deciding whether to exercise that authority would need to consider the threat of being fired without cause if they did so.

*Fourth*, the Wagner Act's drafters deemed independence necessary in part to preserve public confidence in the NLRB, without which confidence they did not believe the Board could adequately fulfill its function. *Supra* pp. 14-15.

* * *

Before the Board lost its independence, before it lost a quorum, two Justices of the Supreme Court recently wrote separately to "emphasize the oddity of *Garmon*'s broad pre-emption regime" and to suggest that a proper preemption inquiry would instead inquire whether "it is impossible to comply with both" the NLRA and a state law. *Glacier Nw.*, 598 U.S. at 785 (Thomas, J., and Gorsuch, J., concurring in judgment) (concluding "in an appropriate case, we should carefully reexamine whether the law supports *Garmon*'s 'unusual' pre-emption regime"). *Garmon*'s peculiarity is particularly stark considered alongside the presumption against preemption. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ("In all pre-emption cases, . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."); *see Chicago, B. & Q.R. Co. v. McGuire*, 219 U.S. 549, 570 (1911) (pre-NLRA recognition of states' historic police powers to enact laws "dealing with the relation of employer and employed").

*Garmon* is indeed a special preemption doctrine, created by the Court not Congress, that was staked on "special[]" conditions. *Garmon*, 359 U.S. at 242. Congress did not expressly preclude state action and certainly would not have intended for this Court-created doctrine to apply now when the President may halt the Board from enforcing the law with "You're Fired", whenever and for however long that President pleases, or may sway the direction of the Board's enforcement actions through that mere threat.

### B.     Amazon is judicially estopped from claiming *Garmon* preemption.

Judicial estoppel applies when "(1) a party's later position is clearly inconsistent with its earlier position, and (2) the party's former position has been adopted in some way by the court in an earlier proceeding." *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019). Courts

17

consider the "equities" of circumstances implicating estoppel, *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266-67 (2d Cir. 2018), to prevent parties from "playing fast and loose with the courts," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Courts in this circuit have recognized the doctrine applies to inconsistent legal positions, not just inconsistent factual statements. *E.g. Motrade v. Rizkozaan,* 1998 WL 108013, at *6 (S.D.N.Y. Mar. 11, 1998)*; but see Seneca Nation of Indians v. New York,* 26 F. Supp. 2d 555, 565 (W.D.N.Y. 1998).

Amazon is fundamentally taking a "heads I win, tails you lose" approach to labor law enforcement. Amazon has argued before the Ninth and Fifth Circuits that the NLRB's enforcement mechanisms are unconstitutionally structured and sought to accordingly enjoin the NLRB from pursuing charges against them. *Amazon.com Servs. LLC v. NLRB*, 2024 WL 4977179, at *5-6 (W.D. Tex. Sept. 29, 2024); *Amazon.com Servs. LLC v. NLRB,* 2025 WL 1766349, at *3 (C.D. Cal. June 9, 2025). In short, Amazon tells this court that the Union should file its charge with the NLRB, and assures this court the NLRB is functioning just fine; but Amazon has in other courts claimed that the NLRB's structure is unconstitutional and that it will be irreparably harmed by any NLRB enforcement proceedings against it. If both positions are accepted, Amazon can violate workers' labor law rights with impunity. Notably, in a recent Fifth Circuit decision enjoining NLRB proceedings, SpaceX prevailed on constitutional theories Amazon has likewise advanced. *Compare id. with Space Expl. Techs. Corp. v. NLRB*, WL 2396748, at *7-12, 14 (5th Cir. Aug. 19, 2025). This demonstrates that courts have adopted Amazon's arguments and that more courts may do so yet.

C.    The Amendment is not *Machinists* preempted.

Amazon best puts why its facial *Machinists* challenge fails: "[T]he SERA provisions applicable to the [Union's] PERB charge are indistinguishable from federal law . . . [T]he

conduct complained of in the PERB charge *clearly*—not arguably—articulates a violation of the NLRA." Mot. p. 17 & fns. 3-4. PERB's processing of that charge will therefore not regulate conduct Congress intended to be unregulated. Yet to prevail on its claim that the Amendment is facially *Machinists* preempted, Amazon must show that the Amendment treads on the free-play zone "in all of its applications". *See Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 548 (2d Cir. 2023).[5] Plaintiff's admission that the Amendment does not is fatal.

