

**Office of the New York State
Attorney General**

**Letitia James
Attorney General**

November 18, 2025

*Via CM/ECF*

Hon. Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Amazon.com Services LLC v. New York State Public Employment Relations Board, et al.*
Case No. 1:25-cv-05311-EK-MMH
<u>Defendants' Supplemental Briefing in Opposition to Amazon's Motion for a Preliminary Injunction</u>

Dear Judge Komitee:

At the Court's invitation, Defendants write to provide supplemental briefing on two issues: (1) the relationship between the declination of jurisdiction in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 238 (1959) and the declination of jurisdiction by "rule of decision" under 29 U.S.C. § 164(c); and (2) the propriety of Amazon's request for a preliminary declaratory judgment. The answer to the first question undermines Amazon's facial challenge to the 2025 Amendment to the State Employment Relations Act ("SERA"), while the answer to the second question precludes Amazon's claims of irreparable harm and establishes that the balance of the equities disfavors emergency relief.

### 1. Declination of Jurisdiction in *Garmon* and Under Section 14(c)

The declinations of jurisdiction in *Garmon* and under Section 14(c) of the National Labor Relations Act ("NLRA") differ in a way that entails an exception to *Garmon* for the small, local industries implicated by both. Namely, declination under Section 14(c), which was enacted after *Garmon* and applies when the effect of a labor dispute is deemed insubstantial (i.e., to small local industries), is distinct in that it automatically entails a cession of jurisdiction to the states. Congress included this feature in Section 14(c) to avoid the no-man's land that *Garmon* and other Supreme Court precedent had permitted as to labor regulation of local industry. This past year, the NLRB has effectively declined jurisdiction for purposes of Section 14(c) over the small, local industries that subsection (c)(1) concerns, automatically ceding jurisdiction over those industries to the states under (c)(2). This creates a local industry exception to *Garmon*. And while Amazon is not a small, local business, this local industry exception undermines Amazon's

Hon. Eric R. Komitee
November 18, 2025
Page 2

facial challenge to the 2025 Amendment, because to prevail on a facial challenge, Amazon must demonstrate that the 2025 Amendment is preempted in all possible applications.[1]

Both the form of declination of jurisdiction at issue in *Garmon* and the one created by Section 14(c) involve small local industries that have a minimal effect on interstate commerce. *See Garmon*, 359 U.S. at 238 ("The Regional Director declined jurisdiction, presumably because the amount of interstate commerce involved did not meet the Board's monetary standards"); 29 U.S.C. § 164(c)(1) (authorizing the NLRB to cede jurisdiction when "the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction").

But the declination of jurisdiction under Section 14(c), unlike the declination of jurisdiction prior to Section 14(c)'s enactment,[2] entails a simultaneous cession of jurisdiction to the states. *See id.* at (c)(2) ("Nothing in this Act shall be deemed to prevent or bar any agency or the courts of any State or Territory . . . from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."). Congress tied declination to cession in this way to "eliminate[] a jurisdictional 'no-man's land' that had previously existed because states were prohibited from acting in certain cases where the Board had elected to decline jurisdiction, a state of affairs that Congress disfavored." *Airway Cleaners, LLC*, 363 N.L.R.B. 1575, 1576 n.5 (2016) (citing the Congressional record).

This no-man's land problem was permitted by the Supreme Court in multiple cases involving local industry leading up to the passage of Section 14(c) in 1959. *Garmon* had held that a state could not regulate even though the Regional Director had declined to pursue a representation case on the basis that "the amount of interstate commerce involved did not meet the Board's monetary standards in taking jurisdiction." 359 U.S. at 238. And the Supreme Court had reached a similar conclusion in *Guss v. Utah Labor Relations Board*, 353 U.S. 1 (1957) (the case that coined the term "no-man's land," *id.* at 10), in which a Regional Director declined to issue a complaint in a ULP matter because the business at issue was "predominantly local in character." *Id.* at 5.

