UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMAZON.COM SERVICES LLC,<br><br>Plaintiff,<br>-against-<br><br>NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD, et al.,<br><br>Defendants. | Case No. 1:25-cv-5311-EK-MMH |

**PLAINTIFF'S REPLY**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**


Amber M. Rogers*
HUNTON ANDREWS KURTH LLP
1455 Ross Avenue, Suite 3700
Dallas, Texas 75202
Tel: (214) 979-3000
Fax: (214) 880-0011
arogers@hunton.com

Patrick L. Robson
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
Tel: (212) 309-1000
Fax: (212) 309-1100
probson@hunton.com

Kurt G. Larkin*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Tel: (804) 788-8200
Fax: (804) 788-8218
klarkin@hunton.com

*Attorneys for Plaintiff*

*Admitted *pro hac vice*

## TABLE OF CONTENTS

Table of Authorities ........ ii

Introduction ........ 1

Statement Regarding Undisputed Material Facts ........ 1

Argument ........ 2

I. *Garmon* controls, and the SERA Amendment violates it. ........ 2

- A. The undisputed overlap between the NLRA and the SERA Amendment triggers *Garmon*, and no existing exception applies. ........ 2
- B. This Court cannot create a new exception to *Garmon* based on changed circumstances. ........ 6
- C. There is no reason to believe the Supreme Court would adopt the exception to *Garmon* that the State and the Union urge. ........ 7

II. The SERA Amendment has no valid applications. ........ 11

- A. The SERA Amendment lacks a plainly legitimate sweep. ........ 11
- B. No narrowing construction can save the statute. ........ 14

III. No other basis exists to deny summary judgment. ........ 15

- A. The case is neither moot nor duplicative. ........ 15
- B. Judicial estoppel and the Tenth Amendment do not apply. ........ 18

IV. Amazon is entitled to declaratory and permanent injunctive relief. ........ 20

Conclusion ........ 20

# TABLE OF AUTHORITIES

**Cases**

*Ayotte v. Planned Parenthood of N. New England*,
546 U.S. 320 (2006) .......... 14, 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 2

*Colo. River Water Cons. Dist. v. United States*,
424 U.S. 800 (1976) .......... 17

*Davega City Radio, Inc. v. State Lab. Rels. Bd.*,
281 N.Y. 13 (1939) .......... 12

*De Cherro v. Civil Serv. Emps. Ass'n*,
60 A.D.2d 743 (N.Y. App. Div. 1977) .......... 12

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .......... 20

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*,
598 U.S. 771 (2023) .......... 3

*Goethe House N.Y., German Cultural Ctr. v. NLRB*,
869 F.2d 75 (2d Cir. 1989) .......... 19

*Harris v. Bessent*,
160 F.4th 1235 (D.C. Cir. 2025) .......... 19

*Healthcare Ass'n of N.Y. State, Inc. v. Pataki*,
471 F.3d 87 (2d Cir. 2006) .......... 2

*Hernandez v. State of N.Y.*,
173 A.D.3d 105 (N.Y. App. Div. 2019) .......... 13

*Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*,
476 U.S. 380 (1986) .......... 3, 5

*Keathley v. Buddy Ayers Constr. Inc.*,
608 U.S. ____, No. 25-6, 2026 WL 1686028 (U.S., June 11, 2026) .......... 18

*Knox v. Serv. Emps. Int'l Union*,
567 U.S. 298 (2012) .......... 16

*Lallave v. Martinez*,
609 F. Supp. 3d 164 (E.D.N.Y. 2022) ........................................................ 16

*Linn v. United Plant Guard Workers*,
383 U.S. 53 (1966)........................................................................................ 4

*Margolin v. Nat'l Ass'n of Immigr. Judges*,
146 S. Ct. 1285, 1289 (2026) (per curiam) ....................................... 9, 10, 13

*Mhany Mgmt., Inc. v. Cnty. of Nassau*,
819 F.3d 581 (2d Cir. 2016) ........................................................................ 16

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)............................................................................... 11, 13

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
584 U.S. 453 (2018)...................................................................................... 19

*N.Y. State Lab. Rels. Bd. v. Holland Laundry, Inc.*,
294 N.Y. 480 (1945) ..................................................................................... 12

*Nat'l Ass'n of Immigr. Judges v. Owen*,
139 F.4th 293 (4th Cir. 2025) ........................................................................ 9

*New Hampshire v. Maine*,
532 U.S. 742 (2001)...................................................................................... 18

*NLRB v. California*, No. 2:25-cv-02979,
2025 WL 4677692 (E.D. Cal. Dec. 26, 2025) ..................................... 14, 15

*Perez v. Greiner*,
296 F.3d 123 (2d Cir. 2002) .......................................................................... 6

*R.S. by & through C.S. v. N.Y.C. Dep't of Educ.*, No. 21-cv-10596,
2023 WL 2368987 (S.D.N.Y. Mar. 6, 2023) ................................................. 17

*Roma v. Ruffo*,
92 N.Y.2d 489 (1998) ................................................................................... 12

*Sacerdote v. Cammack Larhette Advisors, LLC*,
939 F.3d 498 (2d Cir. 2019) ........................................................................ 16

*San Diego Bldg. Trades Council v. Garmon*,
359 U.S. 236 (1959)................................................ 1, 2, 3, 4, 5, 8, 9, 10, 14, 15, 19

*Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*,
436 U.S. 180 (1978)..................................................................... 3, 4, 5, 6, 8, 9

*Space Expl. Techs. Corp. v. NLRB*,
151 F.4th 761 (5th Cir. 2025) .................................................................................... 19

*United Constr. Workers v. Laburnum Constr. Corp.*,
347 U.S. 656 (1954)............................................................................................................ 4

*Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould, Inc.*,
475 U.S. 282 (1986)............................................................................................................ 13

*Zuckerman v. Bd. of Educ. of City Sch. Dist. of N.Y.*,
44 N.Y.2d 336 (1978) ........................................................................................................ 12

**Statutes and Rules**

2010 N.Y. Sess. Laws Ch. 56 (A. 9706-C) (McKinney) ............................................... 12

29 U.S.C. § 160(c) ........................................................................................................ 3, 10

29 U.S.C. § 164(c) ...................................................................................................... 3, 7, 11

29 U.S.C. § 218(a) ............................................................................................................ 10

42 U.S.C. § 1988(b) .......................................................................................................... 20

42 U.S.C. § 2000e-5(c) ...................................................................................................... 10

Fed. R. Civ. P. 54(d)(1)...................................................................................................... 20

N.Y. Civ. Serv. L. § 205 .................................................................................................... 12

N.Y. Lab. L. § 704 ............................................................................................................. 12

N.Y. Lab. Law § 715(1)(b) ................................................................................................ 15

Pub. L. 86-257, Title VII § 701(a), 73 Stat. 541 (1959) ..................................................... 7

U.S. Const., art. I, §§ 1, 7.................................................................................................... 10

## INTRODUCTION

This Court has already answered the question Amazon's motion presents: may New York authorize its Public Employment Relations Board (PERB) to regulate conduct subject to the National Labor Relations Act? The answer is "no." What New York has attempted is squarely foreclosed by *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), and a district court may not "invent an exception to Supreme Court doctrine." Mem. & Order, ECF No. 49 ("PI Order") at 8–9.[1]

The State and the Union bring nothing new in their oppositions to Amazon's motion. No party disputes this Court's prior finding that the SERA Amendment results in New York law covering the exact activity Sections 7 and 8 of the NLRA also cover, that Amazon is an NLRA-covered employer, or that PERB has invoked the SERA Amendment in response to claims squarely within the NLRA's scope. Instead, the State asks this Court to reconsider conclusions it has already reached; and the Union argues that *Garmon*'s premises have been "negated" by changed circumstances. Both positions are wrong, and neither is one a district court may adopt in any event. *Garmon* is binding Supreme Court precedent, and this Court correctly held that it applies here. What remains is to make that holding permanent.

Amazon is entitled to summary judgment and the entry of a permanent injunction.

## STATEMENT REGARDING UNDISPUTED MATERIAL FACTS

The material facts are not disputed. The State and the Union admit facts dispositive of Amazon's *Garmon* preemption claim: SERA, as amended, covers activity subject to Sections 7 and 8 of the NLRA; Amazon is an NLRA-covered employer; the Union filed a PERB charge invoking the SERA Amendment as the sole basis for PERB's jurisdiction; and similar allegations

[1] All internal citations, quotations, and alterations are omitted unless otherwise noted.

were already before, and also subsequently filed with, the NLRB. *See* Defs.' 56.1 Resp. (ECF No. 70-1) ¶¶ 2–11; Intervenor's 56.1 Resp. (ECF No. 71-1) ¶¶ 2–11.[2] Their counter-statements about the NLRB's quorum, alleged loss of independence, and processing delays are not material to the *Garmon* inquiry and need not be addressed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

### I. *Garmon* controls, and the SERA Amendment violates it.

The State and the Union identify no basis to depart from this Court's prior analysis. First, the undisputed statutory overlap between the NLRA and New York law created by the SERA Amendment triggers *Garmon*, and no existing exception to *Garmon* applies. Second, this Court lacks the power to make a new exception as the State and the Union urge. And finally, there is in all events no reason to believe the Supreme Court would create that exception.

#### A. The undisputed overlap between the NLRA and the SERA Amendment triggers *Garmon*, and no existing exception applies.

The primary *Garmon* inquiry is simple: does SERA, as amended, regulate conduct that is actually or arguably subject to Sections 7 or 8 of the NLRA? *Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 96 (2d Cir. 2006). If so, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *Garmon*, 359 U.S. at 245.

The answer to that inquiry is "yes." As this Court found, "no party disputes that SERA, as amended, covers activity that is also subject to Sections 7 and 8 of the NLRA." PI Order at 8. Both

[2] As noted in Amazon's complaint and preliminary-injunction motion, the issue underlying the Union's PERB charge—Amazon's response to the productivity of former Amazon employee Brima Sylla—was *already* before the NLRB in NLRB Case No. 29-CA-361669. *See* Compl. ¶¶ 48–49; Pl.'s Br. in Supp. of TRO and Prelim Inj., ECF No 14-1, at 5. The preexisting NLRB charge related to Sylla's discipline while the PERB charge responded to Sylla's termination. After the Union withdrew the termination charge from PERB, it refiled it with the NLRB. In all events, there is no dispute that Sylla's complaints both before and after New York's enactment of the SERA Amendment fall squarely within the NLRB's purview.

the State and the Union acknowledge that the SERA Amendment "empower[s] PERB, which is structured similarly to the NLRB and enforces parallel protections, to administer labor law concurrently."[3] And neither statutory escape hatch for state regulation applies, because the NLRB has neither ceded jurisdiction to a state under § 10(c) of the NLRA nor formally declined to act by rule of decision or published rule under § 14(c). *See* PI Order at 9–10 n.7.