And Amazon—who has disavowed any bargaining relationship with the Union—is an improper plaintiff for a *Machinists* challenge. The point of *Machinists* preemption is to preserve an unregulated domain within *collective bargaining negotiations*, which Amazon has eschewed. *E.g. Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 615, 617 (1986) ("Protecting the free use of economic weapons during the course of negotiations was the rationale for . . . *Machinists*[.]"); *Rest. L. Ctr. v. City of New York*, 360 F. Supp. 3d 192, 237–38 (S.D.N.Y. 2019) (same).

Furthermore, Plaintiff nowhere demonstrates that PERB has interpreted any SERA provision in a way inconsistent with Section 8(c) or with any of the other features of the NLRA that Plaintiff's *Machinists* challenge relies on. Mot. at 14-16. Regardless, PERB has never interpreted SERA in a case involving parties that hereto fell under the NLRA's jurisdiction. There is no basis for concluding that in these cases PERB will decline to read SERA in harmony with the NLRA's provisions. If PERB so declines, an as-applied challenge could be filed for the court's consideration. As yet, Plaintiff's challenge is unripe.

---

[5] Tellingly, the NLRB's challenge to the Amendment raises no *Machinists* concern. *National Labor Relations Board v. State of New York et al.*, 1:25-cv-1283 (N.D.N.Y), Dkt. 17.

*Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608 (1986) refutes—not helps—Plaintiff's argument. The Court there "h[e]ld only" that "a city cannot condition a franchise renewal" to compel a party to agree to a collective bargaining agreement. *Id.* at 615-16, 619. SERA § 702-a(1) limits PERB's authority to effecting a *"voluntary"* settlement. *Golden State*'s narrow holding precludes Plaintiff's insinuation that the opinion bars states from "becom[ing] a party to the negotiations" full-stop. *See also id.* at 615-16 (emphasis added) (reasoning City restricted only from "[e]nter[ing] into the substantive aspects of the bargaining process *to an extent Congress has not countenanced*"). Congress certainly contemplated collective bargaining *would* largely be regulated. *See H. K. Porter Co. v. NLRB*, 397 U.S. 99, 102 (1970) (recognizing NLRB's power "to require employers and employees to negotiate", while limiting NLRB's power to compel parties to agree to specific contract terms). That is why only *compulsion* to *reach a collective bargaining agreement* implicates *Golden State*. Plaintiff does not show that any application of SERA would effect that compulsion.

Plaintiff's suggestion that certain provisions of SERA "favor" unionization and lack symmetrical restraints on Unions—even if true—does not support *Machinists* preemption. Plaintiff here merely points to a *lack* of regulation of unions, a *lack* of a right to refrain, and *less extensive* certification procedures under SERA than the NLRA. *Machinists* preemption requires *regulation* of a matter Congress intended to be left unregulated. *Machinists*, 427 U.S. at 139-41. Even with regulation, "[t]he question is not whether the [state]'s action favors one side or the other[.]" *Golden State Transit Corp.,* 475 U.S. at 619. The mere fact that a state scheme may tilt in favor of unionization does not warrant finding preemption. *See Rest. L. Ctr. v. City of New York*, 90 F.4th 101, 116 (2d Cir. 2024) ("[T]he mere fact that a labor protection 'gives employees something for which they otherwise might have to bargain' and concomitantly requires

20

employers to give up something else in the bargain does not trigger *Machinists* preemption."); *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958, 964 (9th Cir. 2016) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987)) (fact that state law alters "rights" that "form a backdrop for [collective bargaining] negotiations" does not trigger *Machinists*).

SERA merely provides this backdrop for collective bargaining negotiations. For example, collective bargaining occurs *after* a bargaining representative is certified and both parties actually engage in good faith bargaining. Amazon's comparison of the NLRA's and SERA's processes to certify bargaining representatives therefore points only to the administrative sequence that "sets the stage for [collective] bargaining," *Am. Hotel & Lodging Ass'n*, 834 F.3d at 964, not to any "regulat[ion] [of] the process of collective bargaining". *Rest. L. Ctr.*, 90 F.4th at 106. The only provision Amazon claims permits SERA to regulate that process is § 702-a(1). But as explained above, § 702-a(1) does not permit governmental involvement in the "substantive aspects of the bargaining process to an extent Congress has not countenanced." *Golden State Transit Corp.,* 475 U.S. at 615-16.