The concept of declination of jurisdiction "by rule of decision," 29 U.S.C. § 164(c)(1), encompasses the abdication of jurisdiction by the NLRB this year that has resulted in the no-

---

[1] Defendants also argue that *Garmon* does not control as to Amazon and other large businesses (and the private sector generally), for the reasons explained in Defendants' Opposition to Amazon's Motion. Defendants' argument against *Garmon* preemption does not depend on the operation of Section 14(c). Nonetheless, based on the Court's observations about Section 14(c) at the November 14, 2025 Conference, Defendants believe that Section 14(c) provides additional reasons that *Garmon* does not apply to local industry specifically.

[2] *Garmon* was issued on April 20, 1959. Section 14(c) was codified on September 14 through the Labor-Management Reporting and Disclosure Act of 1959. *See* Public Law 86-257, https://www.congress.gov/86/statute/STATUTE-73/STATUTE-73-Pg519.pdf.

Hon. Eric R. Komitee
November 18, 2025
Page 3

man's land of labor law enforcement that Defendants describe in their Opposition.

"Rule of decision," while not defined in the NLRA, appears to be a broad concept that includes varied agency activity, including action as well as inaction; formal adjudication as well as other types of formal and informal decisions; and decisions by the Board as well as other actors, including Regional Directors, the General Counsel, or Administrative Law Judges. The phrase "rule of decision" is distinct from more specific terms in the NLRA and NLRA jurisprudence that refer to Board adjudications, such as "decision of the Board," § 155, "order of the Board," § 160(c), the term "Decision and Order" that appears on the captions of Board decisions, or the term "adjudication" in case law, *see, e.g.*, *Garmon*, 359 U.S. at 245-46 (contrasting "Board adjudication" with other types of agency actions); *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) (holding that "the choice between rulemaking and adjudication lies in the first instance within the Board's discretion"). And while Section 14(c) uses the term "Board," this appears to be a more general reference to the NLRB as a whole, a usage that appears elsewhere in the Act. *See, e.g.*, 29 U.S.C. § 153(d) (creating a "General Counsel of the Board").

This broad reading of "rule of decision" is consistent with the problem Section 14(c) was meant to address – the Supreme Court prohibiting state regulation of local industry when the NLRB had declined jurisdiction in various ways, other than a formal Board decision, that amounted to failing to determine rights and liabilities of parties. *See Garmon*, 359 U.S. at 245-46 (holding that preemption applies even absent formal Board "adjudication," in the event of "the failure of the Board to define the legal significance under the Act of a particular activity," by "declining to assert jurisdiction, or by refusal of the General Counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance").

Due to the current state of the NLRB, *Garmon* should not control as to the local industries Section 14(c) concerns. The NLRB's failure to decide cases and enforce the law due to the absence of a quorum amounts to a declination of jurisdiction under Section 14(c)(1). An additional aspect of this declination is the NLRB's acquiescence in the loss of its independence in the face of President Trump's violation of removal protections,[3] which contributes to the permanent impairment of continuity in the Board's operations, since a quorum can be eliminated more easily without removal protections.[4] Amazon's contrary argument that the Court should

---

[3] *See* Declaration of Julio Sharp-Wasserman in Opposition to Amazon's Motion for Preliminary Injunction ("Sharp-Wasserman Decl."), Exs. E-10, G (NLRB letters filed in *Amazon v. NLRB, et al.*, No. 24-50761 (5th Cir.) and *Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.*, No. 24-10855 (5th Cir.) articulating the position that Members' removal protections are unconstitutional).

[4] This illustrates the dual importance of removal protections, as providing not only impartiality in an adjudicative agency, but also *continuity*, including the preservation of a quorum. *See Humphrey's Executor v. United States*, 295 U.S. 602, 625 (1935) (noting that the legislative history behind the creation of the Federal Trade Commission supports the importance of a board's "permanence" as a product of its independence).