With the statutory overlap established, *Garmon* preemption follows unless a recognized, judicially created exception applies. The Supreme Court has recognized that a court cannot conclude that Congress "deprived the States of the power to act" when: (1) a party "lacks a 'reasonable opportunity' to secure a Board decision on the legal status of the conduct at issue" (the "*Sears* exception"); (2) "the conduct in question is a merely peripheral concern of the NLRA"; or (3) "the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction." *See Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 777 n.1 (2023) (quoting *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 201 (1978)). Importantly, these three exceptions arise in the context of "an *arguable* case for pre-emption"—that is, where the NLRA's reach over the specific conduct at issue is uncertain. *Id.* at 777 (quoting *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 395 (1986)) (emphasis added). And furthermore, they involve circumstances where the state is exercising a qualitatively different function from the Board—*e.g.*, adjudicating common-law claims such as trespass or defamation or vindicating core

[3] Defs.' Mem. of Law in Opp. to Pl.'s Mot. for Summ. J., ECF No. 70 ("PERB Opp.") at 3; *see* Mem. of Law of Intervenor Amazon Lab. Union No. 1, Int'l Bhd. of Teamsters in Opp. to Pl.'s Mot. for Summ. J., ECF No. 71 ("Union Opp.") at 7 (describing the SERA Amendment as allowing PERB "to apply New York's [SERA] to employees covered by the NLRA").

police-power interests. That is not the situation here, where the overlap between the NLRA and the SERA is complete, actual, and undisputed.

The State and the Union wisely do not quarrel with whether the second or third exceptions apply. The SERA Amendment does not regulate conduct that is merely a "peripheral concern" of the NLRA; it regulates the *exact same* conduct covered by the NLRA. And the SERA Amendment does not vindicate interests "deeply rooted in local feeling" left unaddressed by the NLRA, such as "violence and imminent threats to the public order." *Garmon*, 359 U.S. at 244, 247–48.[4]

That leaves *Sears*, but it plainly does not apply either. The "reasonable opportunity" exception applies only when a party has no legal mechanism to bring its dispute before the Board. In *Sears*, the property owner wanted to stop trespassory picketing on its land. But it could not file an unfair labor practice charge for "trespass" and could not seek an advisory opinion from the Board on whether picketing on private property was protected by section 7. *Sears*, 436 U.S. at 198. It had no procedural pathway to present the dispute to the Board. *Id.* at 201–202. The Supreme Court permitted the employer's state-court trespass action because, given the architecture of the NLRA, there was no route from the employer's grievance to a Board determination. *Id.* at 202. And importantly, the trespass action concerned the location of picketing, not whether the picketing could take place at all. Thus, the state court was not displacing the Board; it was filling a gap the NLRA's own procedural structure created.

This case is the opposite of *Sears*. The SERA Amendment does not target disputes that cannot be brought before the Board. It asserts blanket primary jurisdiction over the entire domain

[4] The "deeply rooted in local feeling" exception focuses not on matters of local concern—as that would swallow *Garmon*—but instead on conduct so antithetical to the state's core police power that Congress could not have meant to immunize it. *See, e.g.*, *Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966) (malicious defamation); *United Constr. Workers v. Laburnum Constr. Corp.*, 347 U.S. 656 (1954) (threats of violence).

of conduct the NLRA already covers. The Sylla PERB charge proves the point. The Union's dispute with Amazon was not merely presentable to the Board; it was *actually* presented—twice. *Supra* note 2; Pl.'s SUMF, ECF 61-2 at ¶¶6–12. No gap exists for *Sears* to fill here.

That is the end of the analysis. As the *Sears* Court said, *Garmon*'s "primary-jurisdiction rationale *unquestionably* requires that when the same controversy *may* be presented to the state court or the NLRB, it *must* be presented to the Board." *Sears*, 436 U.S. at 202 (emphasis added); *see also Int'l Longshoremen's Ass'n*, 476 U.S at 406 n.3 (1986) (Blackmun, J., concurring) (summarizing *Sears* as addressing "conduct that is arguably protected where the injured party has *no means* of bringing the dispute before the Board") (emphasis added). Every controversy newly captured by the reach of the SERA Amendment can be presented to the Board. *Garmon* therefore requires that it *must* be.

The Union attempts to stretch *Sears* beyond its holding by arguing that the mere ability to file a charge does not constitute a "reasonable opportunity" if the Board, due to the lack of a quorum, cannot issue a final, enforceable order. Union Opp. at 18–19. But that argument conflates a structural gap in the NLRA's procedural architecture with a temporary limitation on the Board's adjudicative capacity. In *Sears*, the employer had no procedural pathway *at all*; the NLRA simply did not provide a mechanism by which a property owner could present a trespassory-picketing dispute to the Board. *Sears*, 436 U.S. at 201–202. That is a gap in the design of the statute.

A quorum loss is a feature of the statute, not a gap in its design. As this Court has already recognized, "when Congress mandated a quorum, it obviously envisioned the possibility that the NLRB might lack one from time to time, thus inhibiting action." PI Order at 9. And likewise, when the Supreme Court decided *Garmon*, it did so knowing full well that the NLRA requires a quorum and made no exception based on that. The statutory architecture of the NLRB remains intact. A

charge can be filed; the Regional Director can investigate and issue a complaint; an administrative law judge can conduct a hearing and issue a decision. What is temporarily unavailable is the Board's capacity to resolve exceptions to ALJ decisions and issue final orders. But that is an intentional part of the system Congress created, not a gap in the system itself.[5]

### B. This Court cannot create a new exception to *Garmon* based on changed circumstances.

The State and the Union's main answer to *Garmon* is to ask this Court again to do what it already held it cannot do: "invent an exception to Supreme Court doctrine." PI Order at 8–9. As this Court said, it is bound by *Garmon* "[u]ntil and unless the Supreme Court itself overrules or limits" it. *Perez v. Greiner*, 296 F.3d 123, 125 n.4 (2d Cir. 2002). The State and the Union simply won't take no for an answer.