Plaintiff's Section 8(c) argument targets a single provision within SERA—yet purports to support a facial challenge to the Amendment. As explained, not even a challenge to claims under SERA § 704(10) is ripe. Plus, this provision encompasses claims involving no employer speech—such as unlawful terminations. Furthermore, while Section 8(c) preemption and First Amendment analyses are not identical, *Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 73 (2008), the substantive scope of Section 8(c) does not exceed the First Amendment's protections, *see, e.g.*, *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969). If SERA § 704(10) affronted Section 8(c), it would have failed First Amendment challenge long ago. And to be clear, Section 8(c) leaves *coercive* employer speech unshielded from regulation. *E.g. NLRB v. Gissel Packing*

*Co.*, 395 U.S. 575, 617-18 (1969) (NLRA prohibits employer statements "impl[ying]" a "threat of reprisal or force or promise of benefit"); *Siren Retail Corp*, 373 NLRB No. 135 (Nov. 8, 2024) (employer statement[s] regarding unionization's impact on employer-employee discussions judged "on a case-by-case basis"); *Amazon.com Servs. LLC*, 373 NLRB No. 136 (Nov. 13, 2024) (captive-audience rulings unlawful because "[t]he plain meaning of Section 8(c)'s statutory text is that employers and unions may *noncoercively* express their views concerning unionization[.]").

Brown, cited Mot. at 14, involved a state statute that specifically targeted employer speech that is considered non-coercive under Section 8(c)—such as routine statements that an employer does not deem unionization advisable. *See* 554 U.S. at 63, 69 (statute targeted "partisan employer speech" and articulated "intent" to limit employer efforts to "influence[] employees" to "oppose unionization"). SERA § 704(10) does no such thing, and instead simply articulates the same proscription the NLRA does. 29 U.S.C. § 158(1) (barring employers from "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of the[ir] rights" under NLRA § 7).

<u>D.</u>    The Amendment is not unconstitutionally vague.

The Amendment is not unconstitutionally vague. Amazon's second argument on this front, Mot. at 19, merely repackages its unpersuasive *Machinists* challenge. Amazon's first argument alleges the NLRB rarely intervenes in federal court. Mot. at 18. Even if true, that does not evince vagueness; a plaintiff's inability to determine the probability that part of a statute will be enforced against it has never supported a vagueness challenge. The Amendment is clear as to the condition under which PERB cedes its jurisdiction: once the NLRB gets a court order saying so. Furthermore, Amazon ignores that not only the Amendment, but also the *Nasch-Finch*

doctrine, provide bases for the NLRB securing district court orders to oust states of jurisdiction. *NLRB v. California Horse Racing Bd.*, 940 F.2d 536, 539 (9th Cir. 1991).

Amazon's claim that employers lack knowledge *ex ante* whether New York or federal law will govern their conduct would be a problem only were it impossible to comply with both laws. Such impossibility—which Amazon nowhere demonstrates—could offer a basis for finding the conflicting provisions preempted. *E.g. Glacier Nw.,* 598 U.S. at 785. But the mere exposure to two sources of law—which is common in our federal system and in employment law generally—is no vagueness problem. Furthermore, employers are always-already subject to the NLRA's retroactive application to their conduct. *Cemex Constr. Materials Pac., LLC*, 372 NLRB No. 130, 2023 WL 5506930 at *29 & n. 156 (Aug. 25, 2023) (noting Supreme Court approval of "The Board's usual practice . . . to apply new policies and standards retroactively to all pending cases in whatever stage, unless retroactive application would work a 'manifest injustice.'").

Amazon wrongly claims the Amendment "vests PERB with unfettered discretion to intervene in collective bargaining". Mot. at 19. Amazon ignores the very language it relies on: section 702(a)(1) authorizes the state's labor board, in the event of an existing, imminent or threatened labor dispute, to take steps "to effect *a voluntary, amicable and expeditious adjustment and settlement* of the differences and issues between employer and employees . . ." On its face, the law does not empower the state to *compel* anything and any settlement is to be "voluntary, amicable and expeditious."