Hon. Eric R. Komitee
November 18, 2025
Page 4

interpret Section 14(c) to preclude state regulation under these circumstances, *see* Reply at 3, would create the very no-man's land Congress sought to avoid, which indicates that Amazon's interpretation is incorrect.

Importantly for purposes of Amazon's request for emergency relief, the NLRB's declination of jurisdiction is a present issue – both in that the NLRB currently lacks a quorum and in that the NLRB currently lacks enforceable removal protections. President Trump maintains and acts upon the official position that the NLRA's removal protections are invalid and will continue to do so unless and until the Supreme Court reaffirms *Humphrey's Executor v. United States*, 295 U. S. 602 (1935) in *Trump v. Wilcox* litigation or *Trump v. Slaughter*. Given the President's policy stance, we have no guarantee that the NLRB will maintain a quorum even if two new Board Members are confirmed. Based on these immediate problems, emergency relief is unwarranted right now.

But the loss of continuity in the Board's operations is also likely a permanent issue. The Court indicated that it cannot assume that the Supreme Court will overturn *Humphrey's Executor* in *Trump v. Wilcox* or *Trump v. Slaughter*, even if the Supreme Court has indicated that it is likely to do so. But by the same token, this Court cannot assume that the Supreme Court will reaffirm *Humphrey's Executor*, compelling the President to change his policy as to removal protections. The proper assumption is that the NLRB will continue to lack enforceable removal protections, as it does right now. This means that in the future, the NLRB can lose its quorum at any time, instantly, without process or justification, as it has this year.

In short, Amazon cannot use Section 14(c) to imply preemption as to local industry, given the NLRB's declination of jurisdiction over local industry – through the loss of a quorum and the loss of continuity that comes with removal protections, as well as through the NLRB's acquiescence in this disintegration of its Congressionally designed structure. To the contrary, Section 14(c) requires a local industry exception to *Garmon* under present circumstances.

Consequently, Amazon's facial challenge to the 2025 Amendment must fail, because Amazon has not demonstrated that the statute is preempted as to the local industries over which the NLRB has declined and ceded jurisdiction under Section 14(c). To show a likelihood of success as to its facial challenge to the 2025 Amendment, Amazon "must demonstrate that there is *no possible set of conditions* under which the challenged state regime could be constitutional." *National Shooting Sports Foundation, Inc. v. James*, 144 F.4th 98, 112 (2d Cir. 2025) (emphasis added). Because the 2025 Amendment is not preempted as to the local industries Section 14(c) concerns (one "possible set of conditions"), Amazon's facial challenge to the 2025 Amendment as a whole is invalid.

### 2. Amazon's Request for a Preliminary Declaratory Judgment

Amazon's request for preliminary declaratory relief is not cognizable. There is thus no irreparable harm left for the Court to address, since the Northern District has already effectively granted Amazon's requested injunctive relief – namely, enjoining the enforcement of the 2025 Amendment. Moreover, given the lack of urgency as to injunctive relief, the balance of the

Hon. Eric R. Komitee
November 18, 2025
Page 5

equities disfavors emergency relief during the pendency of that Northern District stay.

Amazon's request for declaratory relief "flies in the face of the weight of authority in this Circuit, which provides that such relief is not available under Rule 65." *Crocs, Inc. v. Jinjiang Hobibear Shoes & Clothing Co.*, No. 25 Civ. 180, 2025 WL 1519114, at *1 (S.D.N.Y. May 28, 2025) (collecting cases). The Court cannot issue an order on this Motion declaring that Amazon is not liable for SERA violations, because the Court is conducting a more limited and tentative inquiry – whether Amazon is likely to succeed in showing it is not liable.