The State, for example, candidly asks this Court to "reconsider its conclusions in its Preliminary Injunction Order." PERB Opp. at 3. In support, however, it offers no response to *Perez* or basic principles of vertical *stare decisis*. Instead, the State submits additional "facts" about current circumstances at the Board and then asks this Court to conduct its own first-principles analysis of what Congress "would have intended" in the current circumstances. PERB Opp. at 11–12. Respectfully, that is not this Court's question to answer. *See* PI Order at 9 n.6. Declarations about Board delays and Schedule C appointees might have a place in a congressional hearing

[5] The Union's reliance on Justice Powell's *Sears* concurrence does not help them either. Justice Powell warned against a "no-man's land" in which "nothing is likely to happen in a timely fashion" after a charge is filed. *Sears*, 436 U.S. at 213 (Powell, J., concurring). But Justice Powell was addressing whether state *court* jurisdiction should be preempted during the pendency of a single NLRB charge—not whether a state *regulatory agency* should assume blanket jurisdiction over the NLRA's entire domain. And the concern he identified—a volatile labor situation with no forum for "orderly interim relief," *id.*—bears no resemblance to New York's assertion of plenary state regulatory authority.

supporting new legislation. But the only question that confronts this Court is whether the SERA Amendment falls within the four corners of *Garmon*. It does. That resolves this case.

For its part, the Union makes the same ask in slightly different terms. It argues that *Garmon*'s "premises" have been "negated" because the NLRB is no longer the "functioning, independent NLRB" that *Garmon* contemplated, so the doctrine "does not control" as a matter of law. Union Opp. at 1–2, 11–12. The Union then adds a further layer: that the NLRB's "decades-long atrophy" in protecting workers' rights has independently undermined the basis for preemption. Union Opp. at 20. But again, a district court cannot decide for itself that a Supreme Court opinion has been "negated" or rendered a dead letter—in toto or in part.

### C. There is no reason to believe the Supreme Court would adopt the exception to *Garmon* that the State and the Union urge.

In all events, there is no merit to the State's and the Union's efforts to read a new exception into *Garmon*. Contrary to their assertions, *Garmon*'s rationale does not depend on how the NLRB operates within the Executive Branch but instead on where the NLRB sits in relation to the states. *Garmon* recognized that Congress chose to federalize private-sector labor regulation through passage of the NLRA, to centralize enforcement of that Act in a single federal agency, and to provide specific mechanisms through which the NLRB could invite state participation. And Congress effectively ratified *Garmon* when it made further amendments to the Act to specify how, in the wake of *Garmon*, the Board may permit state regulation by declining federal jurisdiction. *See* Pub. L. 86-257, Title VII § 701(a), 73 Stat. 541 (1959) (enacting section 14(c) of the NLRA).

Start with the question of the NLRB's quorum. As this Court correctly explained, "the reasoning of *Garmon* itself precludes reliance on the NLRB's loss of a quorum" because "when Congress mandated a quorum, it obviously envisioned the possibility that the NLRB might lack one from time to time, thus inhibiting action." PI Order at 9. And though the NLRA included a

quorum requirement at that time, nothing in *Garmon* even remotely suggests that an inquorate Board transfers jurisdiction to the states. Put simply, *Garmon* established a bright-line jurisdictional rule: when conduct is protected or prohibited by Sections 7 or 8 of the NLRA, state jurisdiction yields.

If anything, the very "dysfunction" that the State says triggers SERA's jurisdiction helps illustrate *Garmon*'s wisdom. *Garmon*'s core insight is that centralized administration avoids "diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies." 359 U.S. at 243. An NLRB slowed down by periods without a quorum still provides more uniformity than fifty state labor boards applying fifty different statutes. The State fails to come to grips with the reality that if New York may act, every state may act—creating exactly the fragmentation Congress sought to prevent. And where is the limiting principle in the State's position? What if another state decides it should be allowed to step in whenever Congress fails to increase the NLRB's funding commensurate with other federal agencies on the theory that the Board won't be able to "keep up?" Allowing temporary state regulation of labor disputes covered by the NLRA during periods in which the NLRB is not performing to the liking of local legislators would not help bring order to U.S. labor relations—it would sow regulatory chaos.

Turn next to the question of the NLRB's independence. The State and the Union repeatedly latch on to *Garmon*'s description of the NLRB as "a specific and specially constituted tribunal" and extrapolate that to mean its "independence" was a prerequisite to *Garmon*'s holding. *See* PERB Opp. at 2 (quoting *Garmon*, 359 U.S. at 242–43); Union Opp. at 11 (same). The Union further cites *Sears*, which in its recitation of the NLRA's history, described the creation of "a regulatory scheme to be administered by an independent agency which would develop experience and expertise in the labor relations area." Union Opp. at 16 (quoting *Sears*, 436 U.S. at 191).

But descriptive language about the NLRB's historical design is not a holding about the conditions under which preemption applies. Neither *Garmon* nor *Sears* holds that preemption evaporates when the President removes Board members or when the agency's independence is otherwise compromised. The Court in *Garmon* described the NLRB as a specialized agency to explain why Congress chose to centralize labor regulation there, not to condition preemption on the agency retaining any particular feature.[6]

With nothing solid in *Garmon* to which they can stake their "loss of independence" theory, the State and the Union lean heavily on the Fourth Circuit's decision in *National Association of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025). *See* Defs.' Opp. at 15–16 & n.10; Union Opp. at 13–14. But as Amazon has explained, that case is irrelevant on its own terms. *See* Pl.'s Reply in Supp. of Mot. for Summ. J., ECF No. 37, at 3 n.2. It is not about *Garmon* preemption, or even preemption at all. *Owen* concerned whether Congress required parties to channel claims through an agency review scheme before going to federal court—a jurisdictional question about the proper forum, not preemption. 139 F.4th at 303–304. What is more, even assuming its reasoning had any relevance here, *Owen* is no longer good law: the Supreme Court vacated it on the same day the State and Union filed their opposition briefs. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1289 (2026) (per curiam).