## II.    Plaintiff is not threatened with irreparable harm.

Amazon fails to establish the irreparable harm required for a preliminary injunction. *Winter v. NRDC*, 555 U.S. 7 (2008). Amazon points to the recent Fifth Circuit decision *Space*

*Expl. Tech. Corp. v. NLRB* for the proposition that being subjected to an allegedly unconstitutional proceeding is alone dispositive in finding irreparable harm. 2025 WL 2396748, at *13 (5th Cir. Aug. 19, 2025). But other Courts have rejected this reasoning. *Manis v. U.S. Dep't of Agric.*, 2025 WL 2389422, at *4 (4th Cir. Aug. 21, 2025); *see also Chan v. United States Dep't of Transportation,* 2024 WL 5199945, at *46 (S.D.N.Y. Dec. 23, 2024) (alleged Supremacy Clause violation is not enough to prove irreparable harm).

PERB has stayed processing of Sylla's charge. Mirer Decl. ¶¶15-16. Thus Amazon is not currently being subjected to a proceeding anywhere to defend Sylla's unlawful discharge.[6] Further, if and when PERB actually processes the charge, its outcome, which would be the injury to Amazon, is completely speculative at this point as PERB may not find the charge meritorious. Finally, even if PERB were to make a meritorious determination, Amazon may appeal and avail itself of the judicial review process.

### III.    The balance of hardships and public interest weigh against an injunction.

There are two alternatives to the Union's filing Sylla's Charge with PERB. One—at least were the NLRB currently functioning— would be for the Union to file that charge with that agency. Amazon has elsewhere claimed that alternative would irreparably harm it. *Supra* p. 18. The other alternative—which Amazon seeks through the instant motion, paired with its constitutional attacks on the NLRB—is for the Union to have no forum to vindicate its members' rights.  Amazon may view accountability as a hardship. But Amazon's escape therefrom does not serve the public interest.

---

[6] Furthermore, the NLRB charge allegations relate to Sylla's unlawful discipline, not to his discharge, so there is no risk of inconsistent judgments or remedies.

Conversely, an injunction prevents the Union from fulfilling its core function: protecting its members' rights to organize and collectively bargain. The Union's history with Amazon and the NLRB proves so. To recap: JFK 8 employees petitioned for a Union election in December 2021. The Union won that election in April 2022. Amazon to this day has abused the processes after certification of the Union required good faith bargaining and has outright refused to bargain with its workers' chosen representative over terms and conditions of employment.

Preserving a functional forum for the Union to vindicate its members' rights advances the public interest, too, by enabling realization of fundamental public policies undergirding both the NLRA and SERA. *Brown*, 518 U.S. at 237 (discussing federal labor policy of promoting meaningful collective bargaining; 29 U.S.C. §151 (same); NY Lab. Law § 700 (same state policy).

Amazon's contrary arguments as to balance of hardships and the public interest have been dispatched above. And Amazon begs the question whether the NLRB remains a "fully functioning federal forum" that can "achieve the same goal" as the Amendment. Mot. at 20. The Union has explained it is not, and cannot, as New York can, protect employees' rights so to facilitate meaningful collective bargaining.

## **CONCLUSION**

The Court should deny Plaintiff's motion for preliminary injunction.

25

DATED: October 10, 2025

JULIEN MIRER & ASSOCIATES, PLLC


By /s/ Jeanne Mirer
   Jeanne Mirer
   jmirer@julienmirer.com


BUSH GOTTLIEB, ALC
   Julie Gutman Dickinson *(Pro hac vice pending)*
   jgd@bushgottlieb.com
   Jennifer A. Abruzzo *(Pro hac vice forthcoming)*
   jabruzzo@bushgottlieb.com


Attorneys for Amazon Labor Union No. 1,
   International Brotherhood of Teamsters

26

## **CERTIFICATE OF COMPLIANCE WITH WORD LIMIT (L.R. 7.1)**

I, the undersigned attorney for Proposed Intervenor Amazon Labor Union No. 1, International Brotherhood of Teamsters, hereby certify that this brief complies with the word count limits of Local Civil Rule 7.1. It contains 7,774 words, excluding material that Local Civil Rule 7.1 excludes from the word count.

DATED: October 10, 2025                        JULIEN MIRER & ASSOCIATES, PLLC


By /s/ Jeanne Mirer _____

    JULIEN MIRER & ASSOCIATES, PLLC
    Jeanne Mirer
    jmirer@julienmirer.com