Absent declaratory relief, Amazon cannot establish irreparable harm, because its requested injunctive relief has already effectively been granted in the near term by the Northern District. *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir.2007) (noting that obtaining a preliminary injunction requires showing "an injury that is neither remote nor speculative, but actual and imminent"). On September 26, 2025, the Court in *National Labor Relations Board v. State of New York et al.*, No. 25 Civ. 01283 (N.D.N.Y.) granted an order requiring PERB to "hold in abeyance any matters filed by private sector employees, employers, or labor unions that may implicate the National Labor Relations Board's (NLRB) jurisdiction until a decision is rendered by this Court on the NLRB's preliminary injunction motion." Sharp-Wasserman Decl., Ex. C ("Northern District Order"). Briefing closes on the NLRB's Motion on December 11, 2025, suggesting that a decision will not be issued until next year. In other words, the Northern District has effectively enjoined the enforcement of SERA under the 2025 Amendment through at least the end of the year.

At the November 14, 2025 Conference, Amazon argued that despite the Northern District Order, it still faces irreparable harm due to "accumulating liability" during a stay of enforcement; but this alleged irreparable harm is untethered from its request for injunctive relief. Amazon seeks to enjoin only *enforcement*. *See* ECF No 14 (seeking an order "[e]njoining Defendants … from: (a) exercising or asserting authority over Amazon in PERB Case No. UP-40005; and (b) enforcing SERA against employers or employees covered by the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169, including Amazon").[5] The alleged harm from theoretical SERA liability goes to Amazon's request for declaratory relief, which is not cognizable.[6] Amazon must obtain a final judgment through an ordinary injunction to preclude this theoretical liability.

Given that declaratory relief is not available, the balance of the equities also favors denying Amazon's unnecessary request for a preliminary injunction, for two reasons. First, the

---

[5] In the interim, while enforcement is enjoined, liability is conceptually impossible, because PERB has exclusive original jurisdiction over SERA claims (in the same way that the NLRB has exclusive original jurisdiction over NLRA claims).

[6] Amazon's argument at the November 14 Conference that it would be irreparably harmed by uncertainty about whether it is subject to both federal and state law suffers from the same weakness: this alleged harm could be addressed only by an impermissible preliminary declaratory judgment stating that Amazon is not liable for SERA violations, not by a preliminary injunction.

Hon. Eric R. Komitee
November 18, 2025
Page 6

Court should have the benefit of the Northern District's decision on the NLRB's motion, which, while not preclusive, will aid this Court's decision, since it will address the same *Garmon* claim with the benefit of a fuller evidentiary record.[7] *See Shanghai Zhenglang Tech. Co. v. Mengku Tech. Co.*, No. 20 Civ. 5209, 2020 WL 7481297, at *4 (E.D.N.Y. Dec. 18, 2020) (holding the balance of the equities disfavored a preliminary injunction when more discovery was needed regarding the merits). Second, the Supreme Court appears poised to reconsider the constitutionality of removal protections around the same time that the Northern District decides the NLRB's Motion. On September 22, 2025, the Supreme Court directed the parties in *Slaughter* to brief "whether [*Humprey's Executor*] should be overruled," and directed the clerk to "establish a briefing schedule that will allow the case to be argued in the December 2025 argument session." *Trump v. Slaughter*, No. 25-332, 2025 WL 2692050 (U.S. Sept. 22, 2025). The Supreme Court's upcoming decision in *Slaughter* bears on the merits here, because Defendants base their argument that *Garmon* no longer controls partly on the invalidation of NLRB Members' removal protections.

For these reasons, Defendants respectfully request that the Court deny Amazon's Motion as to both injunctive and declaratory relief.

Respectfully,

/s/ Julio Sharp-Wasserman
Julio Sharp-Wasserman
Assistant Attorney General
Labor Bureau
Office of the Attorney General of the
State of New York
28 Liberty Street, 15th Fl.
New York, NY 10005
212-416-8685
Julio.Sharp-Wasserman@ag.ny.gov

---

[7] Defendants will submit evidence on December 1 with their Opposition to the NLRB's Motion for a preliminary injunction.