Perhaps most important, *Owen*'s "loss of independence" reasoning was also directly condemned. Justice Thomas, joined by Justice Barrett, observed that the Fourth Circuit's approach

---

[6] Likewise, the Law Professor *amici*'s legislative history about independence shows why Congress chose federal administration—not that it made federal exclusivity contingent on the agency retaining any particular characteristic. *See* Br. *Amici Curia* of Labor Law Professors, ECF No. 69-1, at 4–9. Moreover, the *amici*'s historical survey of the pre-*Garmon* period does not change what *Garmon* held. It merely shows the Supreme Court's progressive recognition, culminating in *Garmon*, that Congress's design requires exclusive federal jurisdiction. The Supreme Court settled the question in *Garmon*, and only the Supreme Court can unsettle it.

"bears little resemblance to legal interpretation." *Id.* at 1289 (Thomas, J., concurring). He categorically rejected the proposition that changing conditions—specifically, an agency's independence from the President—require a fresh look at congressional intent:

> Neither the President's view that he can remove federal executive officials, nor his having done so, change the meaning of the statute or the binding nature of this Court's interpretation of it. Conditions may have changed, but the statute has not.

*Id.* "Courts may not rewrite the statutory scheme in order to approximate what we think Congress might have wanted had it known that the President" may have authority he previously lacked. *Id.* at 1290. "Statutes change only when Congress changes them, not when judges decide that they no longer vindicate Congress's purposes." *Id.* (citing U.S. Const., art. I, §§ 1, 7). The State and the Union ask for precisely what Justice Thomas and Justice Barrett condemned: for this Court to ignore binding precedent "based on [the] belief that new political considerations changed the governing law." *Id.* at 1289.

Finally, the text and history of the NLRA support *Garmon* preemption as it currently exists. Congress knows how to authorize concurrent jurisdiction. *See, e.g.*, 42 U.S.C. § 2000e-5(c) (providing for concurrent jurisdiction with state fair employment practice agencies under Title VII); 29 U.S.C. § 218(a) (expressly preserving state minimum-wage standards under the Fair Labor Standards Act). That is not what Congress did here. Instead, it enacted a comprehensive regulatory regime that included just one provision—section 10(c)—that allowed for the NLRB to selectively cede jurisdiction to the states. The Supreme Court in *Garmon* interpreted that regime to broadly preempt state regulation, even for conduct that only *arguably* falls within the NLRA's reach. And Congress then responded to *Garmon* by effectively ratifying it. Less than a year after

the Supreme Court decided *Garmon*, Congress enacted section 14(c), which provided a means for the NLRB to formally decline *Garmon* preemption by published order or rule.[7]

## II. The SERA Amendment has no valid applications.

Retreating from their categorical defense of the SERA Amendment, the State and the Union argue in the alternative that the Court cannot *fully* enjoin the law because New York's law applies in some circumstances when *Garmon* would not. *See* PERB Opp. at 18–23; Union Opp. at 21–22. They are wrong.

### A. The SERA Amendment lacks a plainly legitimate sweep.

A statute survives a facial challenge if it has a "plainly legitimate sweep"—that is, if it has sufficient valid applications that the Court need not invalidate it entirely. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). The State invokes the three judicially created exceptions to *Garmon*—the *Sears* gap, peripheral concern, and conduct deeply rooted in local interest—as valid applications of the SERA Amendment. PERB Opp. at 19. The Union adds quorum loss, government shutdowns, and court-enjoined NLRB proceedings. Union Opp. at 22. None of these generates a valid application.

Although the State claims that PERB's jurisdiction over private parties under the SERA Amendment "*could* encompass specific labor disputes that fall under [the] *Garmon* exceptions," it never explains how. PERB Opp. at 19 (emphasis added). The reason is simple: PERB's jurisdiction reaches only unfair labor practices and representational disputes, and the SERA

[7] The State invokes PERB's voluntary mediation of private-sector labor disputes as an example of "concurrent jurisdiction" between New York and federal labor regulators, *see* PERB Opp. at 24, but the comparison fails. When private parties ask PERB to serve as a mediator for a bargaining dispute that the Federal Mediation and Conciliation Service would otherwise mediate, that does not give PERB regulatory authority over those parties. That dynamic bears no resemblance to the assertion of coercive adjudicatory authority over ULP charges—the kind of state regulatory power *Garmon* forbids.

Amendment does nothing more than extend that jurisdiction to private parties subject to the NLRA. *See* N.Y. Lab. L. § 704 (defining unfair labor practices). PERB's jurisdiction has never reached the subjects of the *Garmon* exceptions—*i.e.*, contract disputes, trespass, nuisance, defamation, or peripheral torts. *See supra* at 3–5. Instead, New York has long had—and still has—authority over those matters through its common law and its courts.

Examination of New York law confirms the point. New York courts have consistently recognized "PERB's jurisdiction encompasses only those matters specifically covered by the Taylor Law." *See Zuckerman v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 44 N.Y.2d 336, 343 (1978).[8] For "relief in matters outside [PERB's] range of jurisdiction," New Yorkers turn to the State's courts. *De Cherro v. Civil Serv. Emps. Ass'n*, 60 A.D.2d 743, 744 (N.Y. App. Div. 1977). PERB itself has recognized the divide: in *Roma v. Ruffo*, 92 N.Y.2d 489 (1998), the Court of Appeals explained that PERB disclaimed jurisdiction of disputes "essentially contractual in nature," which fell outside PERB's "exclusive jurisdiction." *Id.* at 496–97.

This is no accident. New York's labor-relations laws cover the same core domain as the NLRA. New York courts have recognized as much for nearly ninety years. *See Davega City Radio, Inc. v. State Lab. Rels. Bd.*, 281 N.Y. 13, 22 (1939) (observing that New York's law and the NLRA "are not only alike in their provisions but are almost identical in their language" and that "the New York act is the State's equivalent of the National act"); *see also N.Y. State Lab. Rels. Bd. v. Holland Laundry, Inc.*, 294 N.Y. 480, 492–93 (1945) (explaining that federal cases interpreting the NLRA "apply with equal force" to New York's parallel law); *Hernandez v. State of N.Y.*, 173 A.D.3d 105,

[8] PERB was created by the Public Employees' Fair Employment Act of 1967, commonly referred to as the Taylor Law. *See* N.Y. Civ. Serv. L. § 205. In 2010, PERB's mission was expanded to include administration of the New York State Employment Relations Act. 2010 N.Y. Sess. Laws Ch. 56 (A. 9706-C) (McKinney).

120 (N.Y. App. Div. 2019) (Pritzker, J., dissenting) (explaining that SERA "was modeled after" the NLRA). The State itself admits that the two laws "have similarly stated policy purposes" and "provide parallel rights," and that the legislature enacted the SERA Amendment to make PERB a functional substitute for the NLRB over private-sector labor disputes. PERB Opp. at 3.

The State further admits that the SERA Amendment makes PERB's jurisdiction coextensive with the NLRB's—not broader than it. PERB Opp. at 3 (explaining the Amendment "empower[s] PERB . . . to administer labor law concurrently" with the NLRB). If PERB's jurisdiction extends no further than the NLRB's in private-sector labor relations, then PERB likewise has no authority over the conduct that *Garmon*'s exceptions place outside the NLRB's regulatory domain. The exceptions cannot simultaneously mark the boundary of NLRB jurisdiction and serve as affirmative grants of PERB jurisdiction. Because the exceptions address a universe of conduct that SERA has never touched and does not purport to reach, they cannot supply the "plainly legitimate sweep" the State needs. *See Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould, Inc.*, 475 U.S. 282, 291 (1986) (holding that a state law whose "manifest purpose and inevitable effect" is to enforce the NLRA's requirements is preempted).

The Union's argument on quorum loss, government shutdowns, and enjoined NLRB proceedings fares no better. As already explained, none of these scenarios is a recognized exception to *Garmon*. A facial challenge fails when the statute has sufficient valid applications under *existing* law—not whenever a party can hypothesize future conditions under which a court might someday sustain it. *Moody*, 603 U.S. at 723. Each depends on the "changed circumstances" theory this Court rejected and *Margolin* cast doubt on. A legally foreclosed theory is not a valid application.

### B. No narrowing construction can save the statute.

The State asks this Court to "tailor the remedy" so that PERB retains jurisdiction in two circumstances: "when Board Member firings without cause eliminate a quorum or when courts enjoin the NLRB from processing a case." PERB Opp. at 20. Neither circumstance supports preservation of the statute.

The quorum contingency should be rejected for at least two reasons. First, it depends entirely on this Court adopting the State's meritless proposed exception to *Garmon*. This Court held that "the reasoning of *Garmon* itself precludes reliance on the NLRB's loss of a quorum" because "when Congress mandated a quorum, it obviously envisioned the possibility that the NLRB might lack one from time to time, thus inhibiting action." PI Order at 9. The Eastern District of California reached the same conclusion: even in partially sustaining California's A.B. 288, the court recognized that "because the law would allow PERB to assume jurisdiction over conduct subject to the NLRA, these provisions of A.B. 288 are preempted." *See NLRB v. California*, No. 2:25-cv-02979, 2025 WL 4677692, at *9 (E.D. Cal. Dec. 26, 2025).

Second, contrary to PERB's assertion otherwise, its carve-out would "require the Court to rewrite the statute." PERB Opp. at 22. The language of the Amendment can only reasonably be read to apply the SERA to NLRA-covered employers *all the time*, not simply in periods where the Board lacks a quorum. Asking this Court to insert that condition is not a narrowing construction; it is a legislative act dressed as a remedial one. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329–30 (2006).

The injunction contingency fares no better for the same two reasons. First, the argument that an injunction contingency could trigger an exception to *Garmon* preemption is wrong on its own terms. A court order enjoining the NLRB from processing a particular case does not eliminate the NLRA's substantive regulation of the underlying conduct—it addresses only the agency's

ability to adjudicate. The NLRA's rights and prohibitions remain operative regardless of whether the Board can enforce them in a given proceeding. *Garmon* preempts state regulation of *conduct* "arguably subject to § 7 or § 8," 359 U.S. at 245—not *cases* that the Board is adjudicating at a given moment. An injunction against the NLRB in one case does not open a gap in the federal scheme that a state regulator may fill. At most, it creates a temporary remedial delay—precisely the kind of circumstance Congress addressed through the NLRA's own procedural architecture.

And second, there also is no statutory language that supports this carve-out. PERB invokes the Eastern District of California's treatment of A.B. 288. PERB Opp. at 20–22; *see NLRB v. California*, 2025 WL 4677692, at *7 (concluding A.B. 288 would not be preempted when a court enjoins the NLRB, Congress eliminates the NLRB, or the NLRB cedes jurisdiction). That case does not help the Board here. Unlike the SERA Amendment, California's A.B. 288 expressly contains those triggers, which supply the narrow, identifiable applications a court can preserve through partial invalidation. New York's SERA Amendment is inverted. PERB jurisdiction is the default, and federal displacement occurs only if the NLRB obtains a federal court order asserting jurisdiction. *See* N.Y. Lab. Law § 715(1)(b). There is no trigger to preserve and no narrow application to sever. Rewriting § 715(1)(b) to activate only during quorum-loss periods or injunctions would require inserting conditions the New York legislature did not include. *But see Ayotte*, 546 U.S. at 329–30.

**III. No other basis exists to deny summary judgment.**

**A. The case is neither moot nor duplicative.**

The Union (but not the State) raises a threshold argument against summary judgment that rests on two theories: (1) the case is moot because the Sylla PERB charge was withdrawn; and (2) the case is duplicative of the NLRB's action in the Northern District of New York. Both fail.

On mootness, the Union argues that Amazon lost its "personal stake" in the litigation because the charge that initially gave rise to the case has been withdrawn. Union Opp. at 9. "Unlike standing, "the burden of showing mootness logically falls on a defendant." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016). And a case becomes moot only when it is impossible for a court to grant any effectual relief." *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012). Those standards are not satisfied here. Amazon's claim is not moot.

The Union misapprehends the nature of Amazon's "stake" in this litigation. Amazon's injury arises from its exposure to the unconstitutional SERA Amendment, not the mere fact of the Union's charge on behalf of Sylla, which was simply evidence that Amazon's injury is not speculative. The Union does not attempt to carry its burden of showing that the injury from that exposure has ceased, or that this Court could not grant "effectual relief" from that injury through a permanent injunction. Nor could it, as the State—the body charged with enforcing the SERA Amendment against employers like Amazon—conspicuously does not argue that this case is moot.

Moreover, to the extent the Union conceives Amazon's injury as arising from a single PERB charge, it bears a "heavy burden" to show that this "voluntary cessation" means Amazon will not face future PERB charges from it or the State. *Lallave v. Martinez*, 609 F. Supp. 3d 164, 176–77 (E.D.N.Y. 2022). The Union says nothing on that count, and the silence of the State again speaks volumes.

On duplicativeness, the Union invokes this Court's "inherent authority to dismiss duplicative litigation" but immediately concedes that *Colorado River* abstention does not apply. Union Opp. at 11. The Union admits it cannot satisfy the doctrine's requirements—Amazon and the NLRB are different parties, not in privity, pursuing different claims. *See Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 505–509 (2d Cir. 2019). Having thus disclaimed the only

recognized doctrinal basis for dismissal on duplicativeness grounds, the Union improvises. It asks the Court to dismiss this action based on a freewheeling "discretion" to decline jurisdiction over a live controversy simply because another court is considering related issues. That is not the law.

The Union's sole authority for this discretionary power is *R.S. by & through C.S. v. New York City Department of Education*, No. 21-cv-10596, 2023 WL 2368987 (S.D.N.Y. Mar. 6, 2023). Union Opp. at 11. But *R.S.* does not support the proposition for which it is cited. That case addressed whether a court should permit *intervention* to save a case from mootness after the original parties' dispute had been mooted—not whether a court may dismiss a live case with an injured plaintiff because it prefers to let another court handle the issue. *Id.* at *8. The passage the Union quotes—that a court must decide "whether it should exercise that authority"—was the court's assessment of whether permitting late intervention was an appropriate exercise of discretion. *Id.* It had nothing to do with dismissal of an existing action, duplicativeness, or anything resembling the scenario here. Article III does not permit a federal court to dismiss a live controversy with an injured party on the theory that some other court would be a more appropriate forum. This Court has a "virtually unflagging obligation" to "exercise the jurisdiction given" it. *Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976).

The Union's duplicativeness theory is also self-refuting. In the Northern District of New York litigation, both the State and the NLRB agreed that *this* Court's preliminary injunction mooted the need for the NLRB to seek one there. *See* Notice of Withdrawal of Pl.'s Mot. for Prelim. Inj., *NLRB v. New York*, No 1:25-cv-01283 (N.D.N.Y. Dec. 3, 2025), ECF No. 40. It would be perverse to dismiss the very case that produced that injunction on the theory that litigants piggybacking off the injunction in a different case are better positioned to resolve the dispute. This Court's order is the only thing standing between Amazon and renewed enforcement of the SERA

Amendment. For that matter, the Union does not explain how the NLRB is the "proper party" to pursue a facial *Garmon* challenge while simultaneously contending that *Garmon* should not apply because the NLRB is non-functional. If the NLRB is so dysfunctional that it has forfeited its claim to exclusive jurisdiction, it is unclear why that same agency is the "proper" plaintiff to vindicate an allegedly abrogated preemption doctrine.

**B. Judicial estoppel and the Tenth Amendment do not apply.**

The Court addressed and rejected the judicial estoppel and Tenth Amendment arguments at the preliminary-injunction stage. *See* PI Order at 10–11. Neither the State nor the Union identifies any intervening authority that would warrant revisiting them.

On judicial estoppel, the Court correctly held that Amazon's "positions are not in direct contradiction." *Id.* at 11. Challenging the NLRB's removal protections (under Article II) is compatible with defending Congress's preemption framework (under the Supremacy Clause). These positions are complementary: private-sector labor relations belong to the federal sphere, and within that sphere the agency must comply with the Constitution. Moreover, Amazon did not prevail before the Fifth Circuit, and its arguments did not prejudice the parties before that Court. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (articulating the elements of judicial estoppel).[9]

Most revealing, the Union's argument devolves into casting aspersions at Amazon for its actions in other cases, characterizing Amazon's refusal to bargain after losing a unionization

[9] The doctrine of judicial estoppel is itself on uncertain footing. On June 11, 2026, Justice Thomas, joined by Justice Gorsuch, questioned "the foundation of the doctrine of judicial estoppel," observing that it "appears to have no basis in any statute, any Federal Rule of Civil Procedure, or any traditional inherent power of federal courts" and has "secured widespread acceptance in the Courts of Appeals without any clear authority in statutes, rules of procedure, or th[e] [Supreme] Court's precedents." *Keathley v. Buddy Ayers Constr. Inc.*, 608 U.S. ____, No. 25-6, slip op. at 1, 7-8, 2026 WL 1686028 (U.S., June 11, 2026) (Thomas, J., concurring).

election as an "evasion of the NLRA." Opp. at 7. But as the Union well knows, when a union prevails in a legally flawed election, the employer *must* refuse to bargain with that union to obtain judicial review of those flaws. *See Goethe House N.Y., German Cultural Ctr. v. NLRB*, 869 F.2d 75, 77 (2d Cir. 1989). This test-of-certification process is the *only* path the NLRA provides to challenge an election result. *See id.*

The Union also ignores that Amazon was *right* on the law of officer removal under the NLRA—those arguments have *succeeded* before the Fifth and D.C. Circuits. *See Harris v. Bessent*, 160 F.4th 1235, 1254 (D.C. Cir. 2025), *petition for cert filed*, No. 25-5037 (U.S. Mar. 23, 2026); *Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 778 (5th Cir. 2025). Amazon cannot be estopped from challenging New York's unconstitutional law because it raised legally correct arguments regarding the constitutional structure of the NLRB before another court.[10]

On the Tenth Amendment, the Union regurgitates its already-rejected argument that *Garmon* constitutes a form of commandeering under *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018). *See* Union Opp. at 23–24. As the Court has recognized, *Garmon* concerns preemption, not commandeering. It contains no "direct command to the States," but rather gives supremacy to the federal regulation of private conduct set forth in the NLRA. PI Order at 11 (quoting *Murphy*, 584 U.S. at 479–80).

[10] *Amicus* Racabi adds a different, but equally meritless, twist: that an employer who simultaneously challenges the NLRB's constitutional structure and invokes *Garmon* preemption is effectively making a *Machinists*-type argument and must satisfy *Machinists*-type proof of congressional intent to leave conduct unregulated. *See* Br. Amici Curiae of Prof. Gali Racabi, ECF No. 72, at 6–7. But *Garmon* and *Machinists* address categorically different questions: *Garmon* asks whether Congress committed regulation of the conduct to the NLRB as an exclusive forum; *Machinists* asks whether Congress intended the conduct to be unregulated. Amazon's position is the former, not the latter. Invoking *Garmon* is premised on *accepting* the NLRB's authority, not contesting it. And challenging the constitutionality of the NLRB's removal protections raises a structural Article II question that is entirely independent of whether the NLRA's substantive scheme preempts state law. The two positions are not contradictory. *See infra* Part III.B.

## IV. Amazon is entitled to declaratory and permanent injunctive relief.

The Court should enter a declaratory judgment that the SERA Amendment is preempted and permanently enjoin its enforcement. As this Court recognized in granting the preliminary injunction, Amazon has established irreparable harm in two independent ways: being subject to an unconstitutional law, and facing inconsistent judgments from concurrent jurisdiction. *See* PI Order at 12–13. A permanent injunction requires success on the merits, inadequate remedies at law, a favorable balance of hardships, and no disservice to the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). All four are satisfied here.[11]

## CONCLUSION

Amazon is entitled to summary judgment. The Court should so find and enter judgment accordingly.

[11] Amazon will seek its costs as the prevailing party under Fed. R. Civ. P. 54(d)(1) following entry of judgment. To the extent the Court entertains the parties' dispute regarding the availability of fees under 42 U.S.C. § 1988(b), Amazon respectfully requests the opportunity to address that issue in a post-judgment submission.

DATED: New York, New York
June 23, 2026

Respectfully submitted,

By: */s/ Patrick L. Robson*

Patrick L. Robson
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
Tel: (212) 309-1000
Fax: (212) 309-1100
probson@hunton.com

Kurt G. Larkin*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Tel: (804) 788-8200
Fax: (804) 788-8218
klarkin@hunton.com

Amber M. Rogers*
HUNTON ANDREWS KURTH LLP
1455 Ross Avenue, Suite 3700
Dallas, Texas 75202
Tel: (214) 979-3000
Fax: (214) 880-0011
arogers@hunton.com

*Attorneys for Plaintiff*

*admitted *pro hac vice*

**CERTIFICATE OF WORD COUNT**

The undersigned certifies that the word count of this Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment complies with the page limits authorized by Minute Entry dated January 29, 2026, that Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment is not to exceed 20 pages.

DATED: New York, New York
June 23, 2026

Respectfully submitted,

By: */s/ Patrick L. Robson*

Patrick L. Robson
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
Tel: (212) 309-1000
Fax: (212) 309-1100
probson@hunton.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMAZON.COM SERVICES LLC,<br><br>Plaintiff,<br>-against-<br><br>NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD, et al.,<br><br>Defendants. | Case No. 1:25-cv-5311-EK-MMH<br><br>**CERTIFICATE OF SERVICE** |

I certify that, on the date set forth below, I caused the foregoing to be e-filed with the Court via the CM/ECF system, which sent notification of such filing to the attorneys of record.

DATED: New York, New York
June 23, 2026

Respectfully submitted,

By: *_/s/ Patrick L. Robson_*

Patrick L. Robson
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
Tel: (212) 309-1000
Fax: (212) 309-1100
probson@hunton.com